**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In Re:<br><br>**SOUTH HILLS OPERATIONS, LLC, _et al._,**[1]<br><br>Debtors. | Case No.: 24-21217-CMB<br><br>Chapter 11<br>_Joint Administration Requested_<br><br>Doc. No.: |
| **SOUTH HILLS OPERATIONS, LLC, _et al._,**<br><br>Movant,<br><br>-vs -<br><br>**NO RESPONDENTS.** | Related to Document No.:<br><br>Hearing Date:<br><br>Hearing Time:<br><br>Response Deadline: |

**EXPEDITED MOTION, PURSUANT TO SECTION 366 OF THE BANKRUPTCY
CODE, FOR ENTRY OF INTERIM AND FINAL ORDERS:
(A) PROHIBITING UTILITIES FROM ALTERING, REFUSING OR
DISCONTINUING SERVICES TO, OR DISCRIMINATING AGAINST, THE
DEBTORS ON ACCOUNT OF PREPETITION INVOICES;
(B) DETERMINING THAT THE UTILITIES ARE ADEQUATELY ASSURED FOR
FUTURE PAYMENT; AND (C) ESTABLISHING PROCEDURES FOR
<u>DETERMINING REQUESTS FOR ADDITIONAL ASSURANCE</u>**

The Debtors, through their undersigned counsel, submits this motion (the "<u>Motion</u>"),

pursuant to sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. § 101 et seq.

---

[1]The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: South Hills Operations, LLC (5527); Monroeville Operations, LLC (3280); Mt. Lebanon Operations, LLC (1133); Murrysville Operations, LLC (9149); Cheswick Rehabilitation and Wellness Center, LLC (9561); 3876 Saxonburg Boulevard Propco, LLC (3618); North Strabane Rehabilitation and Wellness Center, LLC (1677); 100 Tandem Village Road Propco, LLC (1918); Maybrook-C Briarcliff Opco, LLC (5187); Maybrook-C Briarcliff Propco, LLC (1823); Maybrook-C Evergreen Opco, LLC (5388); Maybrook-C Evergreen Propco, LLC (2000); Maybrook-C Kade Opco, LLC (4033); Maybrook-C Kade Propco, LLC (2097); Maybrook-C Latrobe Opco, LLC (4148); Maybrook-C Latrobe Propco, LLC (2178); Maybrook-C Overlook Opco, LLC (7081); Maybrook-C Overlook Propco, LLC (6804); Maybrook-C Silver Oaks Opco, LLC (7146); Maybrook-C Silver Oaks Propco, LLC (9654); Maybrook-C Whitecliff Opco, LLC (6211); Maybrook-C Whitecliff Propco, LLC (4835). The Debtors' address is 485 Lexington Avenue, 10th Floor, New York, NY 10017

(the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Local Rules, and Rule 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court of the Western District of Pennsylvania (the "Local Rules") for the entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Proposed Interim Order") and **Exhibit B** (the "Proposed Final Order" and, together with the Proposed Interim Order, the "Proposed Orders"), respectively: (i) approving the Debtors' proposed adequate assurance of payment for future service from utilities and determining that their proposed adequate assurance provides a utility provider (collectively, the "Utility Providers" and each, individually, a "Utility Provider") with adequate assurance of payment under section 366 of the Bankruptcy Code; (ii) prohibiting Utility Providers from altering, refusing, or discontinuing services to, or discriminating against, the Debtors; (iii) establishing procedures for resolving requests for additional or other adequate assurance; (iv) scheduling a final hearing (the "Final Hearing") to consider entry of the Proposed Final Order (the "Motion"); and (v) granting related relief.

In support of their request for expedited interim relief, the Debtors rely on their Expedited Motion to Set Emergency Hearing on First Day Motions, filed concurrently with this motion. In further support of its Motion, the Debtors rely on the separately-filed *Declaration of Louis Robichaux IV, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and Various First Day Applications and Motions* (the "First Day Declaration"), and respectfully represent as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The Debtors consent to entry of a final order under Article III of the United States

Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. § 1408.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (M).  The Court possesses the requisite authority to grant the relief requested herein pursuant to 11 U.S.C. §§ 105(a), 366(a) and 507. Such relief is warranted under Bankruptcy Rules 6003 and 6004 and W.PA.LBR 1002-6(e)(9) and 9013-1 of the Local Rules.

## BACKGROUND

2.      On the date hereof (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Court. Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and as of the date of the filing of this Application, no official committees have been appointed or designated.

4.      The First Day Declaration, which is fully incorporated herein by reference, provides a full description of the Debtors and their businesses and the facts and circumstances supporting this Application and the Debtors' Chapter 11 Cases.

## RELIEF REQUESTED

5.      By this Motion, the Debtors respectfully request the entry of the Proposed Orders: (i) approving the Debtors' proposed adequate assurance of payment for future service from utilities and determining that their proposed adequate assurance provides Utility Providers with adequate assurance of payment under section 366 of the Bankruptcy Code; (ii) prohibiting Utility Providers from altering, refusing, or discontinuing services to, or discriminating against, the Debtors; (iii) establishing procedures for resolving requests for additional or other adequate assurance; (iv)

3

permitting utility companies to opt out of the procedures for determining adequate assurance; (v) scheduling a final hearing to consider entry of the Proposed Final Order; and (vi) granting related relief.

## I.      The Utility Services and Utility Providers

6.      In connection with their business operations, the Debtors obtain electric, natural gas, water, sewer, internet, electronic data services, cable, phone, cellular phones, trash/garbage removal, fire alarm monitoring, and other similar services ("Utility Services") from a number of Utility Providers at the Debtors' thirteen (13) skilled nursing facilities in Pennsylvania.

7.      A list of known Utility Providers and currently identifiable accounts is attached hereto as **Exhibit C** (the "Utility List").  The Debtors believe the Utility List is a complete list of all Utility Providers and currently open accounts.  The inclusion of any entity on, or any omission of any entity from, the Utility List is not an admission by the Debtors that such entity is or is not a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve their rights with respect thereto.

8.      The relief requested herein is requested with respect to all Utility Providers providing Utility Services to the Debtors.

9.      Uninterrupted utility service is essential to the Debtors' ongoing operations and, therefore, to the success of these Chapter 11 Cases.  Should any Utility Provider refuse or discontinue service, even for a brief period, it may cause the Debtors to default on their own obligations and create tremendous difficulty for Debtors' ongoing business operations, not to mention a health and safety hazard to the residents of the Debtors' facilities.  The temporary or permanent discontinuation of Utility Services could irreparably harm the Debtors' businesses and jeopardize these Chapter 11 Cases.

4

10. On average, the Debtors pay approximately $300,000 each month for third-party Utility Services, calculated as a historical average payment for the twelve-month period ended December 31, 2023. Accordingly, the Debtors estimate that their cost for Utility Services during the initial 30 days following the Petition date will be approximately $300,000. To the best of the Debtors' knowledge, the Debtors do not have any existing prepayments or deposits with respect to any Utility Providers, but certain Debtors may have provided prepetition deposits to certain Utility Providers in the ordinary course.

11. The Debtors intend to pay their postpetition obligations to the Utility Providers in a timely manner. Subject to Court approval, they will make these payments from Cash Collateral or proceeds from the DIP Facilities.

12. Additionally, the Bankruptcy Code permits a utility, under certain circumstances, to alter, refuse, or discontinue a chapter 11 debtor's utility service if the utility does not receive adequate "assurance of payment" within 30 days of the commencement of the debtor's chapter 11 case.[2]

---

[2] There is an apparent discrepancy between subsections (b) and (c) of section 366 because these two subsections set forth different time periods during which a utility is prohibited from altering, refusing, or discontinuing utility service. Specifically, section 366(b) allows a utility to alter, refuse or discontinue service "if neither the trustee nor the debtor, within *20 days* after the date of the order for relief, furnishes adequate assurance of payment", while section 366(c)(2) allows a utility "in a case filed under chapter 11" to alter, refuse or discontinue service to a chapter 11 debtor "if during the *30-day period* beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service ..." (emphases added).

Under the canon of statutory construction that specific language controls over general, the language of section 366(c)(2) controls here because the Debtors are chapter 11 debtors. See 3 COLLIER ON BANKRUPTCY ¶ 366.03[2] (Alan N. Resnick & Henry J. Sommers eds., 15th ed. rev. 2006) ("It is unclear how the 30-day period [in section 366(c)(2)] meshes with the normal 20-day period in section 366(b). The better view is that, because section 366(c) is more specifically applicable to chapter 11 cases, the 30-day period, rather than 20-day period in section 366(b), should apply.")

**PROPOSED ADEQUATE PROTECTION**

13.     The Bankruptcy Code defines the phrase "assurance of payment" to mean, among other things, a cash deposit.  Accordingly, the Debtors propose to provide a deposit for each Utility Provider in an amount equal to the cost of one-half of one month's average service from that Utility Provider, totaling $150,000 (the "Adequate Assurance Deposit").  This Adequate Assurance Deposit is calculated based on the Debtors' average utility expenses for the twelve-month period ended December 31, 2023, net of any prepetition deposits provided to the Utility Providers in the ordinary course.  The proposed Adequate Assurance Deposits for each Utility Provider is the amount disclosed on the Utility List, attached as **Exhibit C** to this Motion.

14.      The Adequate Assurance Deposit will be held in the segregated account for the benefit of the Utility Providers (the "Adequate Assurance Account") for the duration of these Chapter 11 Cases and may be applied to any postpetition defaults in payment to the Utility Providers.  The Debtors will hold the Adequate Assurance Deposit.  The Debtors will deposit the Adequate Assurance Deposit in the Adequate Assurance Account within fifteen (15) days after entry of the Interim Order granting this Motion.

15.     The Debtors submit that the Adequate Assurance Deposit, in connection with the Debtors' operating cash flow and debtor-in-possession financing, demonstrates their ability to pay for future Utility Services in accordance with their prepetition practices (collectively, the "Proposed Adequate Assurance") and constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of section 366 of the Bankruptcy Code.

**THE ADEQUATE ASSURANCE PROCEDURES**

16.     Any Utility Provider that is not satisfied with the Proposed Adequate Assurance may make a request for additional or different adequate assurance of future payment (each, an

6

"Adequate Assurance Request") pursuant to the adequate assurance procedures set forth in the proposed orders (the "Adequate Assurance Procedures").  The Adequate Assurance Procedures set forth a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while at the same time allowing the Debtors to continue their business operations uninterrupted.  More specifically, the Adequate Assurance Procedures permit a Utility Provider to object to the Proposed Adequate Assurance by filing and serving an Adequate Assurance Request upon the Debtors.  The Debtors, in their discretion, may then resolve any Adequate Assurance Request by mutual agreement with the Utility Provider and without further order of the Court.

17.    If the Adequate Assurance Request cannot be resolved by mutual agreement, the Debtors may seek Court resolution of the Adequate Assurance Request. Unless and until a Utility Provider files an objection or serves an Additional Assurance Request, such Utility Provider shall be: (a) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with section 366 of the Bankruptcy Code; and (b) forbidden to discontinue, alter, or refuse services to, or discriminate against, the Debtors on account of any unpaid prepetition charges, or require additional assurance of payment other than the Proposed Adequate Assurance.

**SUBSEQUENT MODIFICATION OF UTILITY LIST**

18.    It is possible that, despite the Debtors' best efforts, certain Utility Providers may not be timely identified or included on the Utility List.  If the Debtors identify additional Utility Providers, the Debtors seek authority to amend the Utility List to add or remove any Utility Provider, provided that the Debtors will give the affected Utility Provider two weeks' notice, and the Debtors having received no objection from any such Utility Provider. The Debtors further

request that the relief requested in this Motion, including the proposed Adequate Assurance Procedures, and any order granting this Motion, shall apply to any subsequently identified Utility Provider, regardless of when the Debtors added such Utility Provider to the Utility Service List. The Debtors will serve a copy of this Motion and the order approving the requested relief on any Utility Provider subsequently added to the Utility Service List, and any subsequently added Utility Provider shall have 20 days from the date of service to make a request for adequate assurance of payment. Further, the Debtors shall have the period specified in the proposed Adequate Assurance Procedures to seek to resolve any subsequently added Utility Provider's request for adequate assurance of payment by mutual agreement with the Utility Provider without further order of this Court or the need to schedule a hearing to determine the adequacy of the assurance payment in accordance with the proposed Adequate Assurance Procedures.

## FINAL HEARING DATE

19.    The Debtors respectfully request that the Court schedule a final hearing on the Motion within 30 days after the Petition Date.

20.    The Debtors request that the Order become a Final Order as to any Utility Provider that does not timely file a Procedures Objection.

## BASIS FOR RELIEF

21.    The statutory predicates for the relief requested herein are sections 105 and 366 of the Bankruptcy Code.

22.    Section 366 of the Bankruptcy Code governs the Utility Providers' rights and obligations as providers of utility services to the Debtors. Section 366 protects debtors from utility service cutoffs upon the filing of a bankruptcy case, while at the same time providing utility companies with adequate "assurance of payment" for postpetition utility service.  *See* H.R. Rep.

8

95-595, at 350 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306.  While section 366(c) clarifies what does and does not constitute "assurance of payment" and what can be considered in determining whether such assurance is adequate, Congress did not divest the Court of its power to determine what amount, if any is necessary to provide adequate assurance of payment to a utility company when it enacted that section.  Indeed, section 366(c) not only fails to establish a minimum amount of adequate "assurance of payment", but also explicitly empowers the bankruptcy court to determine the appropriate level of adequate assurance required in each case.  *See* 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of assurance of payment .…").

23.    Thus, nothing within section 366 prevents a court from ruling that, on the facts of the case before it, the amount required to adequately assure future payment to a utility company is nominal, or even zero.  Prior to the enactment of section 366(c), courts enjoyed precisely the same discretion to make such rulings pursuant to section 366(b), and frequently did so.  *See  Virginia Elec. & Power Co. v. Caldor, Inc.,* 117 F.3d 646, 650 (2nd Cir. 1997) (bankruptcy court's authority to "modify" the level of the "deposit or other security" provided for in section 366(b) includes the power to require no deposit or other security where none is necessary to provide a utility company with "adequate assurance of payment").

24.    Moreover, Congress has not changed that the assurance of payment need only be "adequate".  Courts construing section 366(b) have long recognized that adequate assurance of payment does not constitute an absolute guarantee of the debtor's ability to pay.  *See, e.g., In re Great Atl. & Pac. Tac Co.,* No. 11-CV-1338(CS), 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against

unreasonable risk of nonpayment but are not required to give the equivalent of a guaranty of payment in full").

25.     When considering whether a given assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision as to whether the Utility Provider will be subject to an unreasonable risk of nonpayment. *See, e.g., In re Keydata Corp.,* 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (*citing In re Cunha*, 1 B.R. 330 (Bankr. E.D. Va. 1979)); *In re Adelphia Bus. Sols., Inc.,* 280 B.R. 63, 82-83 (Bankr. S.D.N.Y. 2002). In determining the level of adequate assurance, however, "a bankruptcy court must focus upon the need of the utility for assurance, and … require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co.,* 117 F.3d 646, 650 (2d Cir. 1997) (internal quotations omitted) (*citing In re Penn Jersey Corp.,* 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987)).

26.     Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures, proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code. *See, e.g., In re Circuit City Stores Inc.,* No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009) (stating that "the plain language of § 366 of the Bankruptcy Code allows the court to adopt the [p]rocedures set forth in the Utility Order"). Such procedures are important because, without them, the Debtors could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in [their] efforts to reorganize." *Id.* Here, notwithstanding a determination that the Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Providers believe they have under sections 366(b) and 366(c)(2) of the Bankruptcy Code are wholly preserved under the Adequate Assurance Procedures. *See id.* at 5-6. The Utility Providers may still choose, in accordance with the Adequate

Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id.* at *6. The Adequate Assurance Procedures, however, avoid a haphazard and chaotic process whereby each Utility Provider could make an extortionate, last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services. *See id.* at *5.

27.     The Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366; thus, the Debtors respectfully request that the Court grant the relief requested herein. Further, the Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366 thereof.

28.     Accordingly, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve both the Adequate Protection Procedures and the Proposed Adequate Protection.

### WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

29.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### RESERVATION OF RIGHTS

30.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law;

11

(b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or denied in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on the property of the Debtors' estates; (g) a waiver of limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## **NOTICE**

31.     Notice of this Motion has been provided by email, facsimile or overnight mail to: (i) the Office of the United States Trustee for the Western District of Pennsylvania, Federal Building, 1000 Liberty Avenue, Suite 1316, Pittsburgh, PA 15222; (ii) counsel to CIBC Bank, U.S.A., Liz Boydston, Max Schlan, and Alexandria Rahn, Gutnicki, LLP, 10440 N. Central Expressway, Suite 800, Dallas, TX 75231; lboydston@gutnicki.com; mschlan@gutnicki.com; arahn@gutnicki.com; (iii) counsel to Cuarzo Healthcare, LLC, Elizabeth A. Green and Andrew

12

Layden, BakerHostetler, 200 South Orange Avenue, Suite 2300, Orlando, FL 32801; egreen@bakerlaw.com; alayden@bakerlaw.com; (iv) lien *lis pendens* parties (a) Harmony Property Management LLC; (b) Irwin Property Management LLC; (c) New Castle Property Management LLC; (d) New Wilmington Property Management LLC; (e) Latrobe Property Management LLC; and, (f) Washington Property Management LLC in care of Michael A. Shiner, Esq., and Maribeth Thomas, Esq., Tucker Arensberg, PC, 1500 One PPG Place, Pittsburgh, PA 15222; mshier@tuckerlaw.com; mthomas@tuckerlaw.com; (v) U.S. Foods, 9399 West Higgins Road, Rosemont, IL 60018; (vi) Department of Human Services, Office of Long-Term Living, Bureau of Finance, Forum Place 6th Floor, 555 Walnut Street, Harrisburg, PA 17101; (vii) CT Corporation, 330 N. Brand Blvd., Suite 700, Attn: SPRS, Glendale, CA 91203; (viii) those persons who have formally appeared and requested notice and service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (ix) the list of the 30 largest unsecured creditors of the Debtors on a consolidated basis; (x) U.S. Department of Labor, Office of the Regional Solicitor, 1835 Market Street, Mailstop SOL/22, Philadelphia, PA 19103-2968, Attn: Alejandro A. Herrera, Esq. Herrera.alejandro.a@dol.gov; facsimile (215) 861-5162, and (xi) the following governmental agencies having a regulatory or statutory interest in these Chapter 11 Cases: (a) Internal Revenue Service, PO Box 7346, Philadelphia, PA 19101-7346; (b) United States Attorney's Office for the Western District of Pennsylvania, Attn: Eric G. Olshan, Joseph F. Weis, Jr. United States Courthouse 700 Grant Street, Suite 4000, Pittsburgh, PA 15219; and (c) Commonwealth of Pennsylvania Attorney General, Attn: Michelle A. Henry, 16th Floor, Strawberry Square, Harrisburg, PA 17120.  Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

WHEREFORE, the Debtors respectfully requests entry of the Proposed Orders: (i) approving the Debtors' proposed Adequate Assurance of payment for future utility services and determining that their proposed Adequate Assurance provides Utility Providers with adequate assurance of payment under section 366 of the Bankruptcy Code, (ii) prohibiting Utility Providers from altering, refusing, or discontinuing services to, or discriminating against, the Debtors, (iii) approving the Debtors' proposed procedures for resolving additional adequate assurance requests, (iv) scheduling a Final Hearing on the Motion, and (v) granting such other and further relief as  may be necessary and appropriate.

Dated: May 17, 2024
Pittsburgh, Pennsylvania

Respectfully submitted,

**WHITEFORD TAYLOR & PRESTON, LLP**

 /s/ Daniel R. Schimizzi
Daniel R. Schimizzi (PA ID No. 311869)
Michael J. Roeschenthaler (PA ID No. 87647)
Mark A. Lindsay (PA ID No. 89487)
Sarah E. Wenrich (PA ID No. 325834)
11 Stanwix Street, Suite 1400
Pittsburgh, PA 15222
Telephone: 412-275-2401
Facsimile:  412-275-2404
Email: dschimizzi@whitefordlaw.com
mroeschenthaler@whitefordlaw.com
mlindsay@whitefordlaw.com
swenrich@whitefordlaw.com

*Proposed Local Counsel to the Debtors and
Debtors in Possession*

*-AND-*

14

Glenn B. Rose (*pro hac vice* pending)
Paul G. Jennings (*pro hac vice* pending)
Gene L. Humphreys (*pro hac vice* pending)
Jordan E. Thomas (*pro hac vice* pending)
Alfonso Cuen (*pro hac vice* pending)
**BASS, BERRY & SIMS PLC**
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone (615) 742-6200
Facsimile (615) 742-6293
grose@bassberry.com
pjennings@bassberry.com
ghumphreys@bassberry.com
jordan.thomas@bassberry.com
alfonso.cuen@bassberry.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

15