**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In Re:<br><br>**SOUTH HILLS OPERATIONS, LLC, *et al.,*[1]**<br><br>Debtors. | Case No.: **24-21217-CMB**<br><br>**Chapter 11**<br>*Joint Administration Requested*<br><br>Doc. No.: |
| **SOUTH HILLS OPERATIONS, LLC, *et al.,***<br><br>Movant,<br><br>-vs -<br><br>**NO RESPONDENTS.** | Related to Document No.:<br><br>Hearing Date:<br><br>Hearing Time:<br><br>Response Deadline: |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(A) AUTHORIZING THE DEBTORS TO (I) MAINTAIN THEIR CASH
MANAGEMENT SYSTEM AND PAY BANK FEES, (II) WAIVE CERTAIN U.S.
TRUSTEE REQUIREMENTS, AND (III) CONTINUE USING EXISTING CHECKS
AND BUSINESS FORMS, AND (B) AUTHORIZING AND DIRECTING THE
<u>DEBTORS' BANK TO HONOR ALL EMPLOYEE RELATED PAYMENT REQUESTS</u>**

The above-captioned debtors and debtors in possession (the "<u>Debtors</u>") hereby move (the

"<u>Motion</u>") as follows:

---

[1]The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: South Hills Operations, LLC (5527); Monroeville Operations, LLC (3280); Mt. Lebanon Operations, LLC (1133); Murrysville Operations, LLC (9149); Cheswick Rehabilitation and Wellness Center, LLC (9561); 3876 Saxonburg Boulevard Propco, LLC (3618); North Strabane Rehabilitation and Wellness Center, LLC (1677); 100 Tandem Village Road Propco, LLC (1918); Maybrook-C Briarcliff Opco, LLC (5187); Maybrook-C Briarcliff Propco, LLC (1823); Maybrook-C Evergreen Opco, LLC (5388); Maybrook-C Evergreen Propco, LLC (2000); Maybrook-C Kade Opco, LLC (4033); Maybrook-C Kade Propco, LLC (2097); Maybrook-C Latrobe Opco, LLC (4148); Maybrook-C Latrobe Propco, LLC (2178); Maybrook-C Overlook Opco, LLC (7081); Maybrook-C Overlook Propco, LLC (6804); Maybrook-C Silver Oaks Opco, LLC (7146); Maybrook-C Silver Oaks Propco, LLC (9654); Maybrook-C Whitecliff Opco, LLC (6211); Maybrook-C Whitecliff Propco, LLC (4835). The Debtors' address is 485 Lexington Avenue, 10th Floor, New York, NY 10017.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and the *Standing Order of Reference from the United States District Court for the Western District of Pennsylvania*, dated October 16, 1984.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105, 345, 363, 364, and 503 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Western District of Pennsylvania (the "Local Rules").

## BACKGROUND

4.      On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors continue to operate their businesses as a debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no request for the appointment of a trustee or examiner has been made and no statutory committee has been appointed in these Chapter 11 Cases.

5.      Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, the events leading to the commencement of this case and the facts and circumstances supporting the relief requested herein is set forth in the *Declaration of Louis E. Robichaux IV, Chief Restructuring Officer of the Debtors, In Support of Chapter 11 Petitions and Various First Day Applications and*

2

*Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.[2]

## RELIEF REQUESTED

6.    By this Motion, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "Proposed Orders") (a) authorizing the Debtors to (i) maintain their existing prepetition bank accounts and cash management system, including authorizing the continuation of certain transfers between debtors and to non-debtor affiliates described in the Motion in the ordinary course of business in payment of amounts due for post-petition periods and authorizing the Debtors to pay any undisputed prepetition bank fees and any postpetition bank fees in the ordinary course of business and consistent with past practices; (ii) waive certain requirements of the U.S. Trustee Guidelines; and (iii) maintain existing business forms and checks; (b) authorizing and directing the Banks to honor all related payment requests approved by separate order of the Court; and (c) granting related relief.

## THE DEBTORS' CASH MANAGEMENT SYSTEM

**A.    Overview**

7.    In the ordinary course of business, each of the Debtors manage their cash, receivables, and payables through a cash management system (the "Cash Management System"). Each of the Debtors uses the Cash Management System to efficiently collect, transfer, concentrate, and disburse funds generated from its operations.  The Cash Management System also enables each Debtor to monitor the collection and disbursement of funds and the administration of its bank accounts.  Each Debtor maintains accounting controls with respect to each of its bank accounts

---

[2]Capitalized terms used but not otherwise defined in this Motion shall have the meaning set forth in the First Day Declaration.

and can accurately trace the funds through its Cash Management System to ensure that all transactions are adequately documented and readily ascertainable.  To that end, the Debtors reconcile their books and records and produce financial statements on a regular basis.

8.  The Debtors request that the Court authorize them to maintain their books and records relating to the Cash Management System to the same extent such books and records were maintained prior to the Petition Date.  Accordingly, the Debtors will be able to accurately document, record, and track the transactions occurring within the Cash Management System for the benefit of their bankruptcy estate and for all parties in interest.

**B.      Bank Accounts**

9.  The Cash Management System currently consists of 83 bank accounts (the "Bank Accounts"), the majority of which are maintained at CIBC Bank, U.S.A. ("CIBC") [3], with the others maintained at CitiBank USA ("CitiBank") and Citizens Bank ("Citizens" and collectively, the "Banks").  A list identifying each of the Bank Accounts, along with the type of account, and the last four digits of each Bank Account number, and the balance of each Bank Account as of May 15, 2024, is attached hereto as **Exhibit C**.  A diagram illustrating the foregoing Cash Management System is attached as **Exhibit D**.

10.  Generally, each of the OpCo Debtors maintains four bank accounts: an operating account, a payroll account, a government receivables account, and a clearing account.  Each of the PropCo Debtors primarily uses a single account, but a few maintain a separate account for capital expenditures.  Certain Facilities maintain a resident trust account (the "Resident Trust Account")

---

[3] The *Approved Depository Listing for the Western District of Pennsylvania* does not include CIBC Bank, U.S.A.; however, two (2) other districts within Region 3 (Delaware and New Jersey) identify CIBC Bank, U.S.A. as an approved depository in those districts.  The Debtor will cooperate with the U.S. Trustee to confirm CIBC Bank, U.S.A. adheres to the requirements of approved depositories for the Western District of Pennsylvania.

for their residents. Deposits are received into the Debtors' clearing account and subsequently transferred to the Resident Trust Account or are directly deposited into the Resident Trust Account. Upon written authorization of a resident, the applicable OpCo Debtor facility (each, a "Facility") must hold, safeguard, manage, and account for such resident's personal funds as federally mandated. The funds in the Resident Trust Accounts are not property of the Debtors' estates, but rather are property of the Debtors' residents. A Facility's residents may direct a draw from the Facility's Resident Trust Account upon request. The Debtors submit that the operation of the Resident Trust Accounts should not be affected in any way by the filing of these Chapter 11 Cases, as the funds are not property of the Debtors' bankruptcy estates.

11.    In accordance with W.PA.LBR 1002-7(a), the Debtors note that, under the Cash Management System, there are in the ordinary course of business some transfers of money between Debtors and also to non-Debtor affiliates. The primary form of transfers between Debtors are payments made by an OpCo Debtor to its related PropCo Debtor under the terms of the lease agreement between the two Debtors. The PropCo Debtors use the rents received to pay debt service. All of the Maybrook PropCo Debtors transfer their Maybrook OpCo Debtor rent received to Maybrook-C Kade Propco LLC operating acct x2937, and the debt payment due to CIBC is withdrawn from that account. For the Consulate Debtors, all rent payments are transferred to 100 Tandem Village Road Propco, LLC operating acct x3536, and the debt payment due to CIBC is withdrawn from that account. Additionally, each of the OpCo Debtors use in the ordinary course of their business fuel charge cards issued by Wex Bank pursuant to a contract with non-Debtor Comprehensive Healthcare Management Services, LLC. Each OpCo Debtor is responsible to reimburse Comprehensive for its monthly charges on the Wex cards used by it. Finally, each of the OpCo Debtors make payments to non-Debtor CHMS Group, LLC for administrative services,

5

including payroll processing, billing and collection of accounts receivable, financial reporting, cost report preparation and work to verify, account for and manage accounts payable.

12.     CIBC accounts x8923 and x4984 are designated capital expenditure cash reserve accounts (the "Reserve Accounts"), which are required under the CIBC loan agreements.  Due to the Debtors' current liquidity constraints, the Reserve Accounts are not active in normal course. Under normal circumstances, to access funds in the Reserve Accounts the Debtors would need authorization from CIBC pursuant to a process that requires submission of a request to CIBC along with invoices and payment backup prior to the release of funds.  The use of, and request for, Reserve Account funds is typically for non-ordinary course expenditures and is distinct from everyday capital expenditure maintenance purchases, which are run through Debtors operating accounts via the accounts payable system.

13.     The Debtors respectfully request that the Court authorize them to maintain and continue to use the Bank Accounts, and authorize the Banks to maintain, service, and administer the Bank Accounts without interruption and in the ordinary course of business consistent with past practice.  For the avoidance of doubt, the funds in the Resident Trust Accounts are not property of the Debtors' estates, but rather are property of the Debtors' residents.  Nevertheless, the Debtors request that the Court authorize the applicable Banks to continue to maintain, service, and administer the applicable Resident Trust Accounts without interruption in the ordinary course of business.

14.     The Debtors further request that the Bank be authorized to receive, process, honor, and pay any and all checks, drafts, wires, ACH and intrabank transfers, and other instructions, payable through, drawn, or directed on the Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, provided that sufficient

funds are on deposit in the applicable Bank Account to cover such payments.  Notwithstanding the foregoing, any check, advice, draft, or other notification that the Debtors advise the Banks to have been drawn or otherwise presented before the Petition Date may be honored by the Banks only to the extent authorized by order of the Court.  The Debtors currently anticipate that only Pre-Petition checks and ACH transactions in their payroll accounts will be honored after the Petition Date.

**C.      Bank Fees**

15.      In the ordinary course of business, the Debtors incur and pay, or allow to be deducted from the appropriate Bank Accounts, a number of fees, charges, and expenses related to the cost of administering the Bank Accounts, including, *inter alia*, wire transfers and other fees, costs, and expenses standard for a typical corporate bank account and any other items the Bank gives provisional credit for (including during the prepetition period) (collectively, the "Bank Fees").  The Bank Fees for all the Bank Accounts are debited directly from the Bank Accounts.  The Debtors pays on average approximately $30,000 per month in Bank Fees incurred in connection with the Bank Accounts.  The Debtors estimate that they owe the Bank approximately $30,000 in accrued Bank Fees as of the Petition Date.  The Debtors seek permission to pay these Bank Fees during the interim period and to continue paying any bank fees in the ordinary course of business on a final basis.

**D.      Business Forms**

16.      As part of the Cash Management System, the Debtors utilize numerous pre-printed business forms (including, without limitation, letterhead, purchase orders, invoices, and checks, collectively, the "Business Forms") in the ordinary course of business. The Office of the United States Trustee, Region 3 has established certain operating guidelines (the "U.S. Trustee

Guidelines") which require, among other things,[4] that checks for all debtor-in-possession accounts bear the name of the debtor, the designation "Debtor in Possession," the bankruptcy case number, and the type of account.  To minimize expenses to the Debtors' estate and to avoid confusion on the part of employees, vendors, customers, and suppliers, the Debtors request that the Court waive such requirements and authorize the Debtors' continued use of all correspondence and Business Forms as such forms were in existence immediately before the Petition Date (*i.e.*, without reference to the Debtors' status as debtor in possession), rather than requiring the Debtors to incur the expense and delay of ordering entirely new Business Forms as required under the U.S. Trustee Guidelines.

**E.   The U.S. Trustee Guidelines**

17.   The U.S. Trustee Guidelines also require debtors in possession to, among other things:

   a.   close all existing bank accounts and open new debtor in possession accounts;

   b.   maintain debtor in possession accounts at authorized depositories, *i.e.*, those that have entered into a Uniform Depository Agreement ("UDA") with the U.S. Trustee;[5]

   c.   establish one debtor in possession bank account for all estate monies required for the payment of taxes, including payroll taxes; and

   d.   set up a separate debtor in possession account for cash collateral.

18.   These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.

---

[4]Certain other requirements of the U.S. Trustee Guidelines are discussed more fully below.

[5]The U.S. Trustee Guidelines and section 345(b) of the Bankruptcy Code also require the debtor in possession accounts be held at banks that are insured by the Federal Deposit Insurance Corporation ("FDIC").  The Bank is FDIC insured and therefore satisfies this requirement.

Considering, however, that the Debtors' business and financial affairs are complex and require the collection, disbursement, and movement of funds through their Bank Accounts, enforcement of all the provisions of the U.S. Trustee Guidelines during this chapter 11 case would disrupt the Debtors' operations.

19.    Accordingly, the Debtors respectfully request that the Court suspend the requirements of the U.S. Trustee Guidelines and allow them to operate each of their Bank Accounts listed on **Exhibit C** attached hereto as they were maintained in the ordinary course of business consistent with past practices before the Petition Date.

## BASIS FOR RELIEF

I.    **Continued Use of the Prepetition Bank Accounts and the Cash Management System is Permitted Under the Bankruptcy Code and is Essential to the Debtors' Operations and Restructuring Efforts.**

20.    As set forth above, the Debtors request authority to continue to use their Prepetition Bank Accounts and Cash Management System consistent with their ordinary course practices prior to the Petition Date and to implement ordinary course changes to the Cash Management System consistent with such prepetition practices. Such relief is appropriate under sections 363(c) and 105(a) of the Bankruptcy Code.

21.    Continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) is to provide a debtor with the flexibility to engage in the ordinary transactions required to operate its business without the need for oversight by its creditors or the bankruptcy court. *See In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation

of the estate's assets.") (citations omitted). The Third Circuit and other courts of appeal have recognized that requiring a debtor to maintain separate cash accounts for the many different purposes that require cash "would be a huge administrative burden and economically inefficient." *In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1061 (3d Cir. 1993); *see also Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.),* 778 F.2d 617, 621 (11th Cir. 1985) (holding that allowing the debtors to use their prepetition "routine cash management system" was entirely consistent with section 363(c)(1)).

22.     Additionally, the Court may rely on its equitable powers to grant the relief requested herein. Specifically, section 105(a) of the Bankruptcy Code authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) and the doctrine of necessity, the Court may exercise its broad grant of equitable powers to approve the relief requested in this Motion, including the payment of prepetition obligations when such payment is essential to the continued operation of the Debtor's business. *See, e.g., Matter of Lehigh & N. E. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims under the doctrine of necessity and noting that the court has the power to authorize payment of prepetition claims where payment of the claim "is essential to the continued operation of the [debtor] during reorganization[.]"); *In re Sharon Steel Corp.*, 159 B.R. 730, 737 (Bankr. W.D. Pa. 1993) (citing *Matter of Lehigh* in ruling that prepetition claims were authorized under the doctrine of necessity). Therefore, it is within the Court's equitable power under section 105(a) to approve the continued use of the Cash Management System and payment of the Bank Fees.

23.     Here, each of the Debtors has utilized the Cash Management System in its current form as part of its ordinary and usual business practices, and as such, the Debtors believe the continued use of the Cash Management System falls within the purview of ordinary course transactions permitted under section 363(c)(1) of the Bankruptcy Code. Moreover, appropriate circumstances exist for the Court to authorize the Debtors' continued use of the Cash Management System under section 105(a) of the Bankruptcy Code under the doctrine of necessity.

24.     The relief requested in this Motion will help minimize any disruption in the Debtors' business operations during the course of these Bankruptcy Cases and preserve the value of the Debtors' estate. Indeed, any disruptions in the Cash Management System could lead to delays in satisfying the Debtors' obligations. The Debtors simply do not have the ability to perform themselves the administrative services provided by non-debtor affiliate CHMS Group, LLC and cannot continue normal operations without those services. These services include payroll processing, billing and collection of accounts receivable, financial reporting, cost report preparation and work to verify, account for and manage accounts payable. Each of these functions is vital to the on-going operation of the Debtors' day-to-day business operations, and it is entirely appropriate that the Debtors continue to pay for these services in the ordinary course of their business. In order to avoid the potential erosion of value that could ensue from any such interruptions in the Debtors' ordinary course business operations, the Debtors believe it is necessary that they be authorized to continue the Cash Management System consistent with their historical practice.

25.     In furtherance of the foregoing, the Debtors request that the Bank at which the Bank Accounts are maintained be authorized to continue to administer such accounts as they were maintained prepetition, without interruption, and in the ordinary course of business. The Debtors

also request authority to pay any pre and postpetition Bank Fees related to the Bank Accounts as such fees become due in the ordinary course of business.

26.     The Bank should be authorized to pay any and all drafts, wires, intrabank transfers, and ACH transfers issued on the Bank Accounts for payment of any claims arising on or after the Petition Date, or before the Petition Date to the extent payment of such claims have been expressly approved by an order of the Court, in each case, so long as sufficient funds exist in the Bank Accounts. Such authorization accords with past practice and will help prevent any disruptions in the Debtors' ordinary course operations.

27.     Payment of the Bank Fees will also prevent any disruption to the Debtors' operations and Cash Management System and therefore is in the best interest of the Debtors, their estate, and all parties in interest. Moreover, because the Bank may have setoff rights with respect to the prepetition Bank Fees, payment of any prepetition Bank Fees will not affect unsecured creditors and would merely be a matter of timing.

28.     Bankruptcy courts in this district routinely grant chapter 11 debtors similar authority to continue using existing cash management systems and bank accounts, and to pay bank fees. *See, e.g., In re R.E. Gas Development, LLC.,* No. 18-22032 (JAD) (Docket No. 133) (Bankr. W.D. Pa. May 22, 2018*); In re Rue21, Inc.,* No. 17-22045 (GLT) (Docket No. 513) (Bankr. W.D. Pa. June 12, 2017); *In re ACR Mgmt., L.L.C.*, No. 04-27848 (MBM) (Docket No. 67) (Bankr. W.D. Pa. June 16, 2004).

**II.     A Waiver of Certain Requirements of the U.S. Trustee Guidelines is Appropriate Under the Circumstances and Will Minimize Disruptions to the Debtors' Business During the Transition to Chapter 11.**

29.     The Debtors request that the Court waive certain requirements of the U.S. Trustee Guidelines and allow the Debtors to continue using the existing Bank Accounts. As discussed above, the U.S. Trustee Guidelines generally require chapter 11 debtors to:

12

a)  close all existing bank accounts and open new debtor-in-possession bank accounts, including (i) an account maintained solely for the purposes of setting aside estate monies required for the payment of taxes, and (ii) an account for cash collateral;

b)  deposit all estate funds into an account with an authorized depository; and

c)  obtain and utilize new checks for all debtor-in-possession accounts that bear the designation "Debtor in Possession," the bankruptcy case number, and the type of account.

30.     Requiring the Debtors to adopt new cash management systems and open multiple new separate bank accounts for estate funds would be expensive, impose needless administrative burdens on the Debtors, and would cause undue disruption to the Debtors' operations. Any such disruption may delay the Debtors' ability to conduct a sale for substantially all their assets or confirm a chapter 11 plan and exit chapter 11 swiftly, adversely affecting the Debtors' ability to maximize value for the benefit of creditors and other parties in interest. As such, the continued use of the Bank Accounts and Cash Management System provides a safe, efficient, and established means for the Debtors to maintain and manage their cash.

31.     The Debtors submit that a waiver of certain of the requirements of the U.S. Trustee Guidelines is appropriate. Maintenance of the Bank Accounts and Cash Management System will minimize the disruption to the Debtors' operations and promote an orderly and efficient administration of these Chapter 11 Cases. Such benefits are entirely consistent with the goals underlying the U.S. Trustee Guidelines. The Cash Management System constitutes an ordinary course and essential business practice and provides significant benefits to the Debtors and their estate, including the ability to: (a) control corporate funds; (b) ensure the maximum availability of funds when necessary; and (c) reduce borrowing costs and administrative expenses by facilitating the movement of funds and by providing more timely and accurate account balance information.

32.     Accordingly, the Debtors request authority to: (a) maintain and continue to use any or all of their existing Bank Accounts in the names and with the account numbers existing immediately prior to the commencement of these Chapter 11 Cases; (b) reserving the Debtors' right to close some or all of the Bank Accounts and to open debtor in possession accounts; (c) deposit funds in and withdraw funds from any such accounts by all usual means, including checks, wire transfers, ACH transfers, electronic funds transfers, or other debits; and (d) treat their existing accounts (and any accounts opened postpetition) for all purposes as debtor-in-possession accounts.

33.     As set forth above, to ensure that all transfers and transactions will be documented in their books and records, the Debtors, with the help of their financial advisors, will continue to maintain records of all transfers within the Cash Management System. Only with regard to outstanding checks issued prior to the Petition Date on a designated payroll account, the Debtors request that the Bank be authorized to conclusively presume that Court approval has been obtained with respect to any checks or other debits initiated by the Debtors prior to the Petition Date drawn on a payroll account.

34.     The maintenance of the Cash Management System (together with the reporting discussed above) will avoid disruption to the Debtors' operations and unnecessary expense. The recording of transactions within the Cash Management System will afford a complete accounting of the Debtors' funds and provide the U.S. Trustee comfort that the spirit of the U.S. Trustee Guidelines will be observed.

35.     Bankruptcy courts in this district and other districts within the Third Circuit have routinely granted a debtor's request to waive the strict enforcement of the U.S. Trustee Guidelines and granted authority for a debtor's continued use of its existing bank accounts, cash management procedures and policies. *See, e.g., In re R.E. Gas Development, LLC*, No. 18-22032 (JAD) (Docket

14

No. 133) (Bankr. W.D. Pa. May 22, 2018); *In re rue21, Inc.*, No. 17-22045 (GLT) (Docket No. 513) (Bankr. W.D. Pa. June 12, 2017); *In re ACR Mgmt., L.L.C.*, No. 04-27848 (MBM) (Docket No. 67) (Bankr. W.D. Pa. June 16, 2004); *In re VER Techs. Holdco LLC*, No. 18-10834 (KG) (Bankr. D. Del. May 4, 2018).

**III.    A Waiver of the Requirements Regarding Checks and Business Forms is Appropriate Under the Circumstances.**

36.    The Debtors additionally request that the Court waive the U.S. Trustee Guidelines requiring debtors in possession to obtain new checks that bear the designation "Debtor in Possession." This relief is warranted because if the Debtors are required to strictly comply with this requirement then the Debtors' inventory of Business Forms would go to waste and the Debtors would incur undue expense, delay, and distraction in having to immediately obtain new checks.

37.    The Debtors further submit that parties in interest will not be prejudiced if the Debtors are authorized to continue to use their Business Forms substantially in the forms existing immediately before the Petition Date. To preserve funds and assist in the efficient administration of the estate, the Debtors seek authority to use pre-existing Business Forms (including check stock) with respect to the Bank Accounts.

38.    Courts in this district and others in the Third Circuit have routinely allowed debtors to use their prepetition business forms without the "Debtor in Possession" designation. *See, e.g., In re R.E. Gas Development, LLC*, No. 18-22032 (JAD) (Docket No. 133) (Bankr. W.D. Pa. May 22, 2018) (authorizing the debtor's continued use of existing pre-printed business forms until such supply is exhausted); *In re rue21, Inc.*, No. 17-22045 (GLT) (Docket No. 513) (Bankr. W.D. Pa. June 12, 2017) (same); *In re ACR Mgmt., L.L.C.*, No. 04-27848 (MBM) (Docket No. 67) (Bankr. W.D. Pa. June 16, 2004) (same); *In re VER Techs. Holdco LLC*, No. 18-10834 (KG) (Bankr. D. Del. May 4, 2018) (same).

**REQUEST FOR IMMEDIATE RELIEF**

39.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003. For the reasons discussed herein and in the First Day Declaration, authorizing each of the Debtors to continue to operate using their Cash Management System, as well as granting the other relief requested herein, is critical to enabling the Debtors to effectively transition to operating as a chapter 11 debtor in possession and to preserve their business operations. Failure to receive such authorization and other relief during the first 21 days of this chapter 11 case would severely disrupt the Debtors' operations and significantly impact the Debtors' ability to reorganize swiftly and efficiently. As such, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course and preserve the ongoing value of the Debtors' operations and maximize the value of the estate for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

**WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)**

40.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**RESERVATION OF RIGHTS**

41.     For the avoidance of doubt, nothing in this Motion is intended to be, nor should it be construed as (a) an implication or admission as to the validity or priority of any claim against the Debtors, (b) an impairment or waiver of the Debtors' or any other party in interest's rights to

contest or dispute any such claim or lien, (c) a promise or requirement to pay any prepetition claim, (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estate; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

**<u>NOTICE</u>**

42.    Notice of this Motion has been provided by email, facsimile or overnight mail to: (i) the Office of the United States Trustee for the Western District of Pennsylvania, Federal Building, 1000 Liberty Avenue, Suite 1316, Pittsburgh, PA 15222; (ii) counsel to CIBC Bank, U.S.ALiz Boydston, Max Schlan, and Alexandria Rahn, Gutnicki, LLP, 10440 N. Central Expressway, Suite 800, Dallas, TX 75231; lboydston@gutnicki.com; mschlan@gutnicki.com; arahn@gutnicki.com; (iii) counsel to Cuarzo Healthcare, LLC, Elizabeth A. Green and Andrew Layden, BakerHostetler, 200 South Orange Avenue, Suite 2300, Orlando, FL 32801;

17

egreen@bakerlaw.com; alayden@bakerlaw.com; (iv) lien *lis pendens* parties (a) Harmony Property Management LLC; (b) Irwin Property Management LLC; (c) New Castle Property Management LLC; (d) New Wilmington Property Management LLC; (e) Latrobe Property Management LLC; and, (f) Washington Property Management LLC in care of Michael A. Shiner, Esq., and Maribeth Thomas, Esq., Tucker Arensberg, PC, 1500 One PPG Place, Pittsburgh, PA 15222; mshier@tuckerlaw.com; mthomas@tuckerlaw.com; (v) U.S. Foods, 9399 West Higgins Road, Rosemont, IL 60018; (vi) Department of Human Services, Office of Long-Term Living, Bureau of Finance, Forum Place 6th Floor, 555 Walnut Street, Harrisburg, PA 17101; (vii) CT Corporation, 330 N. Brand Blvd., Suite 700, Attn: SPRS, Glendale, CA 91203; (viii) those persons who have formally appeared and requested notice and service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (ix) the list of the 30 largest unsecured creditors of the Debtors on a consolidated basis; (x) U.S. Department of Labor, Office of the Regional Solicitor, 1835 Market Street, Mailstop SOL/22, Philadelphia, PA 19103-2968, Attn: Alejandro A. Herrera, Esq. Herrera.alejandro.a@dol.gov; facsimile (215) 861-5162, and (xi) the following governmental agencies having a regulatory or statutory interest in these Chapter 11 Cases: (a) Internal Revenue Service, PO Box 7346, Philadelphia, PA 19101-7346; (b) United States Attorney's Office for the Western District of Pennsylvania, Attn: Eric G. Olshan, Joseph F. Weis, Jr. United States Courthouse 700 Grant Street, Suite 4000, Pittsburgh, PA 15219; and (c) Commonwealth of Pennsylvania Attorney General, Attn: Michelle A. Henry, 16th Floor, Strawberry Square, Harrisburg, PA 17120. Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

18

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the

Court (a) enter an Order substantially in the forms annexed hereto as **Exhibit A** and **Exhibit B**

granting the interim and final relief requested in the Motion and (b) grant such other and further

relief as may be just and proper.

Dated May 17, 2024
   Pittsburgh, Pennsylvania

Respectfully submitted,

**WHITEFORD TAYLOR & PRESTON, LLP**

*/s/ Daniel R. Schimizzi*
Daniel R. Schimizzi (PA ID No. 311869)
Michael J. Roeschenthaler (PA ID No. 87647)
Mark A. Lindsay (PA ID No. 89487)
Sarah E. Wenrich (PA ID No. 325834)
11 Stanwix Street, Suite 1400
Pittsburgh, PA 15222
Telephone: 412-275-2401
Facsimile:  412-275-2404
Email: dschimizzi@whitefordlaw.com
mroeschenthaler@whitefordlaw.com
mlindsay@whitefordlaw.com
swenrich@whitefordlaw.com

*Proposed Local Counsel to the Debtors and
Debtors in Possession*

*-AND-*

Glenn B. Rose (*pro hac vice* pending)
Paul G. Jennings (*pro hac vice* pending)
Gene L. Humphreys (*pro hac vice* pending)
Jordan E. Thomas (*pro hac vice* pending)
Alfonso Cuen (*pro hac vice* pending)
**BASS, BERRY & SIMS PLC**
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone (615) 742-6200
Facsimile (615) 742-6293
grose@bassberry.com
pjennings@bassberry.com
ghumphreys@bassberry.com
jordan.thomas@bassberry.com
alfonso.cuen@bassberry.com

*Proposed Counsel to the Debtors and
Debtors in Possession*