IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re:<br><br>**SOUTH HILLS OPERATIONS, LLC**, *et al.*,[1]<br><br>Debtors. | Case No.: 24-21217-CMB<br><br>Chapter 11<br>*Joint Administration Requested*<br><br>Doc. No.: |
| **SOUTH HILLS OPERATIONS, LLC**, *et al.*,<br><br>Movant,<br><br>-vs -<br><br>NO RESPONDENTS. | Related to Document No.:<br><br>Hearing Date:<br><br>Hearing Time:<br><br>Response Deadline: |

### DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING PAYMENT OF PREPETITION OBLIGATIONS OWED TO PATIENT CARE CRITICAL VENDORS

The Debtors in the above captioned Chapter 11 Cases, through undersigned counsel, submit this motion (the "Motion"), pursuant to sections 105(a), 363(b), 503(b)(9), 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: South Hills Operations, LLC (5527); Monroeville Operations, LLC (3280); Mt. Lebanon Operations, LLC (1133); Murrysville Operations, LLC (9149); Cheswick Rehabilitation and Wellness Center, LLC (9561); 3876 Saxonburg Boulevard Propco, LLC (3618); North Strabane Rehabilitation and Wellness Center, LLC (1677); 100 Tandem Village Road Propco, LLC (1918); Maybrook-C Briarcliff Opco, LLC (5187); Maybrook-C Briarcliff Propco, LLC (1823); Maybrook-C Evergreen Opco, LLC (5388); Maybrook-C Evergreen Propco, LLC (2000); Maybrook-C Kade Opco, LLC (4033); Maybrook-C Kade Propco, LLC (2097); Maybrook-C Latrobe Opco, LLC (4148); Maybrook-C Latrobe Propco, LLC (2178); Maybrook-C Overlook Opco, LLC (7081); Maybrook-C Overlook Propco, LLC (6804); Maybrook-C Silver Oaks Opco, LLC (7146); Maybrook-C Silver Oaks Propco, LLC (9654); Maybrook-C Whitecliff Opco, LLC (6211); Maybrook-C Whitecliff Propco, LLC (4835). The Debtors' address is 485 Lexington Avenue, 10th Floor, New York, NY 10017.

9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court of the Western District of Pennsylvania (the "Local Rules"), for the entry of interim and final orders, in substantially the forms attached as **Exhibit A** (the "Proposed Interim Order") and **Exhibit B** (the "Proposed Final Order" and, together with the Proposed Interim Order, the "Proposed Orders"), respectively, authorizing, but not directing, the Debtors to pay the prepetition claims of certain critical vendors whose services or products directly impact the Debtors' ability to provide quality care to the residents of their nursing facilities (the "Patient Care Critical Vendors" and the "Patient Care Critical Vendor Claims"). In support of this Motion, the Debtors rely on the *Declaration of Louis E. Robichaux IV, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and Various First Day Applications and Motions* (the "First Day Declaration")[2] filed contemporaneously herewith and respectfully represent as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a) 363(b), 503(b)(9), 1107(a), and 1108 of the Bankruptcy Code Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1.

## BACKGROUND

3. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Court.

---

[2] Capitalized terms not otherwise defined herein shall have the same definitions as ascribed to them in the First Day Declaration.

2

4.      The Debtors' continue in the management and operation of thirteen skilled nursing facilities in Western Pennsylvania as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or creditors' committee has been appointed in the Chapter 11 Cases.

5.      Additional information regarding the Debtors and the Chapter 11 Cases, including the Debtors' business, corporate structure, financial condition, and the reasons for and objectives of the Chapter 11 Cases, is set forth in the First Day Declaration, filed on the Petition Date and fully incorporated herein by reference.

## RELIEF REQUESTED

6.      By this Motion, the Debtors respectfully request the entry of the Proposed Orders authorizing, but not directing, the Debtors to pay all or a portion of its Patient Care Critical Vendor Claims to Patient Care Critical Vendors (*as defined below*) in an amount not to exceed $150,000 on an interim basis and $200,000 on a final basis (with respect to each of the interim and final periods, as applicable, the "Patient Care Critical Vendor Cap").

## OVERVIEW OF THE DEBTOR'S PATIENT CARE CRITICAL VENDORS

7.      The thirteen skilled nursing facilities managed and operated by Debtors require a steady supply of goods and/or services from the Patient Care Critical Vendors that provide essential healthcare goods and services to the residents of those facilities. The continued, uninterrupted provision of goods and services, including staff supplied by staffing agencies, medical supplies, food, maintenance and other critical services, plays a crucial role in the Debtors' ability to fulfill their ongoing responsibility for the care of the residents of their skilled nursing facilities. A disruption in the supply of such goods and services could jeopardize the availability of life-saving care and could compromise the Debtors' ability to maintain the required standards

of resident care and safety. Moreover, without these goods and services, the Debtors may not be able to provide the legally required care to residents of their skilled nursing facilities.

8.  In order to avoid the severe disruption to the Debtors' operations that would occur if the Debtors were to lose certain essential providers, it is prudent for the Debtors, in their discretion, to pay selected Patient Care Critical Vendors some or all of their prepetition claims. Consistent with these needs, the Debtors seek authority to implement procedures that will be vital to the well-being of the Debtors' current and future residents.

### A. IDENTIFICATION OF PATIENT CARE CRITICAL VENDORS.

9.  The Debtors, working with their advisors, have determined that the ability to satisfy certain Patient Care Critical Vendor Claims is necessary to maintain resident care at each of the skilled nursing facilities operated by the Debtors. The Debtors seek this relief only for those vendors truly critical to the Debtors' ongoing responsibilities for resident care. To the extent any Patient Care Critical Vendor may be entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code, payment of those Patient Care Critical Vendor Claims would merely expedite the treatment to which such vendors would otherwise be entitled under the Bankruptcy Code.

10. Before paying any Patient Care Critical Vendor claim, the Debtors will make a good faith determination that payment is in the best interest of the Debtors' bankruptcy estates because, among other things: (i) a supplier is a sole source or limited source supplier, without whom the Debtors could not continue to operate without disruption; (ii) the Debtors' lack the ability to find alternative sources of supply and face a potential disruption to patient care revenues if payment is not made; (iii) the supplier is vital and would be expensive to replace; or (iv) loss of

the supplier would present an unacceptable risk to the care of the residents of the Debtors' facilities.

### B. THE RELIEF REQUESTED IS SPECIFICALLY DESIGNED TO AVOID IMMEDIATE AND IRREPARABLE HARM.

11. The relief requested herein is specifically designed to ensure the Debtors' ability to operate without interruption and to maintain high quality resident care at each of the nursing facilities operated by the Debtors. The Debtors will suffer irreparable harm if essential goods and services are not provided by the Patient Care Critical Vendors. The loss of such vendors will significantly impair the Debtors' ability to provide services that are vital to the well-being of the Debtors' current and future residents.

12. The Debtors intend to use the flexibility afforded by this Motion to limit amounts paid on prepetition balances while ensuring the uninterrupted supply of critical goods and services on the best available terms. There is very real risk that certain Patient Care Critical Vendors will not continue to work with the Debtors in the absence of being made whole on some or all of their outstanding prepetition balances, and the Debtors cannot afford to take that risk.

### PROPOSED TREATMENT OF PATIENT CARE CRITICAL VENDORS

13. While the Debtors expect to secure a continuing postpetition supply of goods and services, in most cases through consensual negotiation with the Patient Care Critical Vendors, the Debtors recognize that they must consider and plan for the vendors that may refuse to provide future goods or services unless their prepetition claims are paid.

14. The Debtors seek authority to pay Patient Care Critical Vendor Claims in an aggregate amount not to exceed the Patient Care Critical Vendor Cap. To minimize the amount of payments required, the Debtors propose that the Interim Order and Final Order each provide authorization for the Debtor to condition payment of all or a portion of the Patient Care Critical

5

Vendor Claims upon each Patient Care Critical Vendor's agreement to continue supplying goods and/or services in accordance with certain procedures, generally as follows:[3]

    a)    The Debtors may, in their sole discretion, condition payment of the Patient Care Critical Vendor Claims of each Patient Care Critical Vendor upon an agreement to continue to supply goods or services to the Debtors on terms no less favorable than those in effect within the twelve (12) months prior to the Petition Date (the "Customary Trade Terms") during these Chapter 11 Cases.

    b)    The Debtors reserve the right to negotiate trade terms with any Patient Care Critical Vendor, as a condition to payment of any Patient Care Critical Vendor Claim, that vary from the Customary Trade Terms (the "Negotiated Trade Terms") to the extent the Debtors determine that such terms are necessary to procure essential goods or services or are otherwise in the best interests of the Debtors' estates.

    c)    The Debtors are authorized, but not required, to obtain written verification of the Customary Trade Terms or the Negotiated Trade Terms, to be supplied by the Patient Care Critical Vendors, before issuing payment hereunder.

15.    The Debtors further propose that if a Patient Care Critical Vendor accepts a payment on account of a prepetition obligation of the Debtors (a "Vendor Payment") and thereafter fails to provide the Debtors with the requisite Customary Trade Terms or Negotiated Trade Terms (each such Patient Care Critical Vendor, a "Defaulting Vendor"), the Debtors seek authority to (a) treat any Vendor Payment received by the Defaulting Vendor as an unauthorized postpetition transfer under section 549 of the Bankruptcy Code that the Debtors may (i) recover from the Defaulting Vendor in cash or goods, or (ii) at the Debtors' option, apply as a credit against any outstanding postpetition claims held by such Defaulting Vendor; and (b) upon recovery of any Vendor Payment under clause (i) or (ii), reinstate the prepetition claim of the Defaulting Vendor

---

[3] To ensure that Patient Care Critical Vendors continue business with the Debtors, the Debtors propose that a letter substantially in the form of the letter attached hereto **Exhibit C** (the "Vendor Agreement") be delivered to, and executed by, the Patient Care Critical Vendors in exchange for receiving payment on the Patient Care Critical Vendor claims.

6

in the amount recovered by the Debtors, less the Debtors' reasonable fees and costs, including attorneys' fees, incurred in recovering such amounts. Further, by virtue of having accepted a Vendor Payment, each Patient Care Critical Vendor shall be deemed to have waived any and all defenses it might otherwise have against the Debtors with respect to any action commenced by the Debtors under section 549 of the Bankruptcy Code as described above. In essence, the Debtors will return the parties to their positions immediately prior to the entry of the order approving the relief sought herein.

16. The Debtors believe that payment of some or all Patient Care Critical Vendor Claims owed to Patient Care Critical Vendors will be necessary to maintain the high quality of care to the residents of the skilled nursing facilities operated by the Debtors. During this period, it is imperative that the Debtors remain focused and avoid distractions from vendors attempting to assert leverage or deny provision of goods and services going forward, suddenly and without notice, which could put residents of the skilled nursing facilities in danger. Moreover, the loss of Patient Care Critical Vendors and the efforts that would be required to replace such vendors would be a substantial and costly distraction at a time when the Debtors must focus on ensuring the care of the continuing high standards of care in the skilled nursing facilities.

17. As healthcare providers, the Debtors operate in one of the most heavily regulated and closely scrutinized industries in the country. The Debtors' ability to succeed in the healthcare space relies, among other things, on their ability to fulfill their mandate as a skilled nursing care provider and meet regulatory requirements. In some cases, local, state, and federal law require the Debtors to provide services that are available only from certain Patient Care Critical Vendors, including those needed to comply with regulations applicable to skilled nursing facilities. It is

absolutely vital to the well-being of the Debtors' current and future residents that the Debtors maintain their business relationships with the Patient Care Critical Vendors.

### REQUEST FOR AUTHORITY FOR FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS

18. The Debtors also request that all applicable banks and other financial institutions be authorized to receive, process, honor, and pay all checks presented for payment of, and to honor all, fund transfer requests made by the Debtors related to the claims that the Debtors request authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before or after the Petition Date. Provided, however, that: (i) funds are available in the Debtors' accounts to cover the checks and fund transfers; and, (ii) all of the banks and other financial institutions are authorized to rely on the Debtors' designation of any particular check as approved by the attached proposed order.

### BASIS FOR REQUESTED RELIEF

**A. THIS COURT MAY AUTHORIZE PAYMENT OF THE PATIENT CARE CRITICAL VENDOR CLAIMS PURSUANT TO SECTIONS 105(a), 363(b), 1107(a), AND 1108 OF THE BANKRUPTCY CODE.**

19. The Debtors, operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." *In re CoServ, LLC*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). "Implicit in the duties of a chapter 11 … debtor-in-possession … is the duty to protect and preserve the estate, including an operating business's going-concern value." *Id*. Consistent with a debtor's fiduciary duties to preserve the estate, courts have authorized payment of prepetition obligations pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (stating that section 363(b) provides the court "broad flexibility in tailoring its

8

orders" where a debtor's request to satisfy prepetition claims is supported by a proper business justification); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) ("Section 105(a) of the Code provides a statutory basis for the payment of pre-petition claims").

20. Pursuant to section 363(b) of the Bankruptcy Code, a debtor's decision to use, sell, or lease assets outside the ordinary course of business under section 363(b) of the Bankruptcy Code must be based upon the sound business judgment of the debtor. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Chateaugay Corp.*, 973 F.2d 141, 145 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him or her a good business reason to grant such application).

21. The debtor must "articulate some business justification, other than mere appeasement of major creditors." *Ionosphere Clubs, Inc.*, 98 B.R. at 175. Courts have consistently declined to interfere with a debtor's business decision, provided that the debtor can demonstrate that the decision was made in good faith and on an informed basis. *In re Dura Auto. Sys.*, 2007 Bankr. LEXIS 2764, at *259–60 (Bankr. D. Del. Aug. 15, 2007) ("[O]nce 'the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.'" (quoting *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986))); *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 797 (Bankr. D. Del. 2007) ("[I]f the Court determines that a transaction is in the ordinary course of a debtor's business, the Court will not entertain an objection to the transaction, provided that the conduct involves a business judgment made in good faith upon a reasonable basis and within the scope of authority under the Bankruptcy Code.").

22. In addition, courts may authorize payment of prepetition claims in appropriate circumstances under section 105(a) of the Bankruptcy Code, which empowers the Court to "issue

9

any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs*, 98 B.R. at 175. Under section 105(a) of the Bankruptcy Code, the Court "can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); *see also Just for Feet, Inc.*, 242 B.R. at 825 ("to invoke the necessity of payment doctrine, a debtor must show that payment of the prepetition claims is critical to the debtor's reorganization.") Numerous courts, including the Third Circuit, have recognized the "doctrine of necessity" as a mechanism by which a bankruptcy court can exercise its equitable powers to authorize payment of a debtor's prepetition obligations where, as here, such payment is necessary to effectuate the "paramount purpose" of chapter 11 reorganization, which is to prevent the debtor from going into liquidation and preserve the debtor's potential for rehabilitation.

23.     The doctrine of necessity "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176; *see also In re Chateaugay Corp.*, 80 B.R. 279 (S.D.N.Y. 1987). This rule is consistent with the paramount goal of chapter 11, *i.e.*, "facilitating the continued operation and rehabilitation of the debtor" *Ionosphere Clubs*, 98 B.R. at 176.

24.     Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay the prepetition claims of certain critical vendors. *See In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f payment of a pre-petition claim 'is essential to the continued operation of [the debtor], payment may be

10

authorized'" (quoting *In re Lehigh & N. E. R. Co.*, 657 F.2d 570, 581 (3d Cir. 1981))). Indeed, it is not uncommon for courts in this District to authorize the payment of critical trade claims where the payment of such claims is essential to the debtors' continued operations.

### B. PAYMENT OF PATIENT CARE CRITICAL VENDOR CLAIMS IS NECESSARY TO THE DEBTOR'S REORGANIZATION

25. The Debtors submit that the requested relief represents a sound exercise of the Debtors' business judgment, is justified under sections 105(a), 363(b), and 503(b)(9) of the Bankruptcy Code, and is in line with the relief granted in this and other districts. As further set forth in this Motion, the Debtors have sound business reasons for seeking authority to pay the Patient Care Critical Vendors Claims. It is the Debtors' business judgment that the failure to pay the Patient Care Critical Vendor Claims would likely have a material adverse impact on the residents of the skilled nursing facilities operated by the Debtors.

26. Absent such payment, the Debtors' ability to provide quality care to their residents would be jeopardized, possibly precipitously, and the requested relief is necessary to avoid immediate and irreparable harm. The Debtors rely heavily on these goods and services to maintain day-to-day operations of the skilled nursing facilities. Quickly securing replacement vendors without a disruption to the Debtors' business operations would be extremely difficult and likely impact the Debtors' ability to maintain high-quality care for their residents.

27. The authority to pay Patient Care Critical Vendor Claims as set forth herein is therefore necessary to the Debtors' reorganizational efforts by ensuring that the Debtors continue to provide high-quality care to the residents of the skilled nursing facilities by receiving essential goods and services that are actually or practically unavailable from other sources while preserving critical relationships with the Debtors' vendors.

28. The Debtors' requested relief is specifically designed only to pay those Patient Care Critical Vendor Claims where nonpayment of such claims would lead to the interruption of the Debtors' operations, and the proposed Patient Care Critical Vendor Cap is not large, thereby further ensuring that the Debtors only pay Patient Care Critical Vendor claims that are truly essential. Moreover, the Debtors believe that a portion of the Patient Care Critical Vendor Claims are entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.

29. Overall, the amount that the Debtors seek to pay pales in comparison to the irreparable harm that the Debtors would suffer if relationships with the Patient Care Critical Vendors were terminated. Thus, the Debtors submit that the requested relief is specifically designed to facilitate the Debtors' efforts to provide necessary care to the residents of their nursing facilities, and this Court should authorize the payment of Patient Care Critical Vendor Claims to prevent enormous disruptions to the Debtor's business and possible harm to the residents at the Debtors' nursing facilities.

**THE REQUIREMENTS TO BANKRUPTCY RULE 6003 ARE SATISFIED**

30. Bankruptcy Rule 6003 empowers the Court to issue an order, within twenty-one (21) days after the Petition Date, granting a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" if such requested relief "is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b). As discussed herein and in the First Day Declaration, the ability to pay the Patient Care Critical Vendors is necessary to ensure the continued and uninterrupted operation of the Debtors' overall businesses. Nonpayment of the Patient Care Critical Vendors would result in significant business disruptions, significantly prejudice the residents living at the skilled nursing facilities operated by

the Debtors, and the interests of all stakeholders in these Chapter 11 Cases. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

31. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### RESERVATION OF RIGHTS

32. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of, any claim against a Debtors entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance, on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties

in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## **NOTICE**

33. Notice of this Motion has been provided by email, facsimile or overnight mail to: (i) the Office of the United States Trustee for the Western District of Pennsylvania, Federal Building, 1000 Liberty Avenue, Suite 1316, Pittsburgh, PA 15222; (ii) counsel to CIBC Bank, U.S.A., Liz Boydston, Max Schlan, and Alexandria Rahn, Gutnicki, LLP, 10440 N. Central Expressway, Suite 800, Dallas, TX 75231; lboydston@gutnicki.com; mschlan@gutnicki.com; arahn@gutnicki.com; (iii) counsel to Cuarzo Healthcare, LLC, Elizabeth A. Green and Andrew Layden, BakerHostetler, 200 South Orange Avenue, Suite 2300, Orlando, FL 32801; egreen@bakerlaw.com; alayden@bakerlaw.com; (iv) lien *lis pendens* parties (a) Harmony Property Management LLC; (b) Irwin Property Management LLC; (c) New Castle Property Management LLC; (d) New Wilmington Property Management LLC; (e) Latrobe Property Management LLC; and, (f) Washington Property Management LLC in care of Michael A. Shiner, Esq., and Maribeth Thomas, Esq., Tucker Arensberg, PC, 1500 One PPG Place, Pittsburgh, PA 15222; mshier@tuckerlaw.com; mthomas@tuckerlaw.com; (v) U.S. Foods, 9399 West Higgins Road, Rosemont, IL 60018; (vi) Department of Human Services, Office of Long-Term Living, Bureau of Finance, Forum Place 6th Floor, 555 Walnut Street, Harrisburg, PA 17101; (vii) CT Corporation, 330 N. Brand Blvd., Suite 700, Attn: SPRS, Glendale, CA 91203; (viii) those persons who have formally appeared and requested notice and service in these proceedings pursuant to

Bankruptcy Rules 2002 and 3017; (ix) the list of the 30 largest unsecured creditors of the Debtors on a consolidated basis; (x) U.S. Department of Labor, Office of the Regional Solicitor, 1835 Market Street, Mailstop SOL/22, Philadelphia, PA 19103-2968, Attn: Alejandro A. Herrera, Esq. Herrera.alejandro.a@dol.gov; facsimile (215) 861-5162, and (xi) the following governmental agencies having a regulatory or statutory interest in these Chapter 11 Cases: (a) Internal Revenue Service, PO Box 7346, Philadelphia, PA 19101-7346; (b) United States Attorney's Office for the Western District of Pennsylvania, Attn: Eric G. Olshan, Joseph F. Weis, Jr. United States Courthouse 700 Grant Street, Suite 4000, Pittsburgh, PA 15219; and (c) Commonwealth of Pennsylvania Attorney General, Attn: Michelle A. Henry, 16th Floor, Strawberry Square, Harrisburg, PA 17120.  Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

## NO PRIOR REQUEST

34. No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter Interim and Final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested in the Motion and such other and further relief as may be just and proper.

*[The remainder of this page is intentionally left blank]*

Dated  May 17, 2024
Pittsburgh, Pennsylvania

Respectfully submitted:

**WHITEFORD TAYLOR & PRESTON, LLP**

 /s/ Daniel R. Schimizzi
Daniel R. Schimizzi (PA ID No. 311869)
Michael J. Roeschenthaler (PA ID No. 87647)
Mark A. Lindsay (PA ID No. 89487)
Sarah E. Wenrich (PA ID No. 325834)
11 Stanwix Street, Suite 1400
Pittsburgh, PA 15222
Telephone: 412-275-2401
Facsimile:  412-275-2404
Email: dschimizzi@whitefordlaw.com
mroeschenthaler@whitefordlaw.com
mlindsay@whitefordlaw.com
swenrich@whitefordlaw.com

*Proposed Local Counsel to the Debtors and Debtors in Possession*

-*AND*-

Glenn B. Rose (*pro hac vice* pending)
Paul G. Jennings (*pro hac vice* pending)
Gene L. Humphreys (*pro hac vice* pending)
Jordan E. Thomas (*pro hac vice* pending)
Alfonso Cuen (*pro hac vice* pending)
**BASS, BERRY & SIMS PLC**
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone (615) 742-6200
Facsimile (615) 742-6293
grose@bassberry.com
pjennings@bassberry.com
ghumphreys@bassberry.com
jordan.thomas@bassberry.com
alfonso.cuen@bassberry.com

*Proposed Counsel to the Debtors and Debtors in Possession*

16