## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In Re:** | **Case No.: 24-21217-CMB** |
| **SOUTH HILLS OPERATIONS, LLC, *et al.*,**[1] | **Chapter 11** <br> ***Joint Administration Requested*** |
| **Debtors.** | **Doc. No.:** |
| **SOUTH HILLS OPERATIONS, LLC, *et al.*,** | **Related to Document No.:** |
| **Movant,** | **Hearing Date:** |
| **-vs -** | **Hearing Time:** |
| **NO RESPONDENTS.** | **Response Deadline:** |

## MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION WAGES, BENEFITS AND OTHER COMPENSATION OBLIGATIONS, (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR ALL OBLIGATIONS RELATED THERETO, AND (III) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (the "Debtors"), by and through

their undersigned counsel, respectfully file this Motion for Entry of Interim and Final Orders

(I) Authorizing the Debtors to Pay Certain Prepetition Wages, Benefits and Other Compensation

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: South Hills Operations, LLC (5527); Monroeville Operations, LLC (3280); Mt. Lebanon Operations, LLC (1133); Murrysville Operations, LLC (9149); Cheswick Rehabilitation and Wellness Center, LLC (9561); 3876 Saxonburg Boulevard Propco, LLC (3618); North Strabane Rehabilitation and Wellness Center, LLC (1677); 100 Tandem Village Road Propco, LLC (1918); Maybrook-C Briarcliff Opco, LLC (5187); Maybrook-C Briarcliff Propco, LLC (1823); Maybrook-C Evergreen Opco, LLC (5388); Maybrook-C Evergreen Propco, LLC (2000); Maybrook-C Kade Opco, LLC (4033); Maybrook-C Kade Propco, LLC (2097); Maybrook-C Latrobe Opco, LLC (4148); Maybrook-C Latrobe Propco, LLC (2178); Maybrook-C Overlook Opco, LLC (7081); Maybrook-C Overlook Propco, LLC (6804); Maybrook-C Silver Oaks Opco, LLC (7146); Maybrook-C Silver Oaks Propco, LLC (9654); Maybrook-C Whitecliff Opco, LLC (6211); Maybrook-C Whitecliff Propco, LLC (4835). The Debtors' address is 485 Lexington Avenue, 10th Floor, New York, NY 10017.

Obligations, (II) Authorizing Financial Institutions to Honor all Obligations Related Thereto, and (III) Granting Related Relief. (the "Motion").  In support of the Motion, the Debtors state as follows:

## RELIEF REQUESTED

1.       By this Motion, the Debtors request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Proposed Interim Order") and **Exhibit B** (the "Proposed Final Order"): (i) authorizing the Debtors to pay and honor certain prepetition wages, benefits and other compensation obligations; (ii) authorizing and directing banks and financial institutions to receive, process, honor and pay checks presented for payment and electronic payment requests relating to prepetition wages and benefits; (iii) scheduling a final hearing (the "Final Hearing") to consider entry of the Proposed Final Order, to the extent necessary; and (v) granting related relief.

## JURISDICTION

2.       This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The statutory bases for the relief requested herein are sections 105(a), 363, 507 and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"), as supplemented by rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and W. PA. LBR 1002-6(e)(12).

## BACKGROUND

4.       On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases"). The Debtors continue to operate their business and manage their properties as debtors in possession

pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the

appointment of a trustee or examiner in the Chapter 11 Cases and no statutory committees have

been appointed or designated.

5.     A detailed description of the Debtors and their business, and the facts and

circumstances supporting this Motion and the Debtors' filing of voluntary petitions for relief under

chapter 11 of the Bankruptcy Code are set forth in greater detail in the *Declaration of Louis E.*

*Robichaux IV, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and*

*Various First Day Applications and Motions* (the "First Day Declaration"), filed

contemporaneously herewith.[2] This Motion incorporates by reference the facts set forth in the First

Day Declaration as if fully set forth herein.

## EMPLOYEE COMPENSATION AND OBLIGATIONS[3]

**A.     The Debtors' Workforce**

6.     As of the Petition Date, the thirteen (13) operating company Debtors (collectively

the "OpCo Debtors") and their respective facilities (collectively the "Facilities")[4] employed

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

[3] The description of employee compensation, obligations, benefits and programs described herein are for summary purposes only and are qualified in their entirety by the applicable documents and/or agreements governing such compensation, obligations, benefits and programs.  In the event of any inconsistency, the applicable documents and/or agreements governing such compensation, obligations, benefits and programs control.

[4] The following are the operating companies and their respective facilities:  South Hills Operations, LLC dba South Hills Rehabilitation and Wellness Center; Monroeville Operations, LLC dba Monroeville Rehabilitation and Wellness Center; Mt. Lebanon Operations, LLC dba Mt. Lebanon Rehabilitation and Wellness Center; Murrysville Operations, LLC dba Murrysville Rehabilitation and Wellness Center; Cheswick Rehabilitation and Wellness Center, LLC dba Cheswick Rehabilitation and Wellness Center; North Strabane Rehabilitation and Wellness Center, LLC dba North Strabane Rehabilitation and Wellness Center; Maybrook-C Briarcliff Opco, LLC dba The Grove at North Huntingdon; Maybrook-C Evergreen Opco, LLC dba The Grove at Harmony; Maybrook-C Kade Opco, LLC dba The Grove at Washington; Maybrook-C Latrobe Opco, LLC

approximately 1,246 people (collectively, the "Employees"), all of whom are located in the United States.[5]

7.      The Employees include approximately 859 full-time Employees and approximately 387 part-time Employees.  Approximately 1,083 Employees are paid on an hourly basis and approximately 163 Employees are paid a salary.[6]

8.      The Debtors' ability to provide quality care at the Facilities depends on the continued service and morale of the Debtors' workforce.  The Employees perform functions critical to the Debtors' ordinary course operations and the orderly administration of these Chapter 11 Cases. For example, the Employees are distinctly familiar with the Debtors' processes and systems, and possess specialized knowledge, skills, or experience that the Debtors cannot easily replace.  Among other duties, the Employees provide direct care to the Facilities' residents, as well as dietary needs, maintenance, and supervision of the Facilities' operations.  Moreover, the Employees possess the experience and skills necessary to support the OpCo Debtors' business operations during these Chapter 11 Cases while the Debtors pursue a successful sale of their businesses.

9.      The vast majority of the Employees rely on their compensation to pay their daily living expenses and to support their families.  The Employees will be exposed to significant financial hardship if the Debtors are not permitted to pay amounts due for work performed prior to the Petition Date and to continue paying these amounts in the ordinary course of business.  These

---

dba The Grove at Latrobe; Maybrook-C Overlook Opco, LLC dba The Grove at New Wilmington; Maybrook-C Silver Oaks Opco, LLC dba The Grove at New Castle; Maybrook-C Whitecliff Opco, LLC dba The Grove at Greenville.

[5] Debtors that are real estate holding companies (the "PropCo Debtors") have no employees.

[6] In general, Employees work for, and are paid by, one Facility, however certain Employees may perform work for two or more Facilities.

Chapter 11 Cases will likely create Employee anxiety, and the requested relief is critical to adequately alleviate some of these concerns.

10.    The OpCo Debtors also incur other financial obligations related to the Employees, such as bonuses, vacation, matching retirement plan contributions, reimbursement of expenses, training expenses, federal and state withholding taxes and other withheld amounts (collectively including wages, the "Employee Obligations").

11.    In addition to the Employee Obligations, the OpCo Debtors provide health and welfare benefits, including various insurance policies, 401(k) retirement plans and other miscellaneous benefits in the ordinary course of their business as further described and defined below, including Benefit Plans, Retirement Benefits Plans, and PTO (collectively the "Employee Programs").  The Employees will be exposed to significant financial hardship if the Debtors are not permitted to pay any amounts due under the Employee Programs as of the Petition Date and to continue the Employee Programs during these Chapter 11 Cases, as the vast majority of Employees rely on health and other benefits the Debtors provide to meet their and their families' health and other daily needs.

12.    Excepting Debtors Maybrook-C Overlook Opco, LLC and Maybrook-C Whitecliff Opco, LLC, all other OpCo Debtors are parties to collective bargaining agreements (collectively the "CBAs") as set forth below:

(a)    Agreement between The Grove at Irwin - Briarcliff (Maybrook-C Briarcliff Opco, LLC) and SEIU Healthcare Pennsylvania CTW, CLC (August 15, 2016 – June 30, 2021);

(b)    Agreement between Maybrook-C Briarcliff Opco, LLC, dba The Grove at Irwin and OPEIU Healthcare Pennsylvania Local 112, Local 112 OPEIU, AFL-CIO, CLC (dated March 31, 2017);

(c)    Memorandum of Agreement (in negotiations) between Maybrook-C Briarcliff Opco, LLC d/b/a The Grove at Irwin and OPEIU Local 153, AFL-CIO, CLC  (January 1, 2022 – December 31, 2024);

(d)     Agreement between The Grove at Harmony - Evergreen (Maybrook-C Evergreen Opco, LLC) and SEIU Healthcare Pennsylvania CTW, CLC (August 15, 2016 – June 30, 2021);

(e)     Agreement between The Grove at Washington (Maybrook-C Kade Opco, LLC) and SEIU Healthcare Pennsylvania CTW, CLC (August 15, 2016 – June 30, 2021);

(f)     Agreement between Latrobe Health Rehabilitation Center (Maybrook-C Latrobe Opco, LLC) and International Brotherhood of Teamsters Local Union No. 30 (April 1, 2021 – March 31, 2026);

(g)     Agreement between The Grove at New Castle (Maybrook-C Silver Oaks Opco, LLC) and SEIU Healthcare Pennsylvania CTW, CLC (August 15, 2016 – June 30, 2021);

(h)     Collective Bargaining Agreement between South Hills Operations, LLC d/b/a South Hills Rehabilitation and Nursing Center and General Teamsters Local Union 585 (January 1, 2022 – December 31, 2024);

(i)     Agreement between Cheswick Rehabilitation and Wellness Center and SEIU Healthcare Pennsylvania CTW, CLC (September 1, 2022 – August 31, 2025);

(j)     Agreement between North Strabane Rehabilitation and Wellness Center LLC, North Strabane Retirement Village, LLC and SEIU Healthcare Pennsylvania CTW, CLC (September 1, 2017 – August 1, 2022);

(k)     Tentative Agreement (in negotiations) between North Strabane Rehabilitation and Wellness, LLC and SEIU Healthcare Pennsylvania (September 1, 2022 – August 31, 2025);

(l)     Memorandum of Agreement between SEIU Healthcare Pennsylvania and North Strabane Rehabilitation and Wellness, LLC (extending agreement through August 31, 2025);

(m)     Agreement between Monroeville Operations LLC (Monroeville Rehabilitation and Wellness Center), Mt Lebanon Operations LLC (Mt Lebanon Rehabilitation and Wellness Center), Murrysville Operations LLC (Murrysville Rehabilitation and Wellness Center) and SEIU Healthcare Pennsylvania CTW, CLC (February 1, 2017 – June 30, 2021); and

(n)     Tentative Agreement between SEIU Healthcare PA and Monroeville Rehabilitation & Wellness Center, Mt. Lebanon Rehabilitation and Wellness Center, Murrysville Rehabilitation & Wellness Center, The Grove at Harmony, The Grove at Irwin, The Grove at New Castle, The Grove at Washington (September 8, 2022 – May 31, 2025).

13.     The Bankruptcy Code requires that the compensation and benefits owed under these CBAs be continued unless and until the Court orders otherwise. *See* 11 U.S.C. § 1113.

B.      **Employee Compensation and Benefit Programs and Employee Obligations**

14.      The Debtors seek authority to pay and honor certain prepetition claims and continue to honor obligations on a postpetition basis relating to all of their Employee Obligations and Employee Programs that the OpCo Debtors have historically provided in the ordinary course of their business. The Debtors' timely payment of workforce-related obligations is necessary for the OpCo Debtors to maintain ordinary course operations, continue providing quality resident care, and avoid personal financial hardship to the Employees.

15.      In sum, the Debtors seek authority to make the following payments related to prepetition amounts owed on account of the Employee Obligations and Employee Programs.

| RELIEF SOUGHT | AMOUNT |
|---|---|
| **Compensation, Withholding, and Related Obligations** | |
| Employee Wages | $1,390,000 |
| Bonuses | $15,000 |
| Reimbursable Expenses | $1,500 |
| Withholding and Deduction Obligations | $497,000 |
| **Employee Benefits Programs and Obligations** | |
| Health and Wellness Benefits | $197,000 |
| Retirement Benefit Plans | $8,000 |
| Accrued PTO and Holidays | $1,602,000 |
| Miscellaneous Employee Benefits | $56,000 |
| COBRA Benefits | $3,000 |
| **TOTAL** | $3,769,500 |

C.      **Employee Wages**

16.      On average, the OpCo Debtors pay approximately $4,658,000 in gross wages and salary per month for their current Employee base.[7]  In the ordinary course of business, the OpCo Debtors disburse payroll (the "Employee Wages") on a bi-weekly basis, but on different schedules

---

[7]This amount reflects an 8-month average of the Debtors' Facilities as of the Petition Date.

at different Facilities (see **Exhibit C**).  As of the Petition Date, the OpCo Debtors owed Employee Wages for work performed prior to the Petition Date.  Those post-petition disbursements are owed to Employees for accrued but unpaid Employee Wages as of the Petition Date with respect to such payroll periods.  Accrued but unpaid Employee Wages may also be due as of the Petition Date for other reasons, such as Employees being owed some amount for previous payroll periods or for expense reimbursement.

17.    As of the Petition Date, the OpCo Debtors estimate that they owe approximately $1,390,000 for prepetition Employee Wages all of which will become due and payable within the Interim Period.  The Debtors seek authority, but not direction, to satisfy the prepetition Employee Wages in the ordinary course of business, including reissuing any unreceived pay or uncashed checks as necessary, subject, to the Priority Cap[8], and to honor Employee Wages accrued on or after the Petition Date in the ordinary course.

18.    CHMS Group, LLC ("CHMS"), which has overlapping ownership with several of the Debtors, manages the processing and payment of the various obligations described herein for the OpCo Debtors' Employees.  CHMS processes payroll and withholdings, remits pay, and reports of payroll taxes for the Employees.  Each of the OpCo Debtors pay a monthly fee to CHMS for these and other administrative services, including billing and collection of accounts receivable, financial reporting, preparing cost reports and verifying, accounting for, and managing accounts payable.

**D.    Bonuses**

19.    The Debtors seek authority to continue, at their discretion and in a manner consistent with prepetition practice, their bonus programs to drive performance to preserve

---

[8] The current Priority Cap is $15,150 per employee.  *See* 11 U.S.C. § 507(a)(4).

Employee morale and to ensure the Debtors maintain a motivated workforce during these Chapter 11 Cases.  In the ordinary course of business, the Debtors provide various incentive awards to eligible Employees, including employee referral programs, sign-on bonuses, and performance bonuses.  In the six (6) months prior to the Petition Date, the Debtors paid approximately $300,000 in bonuses. The Debtors estimate that there is approximately $15,000 in accrued but unpaid obligations owed under the bonus programs, which the Debtors seek to pay in the ordinary course.

### E.    Reimbursable Expenses

20.    In the ordinary course of business, the Debtors also reimburse eligible Employees for reasonable approved expenses incurred performing their job functions (the "Reimbursable Expenses").  Reimbursable Expenses include certain work-related travel expenses and other qualifying business expenses, including certain costs related to employee training.  Employees are expected to use sound judgment when incurring business expenses for which they seek reimbursement.  In the eight (8) months before the Petition Date, the Debtors incurred an average of approximately $1,500 per month for Reimbursable Expenses.  As of the Petition Date, the Debtors estimate they owe approximately $1,500 in the aggregate on account for Reimbursable Expenses.

21.    The Debtors' inability to pay Reimbursable Expenses could impose hardship on Employees where they incurred Reimbursable Expenses believing the Debtors would timely reimburse such expenses.  Accordingly, the Debtors request authority to pay prepetition Reimbursable Expenses and to continue paying Reimbursable Expenses on a postpetition basis in the ordinary course of business.

### F.    Withholding and Deduction Obligations

22.    Each pay period, the OpCo Debtors routinely deduct certain amounts directly from Employees' pay, including, but not limited to: (i) garnishments, child support, employee savings

and other similar deductions as applicable; and (ii) other pre- and after-tax deductions payable pursuant to Employees Obligations, legally-ordered deductions and other miscellaneous deductions (collectively, the "Deductions").

23.     Based upon the Employees' salaries and wages, the law requires the OpCo Debtors to also withhold amounts related to federal, state and local income taxes, as well as Social Security and Medicare, and to remit such withholdings to the applicable authorities.  The law also requires OpCo Debtors required to make matching payments from their own funds for Social Security and Medicare and to pay, based on a percentage of gross payroll, state and federal unemployment insurance, employment training taxes and state disability insurance contributions (all of the foregoing, collectively, the "Payroll Tax Obligations").  Each pay cycle, the OpCo Debtors withhold applicable Payroll Tax Obligations from Employees' wages and remit such amounts to the applicable authorities.

24.     In the eight (8) months before the Petition Date, the Debtors incurred approximately $1,700,000 per month on account of Deductions and Payroll Tax Obligations.  As of the Petition Date, the OpCo Debtors have withheld approximately $497,000 in prepetition Deductions and Payroll Tax Obligations (collectively, the "Withholding Obligations") that they must pay or remit within the Interim Period.  Thus, the OpCo Debtors seek authorization, but not direction, to pay and remit the Withholding Obligations to the appropriate authorities consistent with the OpCo Debtors' prepetition practices.

## G.     Health and Wellness Benefits

25.     The OpCo Debtors offer insurance to Employees.  The specific insurance benefits available to any specific Employee is based on various factors, such as the terms of any applicable CBA, the terms of the facility's employee handbook, and the Employee's seniority and status (full or part-time).  Generally, eligible Employees may purchase for themselves and their eligible family

members medical, dental and vision coverage, and some of the Opco Debtors also offer short-term disability, long-term disability, basic life and accidental death and dismemberment coverage, voluntary life, voluntary short-term disability, and voluntary accident and critical illness (collectively, the "Benefit Plans").

26.    The OpCo Debtors pay a portion of the premiums owed for insurance plans providing medical benefits, and they also withhold from Employee's pay the employee portion of the premiums.  Generally, the Debtors pay the premiums monthly.  As of the Petition Date, the Debtors' estimate they owe $197,000 for the Benefit Plans, all of which will become due and payable during the Interim Period.  The OpCo Debtors seek authority, but not direction, to honor all Benefit Plan contributions that arose prepetition and honor any amounts that become due in the ordinary course, and to pay all premiums due on the various policies associated with the Benefit Plans.

**H.    Retirement Benefit Plans**

27.    The OpCo Debtors also offer Employees the ability to voluntarily contribute to a 401k retirement savings program (the "Retirement Benefits Plans"), and the OpCo Debtors usually offer to match a portion of gross wages that an Employee chooses to voluntarily contribute.  As of the Petition Date, approximately 106 employees participate in the Retirement Benefits Plans. By this Motion, the OpCo Debtors seek authority, but not direction, to honor all Retirement Benefits Plans contributions (including the Debtor's matching contribution) that arose prepetition and honor any amounts that become due in the ordinary course of business postpetition.

28.    Intac Actuarial Services, Inc. (part of FuturePlan by Ascensus) ("Intac")acts as the third-party administrator for the Retirement Benefit Plans and bills for its services on a semi-annual basis.  Historically, Intac's fees have been no greater than $15,000 annually. As of the petition date, the Debtors have not received Intac's 2024 invoice.  Out of an abundance of caution,

the Debtors seek authority, but not direction, to honor their prepetition obligations estimated to be $5,000.

## I.    Accrued PTO and Holidays

29.    In the ordinary course of business, the OpCo Debtors provide eligible Employees with paid time off for vacation ("Vacation Leave") and illness ("Sick Leave"), bereavement, and jury duty (collectively, "PTO"). These benefits are determined by the terms of the CBAs described above for Employees who are union members, and by a facility handbook for Employees who are not in a union. The benefits provided and the accrued PTO (the "Accrued PTO") vary from facility to facility, between Employees who are union members and those who are not, and depend upon the Employees status (full or part-time).

30.    The OpCo Debtors seek authority to continue their PTO policy in the ordinary course of business on a postpetition basis, provided that: (i) each Employee will be required to use any postpetition Accrued PTO first, any Accrued PTO earned within 180 days of the Petition Date second, and any remaining prepetition Accrued PTO to be applied thereafter; and (ii) all requests to use Accrued Vacation must be coordinated and approved by the applicable Employee's supervisor, consistent with past practices, to ensure no disruption to the Debtors' ongoing business operations.

31.    As of the Petition date, the Debtors owe approximately $1,602,000 for Accrued PTO. Upon termination, whether voluntary or involuntary, Employees are entitled to receive payment for any unused Accrued PTO at 50% of their pay rate (excluding exempt and management employees). The Debtors request the Court authorize, but not require them, to honor all prepetition Accrued PTO, subject to the Interim Period and the Priority Cap, and continue to honor all postpetition Accrued PTO as it comes due in the ordinary course.

32.     The OpCo Debtors also offer paid holidays to eligible Employees.  As with other benefits, the holidays offered vary based on various factors, such as the terms of any applicable CBA, the terms of the facility's employee handbook, and the Employee's seniority and status (full or part time).  By the Wage Motion, the Debtors seek to continue to honor these holidays in the ordinary course of their operations.  The OpCo Debtors believe that continuing to do so will help boost Employee morale and confidence in the Debtors, and maintain the current workforce.

**J.      Miscellaneous Employee Benefits**

33.     Several of the Debtors' CBAs require the Debtor to reimburse Employees for one-half (1/2) of the costs of certain training programs and certifications and to contribute a percentage (usually 1% of gross bargaining unit wages) to the union's training and education fund.  By this Motion, the Debtors' request authority, in their sole discretion, to make payments due under these provisions of their CBAs.  The Debtors believe that the maximum amount that would be due for this benefit for amounts accrued prior to the Petition Date is $56,000.  If the Court grants the Debtors permission to make these payments, then there will be less disruption in the unionized work force, and the Debtors can comply with their CBAs' terms.

**K.      COBRA Benefits**

34.     Pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), former employees of the Debtors (the "COBRA Participants") may, in certain cases, continue insurance coverage under various health benefit plans, including medical and dental plans, and life insurance following the termination of their employment with the Debtors (the "COBRA Benefits").  The law entitles COBRA Participants to continue to receive COBRA Benefits for up to 18 months and, in certain cases, up to 36 months, following termination of employment.  The COBRA Participants bear their insurance coverage costs subsequent to termination unless the Debtors otherwise subsidize them.

35.    As of the Petition Date, the Debtors estimate that they owe approximately $3,000 for COBRA Benefits. The Debtors request the Court authorize, but not direct or require them, to pay the COBRA Benefits, honor any outstanding obligation as of the Petition Date related to the COBRA Benefits of the Petition Date, and continue to administer COBRA Benefits for all eligible former Employees on a postpetition basis.

## BASIS FOR RELIEF

**I.    Authority to honor the Employee Obligations is warranted.**

36.    The Debtors' business depends upon reliable and loyal Employees.  Honoring the Employee Obligations and Employee Programs is essential to ensure their reliability and loyalty. Failing to promptly honor such obligations, even to the recently terminates employees that were recently terminated, will create doubt and concern among the Employees, and could lead to a significant loss of Employees.  Such a personnel loss at this critical time would immediately and irreparably harm the OpCo Debtors' ability to maintain operations to the detriment of all parties.

37.    Therefore, the Debtors seek the relief in this Motion on several bases under the Bankruptcy Code.  First, this Court should permit the Debtors to pay these obligations because many are or may be entitled to priority under section 507 of the Bankruptcy Code.  Second, the Court should permit the Debtors to pay and remit amounts due on account of Withholding Obligations because most if not all such amounts are not property of the Debtors' estates under section 541 of the Bankruptcy Code.  Third, the Debtors should be permitted to satisfy Employee Obligations in the ordinary course of business pursuant to section 363 of the Bankruptcy Code. Finally, honoring the Employee Obligations is a sound exercise of the Debtors' business judgment, and permissible under the "doctrine of necessity."

A.    **Certain Employee Obligations are Entitled to Priority Treatment Under Section 507 of the Bankruptcy Code.**

38.    Pursuant to Bankruptcy Code §§ 507(a)(4) and (5), certain of the unpaid prepetition Employee Obligations—including Employee Wages and Accrued PTO—are entitled to priority treatment in an amount up to the Priority Cap of $15,150 for each individual Employee.  Upon the OpCo Debtors' information and belief, the total compensation and value of benefits to be provided will not exceed the Priority Cap of $15,150 for any Employee. To the extent that such claims are afforded priority status, the Debtors must pay these claims in full prior to payment of general unsecured creditors under a plan.  *See* 11 U.S.C. § 1129(a)(9)(b) (requiring payment of certain allowed unsecured claims for (a) wages, salaries, or commissions, including vacation, and sick leave pay earned by an individual, and (b) contributions to an employee benefit plan); 11 U.S.C. § 507(a)(4) (providing that allowed unsecured claims for "(A) wages, salaries, or commissions, including vacation, and sick leave pay earned by an individual; or (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor . . ." up to $15,150 per individual are entitled to a fourth priority ahead of general unsecured claims); 11 U.S.C. § 507(a)(5) (providing that "allowed unsecured claims for contributions to an employee benefit plan . . . ," with offsets for payments made under section 507(a)(4), are entitled to a fifth priority).

39.    Accordingly, granting the relief sought with respect to compensation will affect only the timing of payments to Employees and will not have any material negative impact on recoveries for general unsecured creditors.  Indeed, the Debtors submit that payment of unpaid Employee Obligations up to the Priority Cap per individual will enhance value for the benefit of all stakeholders because it will help ensure that the Employees—the lifeblood of the Debtors' business operations—will continue to provide vital services to the Debtors at this critical juncture.

In addition, to the extent that the Debtors are authorized, in a reasonable exercise of their business judgment, to pay prepetition Employee Obligations on a postpetition basis in the ordinary course of business, such payments will enhance the value of the Debtors' estates by preserving the value of the Debtors' business for all stakeholders.

40.      In the unlikely event that any amounts an Employee is owed more than the above the Priority Cap, the Debtors will provide details during the interim period and will seek authorization to pay such amounts only upon entry of a final order granting the relief herein.

**B.      Many, if Not all, Amounts Owed for Withholding Obligations are not Property of the Debtors' Estates Ender Section 541 of the Bankruptcy Code.**

41.      The Debtors also seek authority to pay Withholding Obligations to the appropriate entities.  These amounts principally represent amounts that Employees, governments and judicial authorities have designated for withholding from Employees' paychecks.  These withholdings include child support and alimony payments, which are not considered property of the Debtors' estates because the Debtors have withheld such amounts from Employees' paychecks on another party's behalf.  *See* 11 U.S.C. §§ 541(b)(7) and (d).

42.      Similarly, applicable U.S. federal and state laws require the Debtors to withhold federal, state and local income taxes from Employees' paychecks and remit them such amounts to the appropriate taxing authority.  *See* 26 U.S.C. §§ 6672 and 7501(a); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–96 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes).  These unremitted Withholding Obligations are also not property of the Debtors' estates and, accordingly, the Debtors request that the Court authorize them to transmit the unremitted Withholding Obligations to the proper parties in the ordinary course of business.  Additionally, to the extent the OpCo Debtors withhold from

Employees' compensation payments for insurance benefits; those amounts are also not property of the Debtors' estate and the Debtors intend to remit them to the appropriate parties.

### C.    The Debtors may Honor and Pay Employee Obligations in the Ordinary Course of Business Pursuant to Section 363 of the Bankruptcy Code.

43.    The Debtors' ability to compensate Employees in the ordinary course of business is consistent with section 363(c) of the Bankruptcy Code.  *See* 11 U.S.C. § 363(c)(1) (providing that, so long as "the business of the debtor is authorized to be operated under [section 1008 of the Bankruptcy Code] and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business, without notice or a hearing"); 11 U.S.C. § 1108 (providing that a debtor in possession, as trustee, may operate the debtor's business unless a court orders otherwise).  Accordingly, the Debtors request that the Court authorize them to pay Employee Obligations in the ordinary course, even to the extent such obligations accrued prepetition.

### D.    Paying the Employee Obligations is a Sound Exercise of the Debtors' Business Judgment.

44.    Courts in this Circuit and others generally acknowledge that, under appropriate circumstances, they may authorize a debtor to pay (or provide special treatment for) certain prepetition obligations.  *See, e.g.*, *In re Quiksilver, Inc.*, No. 15-11880 (BLS) (Bankr. D. Del. Sept. 9, 2015) (authorizing Debtors to pay prepetition employee wages, benefits, and granting related relief.); *In re Samson Resources Corp., et al.*, No. 15-11934 (CSS) (Bankr. D. Del. Sept. 16, 2015) (same); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of prepetition claims when such payment is necessary for the debtor's survival during chapter 11."); *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (citing *In re Lehigh*

*& New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "[i]f payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized'")); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding sound business justification for payment of certain prepetition claims).  When authorizing such payments, courts have relied upon several legal theories rooted in Bankruptcy Code §§ 1107(a), 1108, 363(b), and 105(a).

45.    Pursuant to Bankruptcy Code §§ 1107(a) and 1108, a debtor in possession is a fiduciary charged with "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Inherent in a debtor in possession's fiduciary duties is the obligation to "protect and preserve the estate, including an operating business's going-concern value," which, in certain instances, can be fulfilled "only . . . by the preplan satisfaction of a prepetition claim." *Id*.  Indeed, the *CoServ* court specifically noted that the pre-plan satisfaction of prepetition claims is a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . ." *Id*.  Consistent with a debtor's fiduciary duties, where there is a sound business purpose  to pay prepetition obligations, and where the debtor can "articulate some business justification, other than the mere appeasement of major creditors," courts have authorized debtors to make such payments under Bankruptcy Code § 363(b).  *Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to pay prepetition wages).

46.    Courts have also authorized debtors to pay prepetition claims in appropriate circumstances pursuant to Bankruptcy Code § 105(a). Bankruptcy Code section 105(a), which codifies bankruptcy courts' inherent equitable powers, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title." 11 U.S.C. § 105(a).  Under section 105(a), courts may permit pre-plan payments of
prepetition obligations when such payments are essential to the continued operation of the debtor's
business where nonpayment of a prepetition obligation would trigger a withholding of services
essential to the debtors' business reorganization plan.  *See Ionosphere Clubs*, 98 B.R. at 177
(finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt
when such payment is needed to facilitate the rehabilitation of the debtor).

47.    In addition to the authority granted a debtor in possession under Bankruptcy Code
§§ 1107(a), 1108, 363(b), and 105(a), courts have developed the "doctrine of necessity" or the
"necessity of payment" rule, which originated in the landmark case of *Miltenberger v. Logansport,
C. & Sw. Ry. Co.*, 106 U.S. 286, 310 (1882).  Since *Miltenberger*, courts have expanded their
application of the doctrine of necessity to cover instances of a debtor's reorganization.  *See, e.g.,
Lehigh & New Eng. Ry. Co.*, 657 F.2d at 581–82.

48.    Today, the rationale for the necessity of payment rule—the preservation of a
business in chapter 11 cases—is "the paramount policy and goal of Chapter 11."  *Ionosphere
Clubs*, 98 B.R. at 176; *see also In re Just for Feet, Inc.*, 242 B.R. at 826 (finding that payment of
prepetition claims to certain trade vendors was "essential to the survival of the debtor during the
chapter 11 reorganization"); 2 Collier on Bankruptcy ¶ 105.02[4][a] (Alan N. Resnick & Henry J.
Sommer eds., 16th ed.) (discussing cases in which courts have relied upon the doctrine of necessity
or the necessity of payment rule to pay prepetition claims immediately).

49.    The relief requested herein will benefit the Debtors' estates and creditors by
allowing the Debtors' business operations to continue without interruption while the Debtors seek
to transition operations and, if possible, sell their businesses.  Without such payments, the Debtors
believe that their Employees may immediately seek alternative employment opportunities.  This

would deplete the Debtors' workforce, hinder the Debtors' ability to meet their customer obligations, and diminish confidence in the Debtors.  Moreover, the loss of valuable individuals and the recruiting efforts that would be required to replace any essential employees would be a massive and costly distraction at a time when the Debtors should be focusing on these Chapter 11 Cases.

## II.    Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers.

50.    The Debtors represent that they have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of cash reserves, DIP funding and expected cash flows from ongoing business operations.  Also, under the Debtors' existing cash management system, the Debtors represent that checks or wire transfer requests can be readily identified as relating to an authorized payment made with respect to the Employee Obligations.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable banks should be authorized and directed, when requested by the Debtors, to receive, process, honor and pay any and all checks or wire transfer requests with respect to the Employee Obligations.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

51.    As described above, the Debtors seek an interim order authorizing them to pay prepetition Employee wages and expenses and continue Employee benefits. Under Bankruptcy Rule 6003, this Court may authorize the relief requested herein within the 21-day period after the Petition Date because such relief is necessary to avoid immediate and irreparable harm to the Debtors' estates.  *See* FED. R. BANKR. P. 6003(b) and (c).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y.

1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

52.     Immediate and irreparable harm would result if the Court does not grant the relief requested herein.  As described above, the Debtors' Employees are integral to the Debtors' operations.  Failing to satisfy obligations to Employees in the ordinary course of business will jeopardize loyalty and trust, possibly causing Employees to leave the Debtors' employ, and thereby disrupt the Debtors' operations.  Moreover, the Debtors' Employees rely on the Debtors' timely payment of their compensation and provision of benefits for their livelihood.  Accordingly, the Debtors submit that they have satisfied Bankruptcy Rule 6003's requirements to support immediate payment of their Employee Obligations.

## WAIVER OF BANKRUPTCY RULE 6004(h)

53.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h), 7062, 9014 or otherwise for all of the reasons described above.

## RESERVATION OF RIGHTS

54.     Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity, amount or priority of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim; (iii) a promise or requirement to pay any claim; (iv) a waiver of any claim or cause of action of the Debtors that exist against any entity; (v) a ratification or assumption of any agreement, contract or lease under Bankruptcy Code § 365; (vi) a waiver of limitation of the Debtors' rights under the Bankruptcy Code, any other applicable law or any agreement; or (vii) an admission or concession by the Debtors that any lien acknowledged or satisfied under this

Motion is valid, and the Debtors expressly reserve and preserve their rights to contest the extent, validity, or perfection, or seek avoidance of, any such lien.

### NOTICE

55.     Notice of this Motion has been provided by email, facsimile or overnight mail to: (i) the Office of the United States Trustee for the Western District of Pennsylvania, Federal Building, 1000 Liberty Avenue, Suite 1316, Pittsburgh, PA 15222; (ii) counsel to CIBC Bank, U.S.A., Liz Boydston, Max Schlan, and Alexandria Rahn, Gutnicki, LLP, 10440 N. Central Expressway, Suite 800, Dallas, TX 75231; lboydston@gutnicki.com; mschlan@gutnicki.com; arahn@gutnicki.com; (iii) counsel to Cuarzo Healthcare, LLC, Elizabeth A. Green and Andrew Layden, BakerHostetler, 200 South Orange Avenue, Suite 2300, Orlando, FL 32801; egreen@bakerlaw.com; alayden@bakerlaw.com; (iv) lien *lis pendens* parties (a) Harmony Property Management LLC; (b) Irwin Property Management LLC; (c) New Castle Property Management LLC; (d) New Wilmington Property Management LLC; (e) Latrobe Property Management LLC; and, (f) Washington Property Management LLC in care of Michael A. Shiner, Esq., and Maribeth Thomas, Esq., Tucker Arensberg, PC, 1500 One PPG Place, Pittsburgh, PA 15222; mshier@tuckerlaw.com; mthomas@tuckerlaw.com; (v) U.S. Foods, 9399 West Higgins Road, Rosemont, IL 60018; (vi) Department of Human Services, Office of Long-Term Living, Bureau of Finance, Forum Place 6th Floor, 555 Walnut Street, Harrisburg, PA 17101; (vii) CT Corporation, 330 N. Brand Blvd., Suite 700, Attn: SPRS, Glendale, CA 91203; (viii) those persons who have formally appeared and requested notice and service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (ix) the list of the 30 largest unsecured creditors of the Debtors on a consolidated basis; (x) U.S. Department of Labor, Office of the Regional Solicitor, 1835 Market Street, Mailstop SOL/22, Philadelphia, PA 19103-2968, Attn: Alejandro A. Herrera, Esq.

Herrera.alejandro.a@dol.gov; facsimile (215) 861-5162, and (xi) the following governmental agencies having a regulatory or statutory interest in these Chapter 11 Cases: (a) Internal Revenue Service, PO Box 7346, Philadelphia, PA 19101-7346; (b) United States Attorney's Office for the Western District of Pennsylvania, Attn: Eric G. Olshan, Joseph F. Weis, Jr. United States Courthouse 700 Grant Street, Suite 4000, Pittsburgh, PA 15219; and (c) Commonwealth of Pennsylvania Attorney General, Attn: Michelle A. Henry, 16th Floor, Strawberry Square, Harrisburg, PA 17120.  Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter interim and final orders, substantially in the forms attached as **Exhibit A** and **Exhibit B,** granting the relief requested in this Motion, and grant such other relief as is just and proper under the circumstances.

Dated  May 17, 2024
Pittsburgh, Pennsylvania

Respectfully submitted:

**WHITEFORD TAYLOR & PRESTON, LLP**

_/s/ Daniel R. Schimizzi_
Daniel R. Schimizzi (PA ID No. 311869)
Michael J. Roeschenthaler (PA ID No. 87647)
Mark A. Lindsay (PA ID No. 89487)
Sarah E. Wenrich (PA ID No. 325834)
11 Stanwix Street, Suite 1400
Pittsburgh, PA 15222
Telephone: 412-275-2401
Facsimile:  412-275-2404
Email: dschimizzi@whitefordlaw.com
mroeschenthaler@whitefordlaw.com
mlindsay@whitefordlaw.com
swenrich@whitefordlaw.com

_Proposed Local Counsel to the Debtors and
Debtors in Possession_

_-AND-_

Glenn B. Rose (_pro hac vice_ pending)
Paul G. Jennings (_pro hac vice_ pending)
Gene L. Humphreys (_pro hac vice_ pending)
Jordan E. Thomas (_pro hac vice_ pending)
Alfonso Cuen (_pro hac vice_ pending)
**BASS, BERRY & SIMS PLC**
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone (615) 742-6200
Facsimile (615) 742-6293
grose@bassberry.com
pjennings@bassberry.com
ghumphreys@bassberry.com
Jordan.thomas@bassberry.com
Alfonso.cuen@bassberry.com

_Proposed Counsel to the Debtors and
Debtors in Possession_