**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In Re:** | **Case No.: 24-21217-CMB** |
| **SOUTH HILLS OPERATIONS, LLC, *et al.*,[1]** | **Chapter 11** *Joint Administration Requested* |
| **Debtors.** | **Doc. No.:** |
| **SOUTH HILLS OPERATIONS, LLC, *et al.*,** | **Related to Document No.** |
| **Movant,** | **Hearing Date:** |
| **-vs -** | **Hearing Time:** |
| **CIBC BANK USA, GPH CANONSBURG LP, GPH MONROEVILLE LP, GPH MURRYSVILLE LP, GPH MT. LEBANON LP, and PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES,** | **Response Deadline:** |
| **Respondents.** | |

_____

[1]The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: South Hills Operations, LLC (5527); Monroeville Operations, LLC (3280); Mt. Lebanon Operations, LLC (1133); Murrysville Operations, LLC (9149); Cheswick Rehabilitation and Wellness Center, LLC (9561); 3876 Saxonburg Boulevard Propco, LLC (3618); North Strabane Rehabilitation and Wellness Center, LLC (1677); 100 Tandem Village Road Propco, LLC (1918); Maybrook-C Briarcliff Opco, LLC (5187); Maybrook-C Briarcliff Propco, LLC (1823); Maybrook-C Evergreen Opco, LLC (5388); Maybrook-C Evergreen Propco, LLC (2000); Maybrook-C Kade Opco, LLC (4033); Maybrook-C Kade Propco, LLC (2097); Maybrook-C Latrobe Opco, LLC (4148); Maybrook-C Latrobe Propco, LLC (2178); Maybrook-C Overlook Opco, LLC (7081); Maybrook-C Overlook Propco, LLC (6804); Maybrook-C Silver Oaks Opco, LLC (7146); Maybrook-C Silver Oaks Propco, LLC (9654); Maybrook-C Whitecliff Opco, LLC (6211); Maybrook-C Whitecliff Propco, LLC (4835).  ). The Debtors' address is 485 Lexington Avenue, 10th Floor, New York, NY 10017.

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE CUARZO DEBTORS TO OBTAIN
POSTPETITION FINANCING, (II) AUTHORIZING THE CUARZO DEBTORS USE
OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING
ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY,
(VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "Debtors") hereby move (the

"Motion"), pursuant to sections 105, 361, 362, 363, 364, and 507 of title 11 of the United States

Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 40012 of the Local

Bankruptcy Rules of the United States Bankruptcy Court for the Western District of Pennsylvania

(the "Local Rules"), for the entry of interim and final orders, substantially in the form attached as

**Exhibit A** (the "Proposed Interim Order" and the "Proposed Final Order"[2] and, collectively with

the Proposed Interim Order, the "Proposed Orders"): (i) authorizing the Cuarzo Debtors to obtain

postpetition financing, (ii) authorizing the Cuarzo Debtors' use of cash collateral, (iii) granting

liens and providing superpriority administrative expense status, (iv) granting adequate protection,

(v) modifying the automatic stay, (vi) scheduling a final hearing, and (vii) granting related relief,

as follows:

---

[2]The Proposed Final Order will be submitted prior to the Final Hearing and will substantially be
in the same form as the Proposed Interim Order.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and the *Standing Order of Reference from the United States District Court for the Western District of Pennsylvania*, dated October 16, 1984.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105, 361, 362, 363, and 364, and 507 of the Bankruptcy Code. Such relief is warranted under Bankruptcy Rules 2002, 4001, and 6004 and Local Rule 4001-2.

## BACKGROUND

4.      On the date hereof (the "Petition Date"), the Debtors commenced the above-captioned cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no request for the appointment of a trustee or examiner has been made and no statutory committee has been appointed in these Chapter 11 Cases.

5.      Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business operations, capital structure, financial condition, the events leading to the commencement of this case and the facts and circumstances supporting the relief

requested herein is set forth in the *Declaration of Louis Robichaux IV, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and Various First Day Applications and Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.[3]

6.      In support of this Motion, the Debtors rely on the *Declaration of Louis E. Robichaux IV in Support of the Cuarzo Debtors' Motion for Interim and Final Orders (I) Authorizing the Cuarzo Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VIII) Granting Related Relief* (the "Cuarzo DIP Financing Declaration"), attached as **Exhibit B**.

### A.  The Master Lease with the Cuarzo DIP Lender

7.      The Cuarzo Debtors, namely Monroeville Operations, LLC, South Hills Operations LLC, Murrysville Operations, LLC and Mt. Lebanon Operations, LLC, lease their facilities pursuant to a Master Lease entered on February 1, 2017.  The lessors of these facilities are GPH Canonsburg LP, GPH Monroeville LP, GPH Murrysville LP and GPH Mt. Lebanon LP

---

[3]Capitalized terms used but not otherwise defined in this Motion shall have the meaning set forth in the First Day Declaration or the Proposed Interim Order, as applicable.

(collectively, the "Cuarzo DIP Lender"), which are affiliates of Cuarzo Healthcare Capital, which is headquartered in Ft. Smith, Arkansas (collectively "Cuarzo").

8. Monroeville Operations, LLC is a 120 bed facility located in Monroeville, Pennsylvania doing business as Monroeville Rehabilitation and Wellness Center. South Hills Operations, LLC is a 104 bed facility located in Canonsburg, Pennsylvania doing business as South Hills Rehabilitation and Wellness Center. Murrysville Operations, LLC is a 120 bed facility located in Murrysville, Pennsylvania doing business as Murrysville Rehabilitation and Wellness Center. Mt. Lebanon Operations, LLC is a 120 bed facility located in Mt. Lebanon, Pennsylvania doing business as Mt. Lebanon Rehabilitation and Wellness Center.

### B. Prepetition Secured Obligations

9. As discussed below, the following creditors have filed liens against the Cuarzo Debtors or may have statutory lien rights under applicable law:

| Lienholder | Obligated Debtors | Outstanding Amount | Collateral |
|---|---|---|---|
| Cuarzo DIP Lender | Cuarzo Debtors | $5,521,378 as of 5/6/2024[4] | security interest in the accounts and all other assets owned by the Cuarzo Debtors |
| CIBC Bank, U.S.A. | Cuarzo Debtors | $0 | security interest in the accounts and all other assets owned by the Cuarzo Debtors |
| Pennsylvania DHS | Cuarzo Debtors | More than $5,000,000 | security interest in the accounts and all other assets owned by the Cuarzo Debtors |

---

[4] Cuarzo asserts that the amount owed under the terms of the Master Lease including accelerated rent, future real estate taxes and future cap ex requirements equals $15,708,676.

10. Under the terms of the Master Lease, the Cuarzo DIP Lender was granted a security interest in all of the Cuarzo Debtors' assets, which interest was perfected by the filing of a UCC-1 statement on April 14, 2017 and a continuation statement on March 31, 2022. As a result, the DIP Cuarzo Lender has a blanket first priority liens on the Cuarzo Debtors' assets for all amounts owed under the Master Lease (the "First Priority Blanket Liens"). The Cuarzo Debtors are in default of their obligations under the Master Lease, including for the failure to pay rent for several months. As a result of these defaults, the Cuarzo DIP Lender has a right to accelerate all obligations remaining due under the Master Lease.

11. As of the Petition Date, the Debtors are obligated to the Cuarzo DIP Lender for past due amounts under the Master Lease totaling $5,521,378 as of May 6, 2024. The Cuarzo DIP Lender asserts that it is entitled to additional damages under the Mater Lease, and including accelerated rent, future real estate taxes, and future capital expenditure requirements, the amount owed increases to more than $15,700,000.

12. CIBC Bank, U.S.A. ("CIBC") also filed a security interest in all of the assets of the Cuarzo Debtors, but nothing is owed to CIBC under the loan secured by CIBC's security interest in the assets of the Cuarzo Debtors.

13. The Cuarzo Debtors have also failed to pay nursing facility assessments owed to the Pennsylvania Department of Human Services (the "Department"). The amount owed by the Cuarzo Debtors to the Department for unpaid assessments as of the Petition Date exceeds

6

$5,000,000. Without waiver of any of their rights to challenge or contest the amount, validity, priority and/or extent of the Department assessments and any potential lien in favor of the Department, the Cuarzo Debtors anticipate that the Department will assert a statutory lien pursuant to 62 P.S. 811-A[5] against the assets of the Cuarzo Debtors for the payment of the assessments. However, the Department has not recorded any lien against the Cuarzo Debtors which, upon information and belief and as discussed more fully below, renders any potential statutory liens in favor of the Department junior to the Cuarzo Prepetition Liens and, therefore extensively, if not entirely, unsecured. Furthermore, the Cuarzo Debtors assert that because the Department has not recorded any lien, its statutory lien is avoidable under § 544(a)(1) of the Bankruptcy Code.

---

[5] Any assessments implemented and interest and penalties assessed against a nursing facility pursuant to this article shall be a lien on the real and personal property of the nursing facility in the manner provided by section 1401 of [72 Pa. Stat. Ann. §§ 1 *et seq.* (the "Fiscal Code")] may be entered by the department in the manner provided by section 1404 of 'The Fiscal Code' and shall continue and retain priority in the manner provided in section 1404.1 of 'The Fiscal Code.'

62 Pa. Stat. Ann. § 811-A.

Section 1404.1 of the Fiscal Code provides, in pertinent part,

"All tax liens shall have priority to and be fully paid before any other obligation, judgment, claim, lien or estate paid and satisfied out of the judicial sale of the real and personal property with which that property may subsequently become charged or for which that property may subsequently become liable, *subject, however, to mortgage or other liens existing and duly recorded at the time the tax lien is recorded*."

72 Pa. Stat. Ann. § 1404.1 (emphasis added).

### C. Other Prepetition Obligations

14. As more fully set forth in the First Day Declaration, the Cuarzo Debtors are also subject to obligations arising from administrative and/or priority tax obligations, and general unsecured debt (including obligations under the Debtors' collective bargaining agreements).

15. In particular, prior to the Petition Date, the Cuarzo Debtors were also unable to pay certain pre-petition professional fees or payroll and obtained emergency loans to pay those expenses from the Cuarzo DIP Lenders in the approximate outstanding amount of $450,000. Without these advances, the Cuarzo Debtors would not have had the ability to continue operations or prepare for the filing of these Chapter 11 Cases.

16. The Cuarzo Debtors estimate that, as of the Petition Date, they owe priority and general unsecured debts totaling in excess of $7,000,000, excluding amounts owed to the Department for nursing facility assessments.

### D. Post-Petition Financing

17. Based on the review and evaluation of the Cuarzo Debtors' financial forecasts and the Budget (as defined below) by the Debtors' restructuring advisors, the Cuarzo Debtors require an immediate capital infusion in the form of the Cuarzo DIP Facility and access to Cash Collateral in order to continue to operate their business postpetition.

18. The Cuarzo DIP Facility (as defined below) and Cash Collateral (as defined below) are critically necessary to fund working capital needed to continue operations on a short-term basis

8

until the Cuarzo Facilities can be transferred to a new owner, including to satisfy vendor obligations, pay suppliers, cover overhead costs, and pay expenses and billings related to the Cuarzo Debtors' operations.

19.     Additionally, the immediate access to the Cuarzo DIP Facility and Cash Collateral will cover the projected costs of the Chapter 11 Cases for the Cuarzo Debtors and make any other payments that are essential for the continued management, operation, and preservation of the Cuarzo Debtors' business. The ability to satisfy these expenses when due is essential to the continued operation of the Cuarzo Debtors' business.

20.     Accordingly, the Debtors have determined that, in the exercise of their sound business judgment, obtaining the Cuarzo DIP Facility under the terms of the Letter Agreement dated May 17, 2024 (the "Cuarzo DIP Credit Letter Agreement") in the form attached as **Exhibit A-1** to the Proposed Interim Order, the other DIP documents, and the Proposed Orders, all in accordance with the Budget (as defined in and attached as **Exhibit A-2** to the Proposed Interim Order), is in the best interests of the Debtors and their estates and creditors.

21.     To be clear, given the Cuarzo Debtors' current financial condition, financing arrangements, and capital structure, the Cuarzo Debtors are unable to obtain adequate financing from sources other than the Cuarzo DIP Lender on terms more favorable than the Cuarzo DIP Facility.  Notwithstanding their efforts with the assistance of their advisors, the Cuarzo Debtors have been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy

9

Code as an administrative expense.  If the Cuarzo Debtors are unable to access the Cuarzo DIP Facility, the Cuarzo Debtors believe the only viable alternative is an expedited shut down process, which could have negative effects on the Cuarzo Debtors' residents, employees, and other parties in interest.

22.     The Cuarzo Debtors also have been unable to obtain credit:  (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Cuarzo Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Cuarzo Debtors and their estates that is subject to a lien.

23.     Further, financing on a postpetition basis is not otherwise available without granting the Cuarzo DIP Lender: (i) perfected security interests in and liens on (each as provided herein) all of the Cuarzo Debtors' existing and after-acquired assets with the priorities set forth herein; (ii) superpriority claims; and (iii) the other protections set forth in the proposed Interim Order.

24.     In summary, the Cuarzo DIP Lender is willing to make loans and other financial accommodations to the Cuarzo Debtors, but only in accordance with, and on the terms and conditions set forth in, the Cuarzo DIP Credit Letter Agreement and the Proposed Interim Order.

## RELIEF REQUESTED

25.     Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364 and to Bankruptcy Rules

10

2002, 4002, and 6004, the Debtors seek entry of the Proposed Orders for, among other things:

i.    authorizing the Cuarzo Debtors to obtain senior secured postpetition financing on a superpriority basis consisting of a senior secured superpriority, new money credit facility in the aggregate principal amount of $5,740,000 (the "Cuarzo DIP Facility") consisting of (a) a New Money DIP Loan in the amount of $2,870,000 and (b) upon entry of a Final Order, a roll-up of the Cuarzo DIP Lenders' prepetition secured debt in the amount of $2,870,000 (the "Roll-Up DIP Loan") subject to the terms and conditions of this Interim Order and that certain Loan Agreement dated May 17, 2024, (as the same may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Cuarzo DIP Credit Letter Agreement"), by and among the Cuarzo Debtors, as borrower, and Cuarzo DIP Lender, substantially in the form of **Exhibit A-1**, attached to the Proposed Interim Order;

ii.    authorizing the Cuarzo Debtors to execute and deliver the Cuarzo DIP Credit Letter Agreement and any other agreements, instruments, pledge agreements, control agreements and other documents related thereto (including any security agreements, intellectual property security agreements, control agreements, or notes) (as amended, restated,

11

supplemented, waived, and/or modified from time to time, and collectively, with the Cuarzo DIP Credit Letter Agreement, the "Cuarzo DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the Cuarzo DIP Documents;

iii. authorizing the Cuarzo Debtors to use proceeds of the Cuarzo DIP Facility as permitted in the Cuarzo DIP Documents and in accordance with the Proposed Interim Order;

iv. granting to the Cuarzo DIP Lender on account of the Cuarzo DIP Facility and all obligations owing thereunder and under, or secured by, the Cuarzo DIP Documents (collectively, the "Cuarzo DIP Obligations") allowed superpriority administrative expense claim status in each of the Chapter 11 Cases of the Cuarzo Debtors and any Successor Cases (as defined in the Interim Order), subject only to the Carve-Out (as defined herein);

v. granting to the Cuarzo DIP Lender automatically perfected security interests in and liens on all property of the Cuarzo Debtors other than Avoidance Actions (as defined herein), including all property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code, which liens shall have first priority;

vi. authorizing and directing the Cuarzo Debtors to pay the principal, interest,

12

fees, expenses and other amounts payable under the Cuarzo DIP Documents as such become earned, due and payable, including, without limitation, continuing commitment fees, closing fees, upfront fees, the reasonable fees and disbursements of the Cuarzo DIP Lender's attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the Cuarzo DIP Documents;

vii.     authorizing the Cuarzo Debtors to use the all assets of the Cuarzo Debtors existing as of the Petition Date, including cash collateral (the "Cuarzo Prepetition Collateral"), and providing adequate protection to any entity having an interest in the Cuarzo Prepetition Collateral for any and all diminution in value of the Cuarzo Prepetition Collateral from and after the Petition Date for any reason, including, without limitation, any such diminution resulting from (i) the use of cash collateral, (ii) the priming of any security interests in and liens on any of the Cuarzo Prepetition Collateral (including by the Carve-Out) by the Cuarzo DIP Liens (as defined herein) pursuant to the Cuarzo DIP Documents and the Proposed Interim Order, (iii) the use, sale, or lease of the Cuarzo Prepetition Collateral, including cash collateral, and (iv) the imposition of the automatic stay under section 362(a) of the Bankruptcy Code or otherwise pursuant to sections

13

361(a), 363(c), 364(c), 364(d)(1), and 507(b) of the Bankruptcy Code ("Diminution in Value");

viii. vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Cuarzo DIP Documents and the Proposed Interim Order;

ix. subject to and effective upon entry of the Final Order, waiving the Debtors' ability to surcharge any Cuarzo DIP Collateral or Cuarzo Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code and any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

x. scheduling a final hearing (the "Final Hearing") within thirty-five (35) days of the Petition Date to consider the relief requested in the Cuarzo DIP Motion on a final basis and approving the form of notice with respect to the Final Hearing;

xi. waiving any applicable stay with respect to effectiveness and enforceability of the Proposed Interim Order (including under Bankruptcy Rule 6004); and

xii. granting the Debtors such other and further relief as is just and proper.

14

**CONCISE STATEMENT PURSUANT TO
BANKRUPTCY RULES 4001(B) AND THE LOCAL RULE 4001-2**

26.     The following chart contains a summary of the material terms of the proposed

Cuarzo DIP Facility, together with references to the applicable sections of the relevant source

documents as required by Bankruptcy Rules 4001(b)(1)(B) and 4001(c)(1)(B).

| Bankruptcy Rule | Summary of Material Terms/Rule 3(c)(vii) Provisions |
|---|---|
| **Parties to the Agreement** *Rule 4001(c)(1)(B)* *Exhibit A to Cuarzo Loan Agreement* | Cuarzo DIP Lender and Cuarzo Debtors |
| **Term** *Rule 4001(b)(1)(B)(iii) and 4001(b)(1)(B)* *Exhibit A to Cuarzo Loan Agreement* | 135 days unless terminated by Event of Default or conversions of Chapter 11 Cases to Chapter 7 cases |
| **Commitments** *Rule 4001(c)(1)(B)* *Exhibit A to Cuarzo Loan Agreement* | Up to $2,870,000 in New Money DIP Loan and an equivalent amount in Roll-Up DIP Loan. |

15

| Bankruptcy Rule | Summary of Material Terms/Rule 3(c)(vii) Provisions |
|---|---|
| **Conditions of Borrowing**<br>*Rule 4001(c)(1)(B)*<br>*Exhibit A to Cuarzo Loan Agreement* | The obligation of the Cuarzo DIP Lender to fund each draw of the DIP Loan shall be subject to the condition precedent that on the date of such release, the following statements shall be true and confirmed via draw request by the Debtors' CRO, unless waived by Cuarzo DIP Lender:<br><br>1) The DIP Documentation shall be in form and substance reasonably satisfactory to the DIP Lender;<br><br>2) The Bankruptcy Court has entered the DIP Order, in form and substance acceptable to the Cuarzo DIP Lender, authorizing the Debtors to enter the Cuarzo DIP Facility, and such DIP Order has not been otherwise stayed or reversed;<br><br>3) The DIP Lender shall have received and shall have approved the Budget, and the Cuarzo Debtors are in compliance with the Permitted Variance to the Budget;<br><br>4) No Event of Default (defined below) shall have occurred prior to entry of, or after giving effect to, the DIP Order;<br><br>5) The DIP Order provides that the DIP Lender has at all times acted in good faith and is entitled to the protections of section 364(e) of the Bankruptcy Code;<br><br>6) Upon the entry of the DIP Order, the DIP Lender shall have as collateral the Super-Priority DIP Claim and valid and perfected liens on the DIP Collateral; and<br><br>7) The Loan Fee shall have been paid to the DIP Lender. |

16

| Bankruptcy Rule | Summary of Material Terms/Rule 3(c)(vii) Provisions |
|---|---|
| **Interest Rates**<br>*Rule 4001(c)(1)(B)*<br>*Exhibit A to Cuarzo Loan Agreement* | A per annum rate equal to 12%, which shall be calculated on the basis of the actual days elapsed in a year of 360 days from the Closing date to the Maturity Date.  Upon an Event of Default or if the Cuarzo DIP Facility is not paid in full at the Maturity Date, interest shall continue to accrue at 18% thereafter.  A per annum rate equal to 1% shall accrue beginning upon entry of the DIP Order on all undrawn amounts (i.e. $2.75M in availability less the currently outstanding drawn amount). |
| **Use of DIP Facility and Cash Collateral**<br>*Rule 4001(b)(1)(B)(ii)*<br>*Exhibit A to Cuarzo Loan Agreement* | In accordance with the Budget until the earlier of the Carve-Out Effective Date or the Maturity Date. |
| **Entities with Interests in Cash Collateral**<br>*Rule 4001(b)(1)(B)(i)* | The Cuarzo DIP Lender.  The Cuarzo Debtors note that CIBC and the Department may have liens on some or all of the Cuarzo Debtors' assets, but CIBC is owed nothing and the Department's claims are unsecured. |
| **Fees**<br>*Rule 4001(c)(1)(B)*<br>*Exhibit A to Cuarzo Loan Agreement* | Loan Fee in the amount of $28,700. |
| **Budget**<br>*Rule 4001(c)(1)(B)* | Attached as Schedule 1 to the Loan Agreement, and periodically adjusted with the Cuarzo DIP Lender's consent. |

| Bankruptcy Rule | Summary of Material Terms/Rule 3(c)(vii) Provisions |
|---|---|
| **Milestones**<br>*Rule 4001(c)(1)(B)*<br>*Exhibit A to Cuarzo Loan Agreement* | (1) On or before 5 days after the Petition Date, the Debtors shall file the emergency motion to authorize the OTA transactions, and such motion shall be in form and substance satisfactory to the Cuarzo DIP Lender;<br><br>(2) On or before 30 days after the Petition Date, (i) the Bankruptcy Court shall approve the motion to authorize the OTA transactions pursuant to an order in form and substance satisfactory to the DIP Lender, which order shall include findings that the New Operator shall have no successor liability for any of the Debtors' debts, including nursing facility assessments, DOJ claims, or DOL claims, and except for expressly assumed executory contracts, and (ii) to the extent necessary to be effective, the Bankruptcy Court shall have approved the retention of the third party to collect receivables as set forth herein and the parties shall be acting in accordance with such retention; and<br><br>(3) On or before 45 days after the Petition Date, the closing under the OTA shall occur. |
| **Liens and Priorities**<br>*Rule 4001(c)(1)(B)(i)*<br>*Exhibit A to Cuarzo Loan Agreement* | The amounts under the Cuarzo DIP Facility shall at all times: (1) pursuant to section 364(c)(1) of the Bankruptcy Code, constitute allowed senior secured super-priority administrative expense claim status in each of the Debtors' Chapter 11 cases, having priority over all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy and any and all expenses and claims of the Debtors, including but not limited to the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, 1114, and any other provision of the Bankruptcy Code or otherwise (the "Super-Priority DIP Claim"); and (2) pursuant to section 364(c)(2) of the Bankruptcy Code, be secured by a automatically perfected first priority security interest in and |

18

| Bankruptcy Rule | Summary of Material Terms/Rule 3(c)(vii) Provisions |
|---|---|
| | lien on all of the assets belonging to the Cuarzo Debtors (the "Cuarzo DIP Collateral"). |
| **Priming Liens**<br>*Rule 4001(c)(1)(B)(i)*<br>*Exhibit A to Cuarzo Loan Agreement* | To the extent that either CIBC or the Department or any other party have any secured claim against any of the Cuarzo Debtors' assets, those liens would be subordinate to and primed by the liens granted herein to secure the amounts owed on the Cuarzo DIP Facility. |
| **Carve-Out**<br>*Rule 4001(c)(1)(B)*<br>*Exhibit A to Cuarzo Loan Agreement* | The sum of (i) all undisbursed amounts set forth in the Budget for the period prior to the delivery of the Carve-Out Trigger Notice, other than Budgeted professional fees; (ii) all unpaid professional fees and disbursements incurred by the Cuarzo Debtors and any statutory committees appointed in the Chapter 11 Cases pursuant to sections 327 and 1103 of the Bankruptcy Code for any of their respective professionals retained by final order of the Court, which order has not been reversed, vacated or stayed, unless such stay has been vacated (the "Case Professionals") at any time prior to the delivery of the Carve-Out Trigger Notice to the extent allowed by this Court (the "Allowed Professional Fees"), in an aggregate amount not to exceed the amounts set forth in the Budget for Professional Fees prior to the delivery of a Carve-Out Trigger Notice; and (iii) the payment of allowed and unpaid professional fees and disbursements incurred by the Case Professionals following the delivery of the Carve-Out Trigger Notice in an aggregate amount not in excess of $120,000 (the "Wind-Down Carve-Out Amount"), plus (iv) the payment of fees pursuant to 28 U.S.C. § 1930(a) and any fees required to be paid to the Clerk of the Court for the Cuarzo Debtors for the time period beginning on the Petition Date and ending on the Carve-Out Effective Date, which fees shall not be limited to amounts that may be set forth in the Budget. |

19

| Bankruptcy Rule | Summary of Material Terms/Rule 3(c)(vii) Provisions |
|---|---|
| **Challenge Period**<br>*Rule 4001(c)(1)(B)*<br>*Interim Order ¶36* | No later than (a) 60 days from the date of formation of a Committee (if appointed), or (b) 75 days following the entry of the Interim Order for any other party-in-interest with requisite standing (the "Challenge Deadline"), as such applicable date may be extended in writing from time to time in the sole discretion of the Cuarzo DIP Lender. To the extent an official committee of unsecured creditors is appointed in these cases, counsel to the committee may use (in accordance with the DIP Documents and Budget) up to an aggregate amount of $25,000 (the "Investigation Budget Cap") to investigate the liens and claims of Cuarzo and the Cuarzo DIP Lender, but not use the Investigation Budget Cap to initiate, assert, join, commence, support, or prosecute any actions or discovery with respect thereto. |
| **Adequate Protection**<br>*Rule 4001(b)(1)(B)(iv),*<br>*Rule 4001(c)(1)(B)(ii)*<br>*Interim Order ¶¶ 11-14* | Replacement post-petition liens on all assets in which the Cuarzo DIP Lender held a security interest as of the Petition Date and first priority superpriority claim against each of the Cuarzo Debtors. |
| **Events of Default**<br>*Rule 4001(c)(1)(B)*<br>*Exhibit A to Cuarzo Loan*<br>*Agreement* | (a) Any order authorizing the Cuarzo Debtors to obtain the Cuarzo DIP Facility, whether on an interim or final basis, is reversed, vacated, stayed, amended, supplemented, or otherwise modified in a manner which shall materially and adversely affect the rights of the Cuarzo DIP Lender; (b) the Cuarzo Debtors' Chapter 11 Cases are either dismissed or converted to cases under chapter 7 pursuant to a final order of the Bankruptcy Court, the effect of which has not been stayed; (c) a chapter 11 trustee is appointed such that the Debtors are no longer debtors-in-possession, pursuant to a final order of the Bankruptcy Court, the effect of which has not been stayed; (d) the Cuarzo Debtors fail to achieve any of the Milestones; (e) the Cuarzo Debtors fail to comply with the Permitted Variance to the Budget or any reporting requirement; or (f) the failure of the Cuarzo Debtors to repay in full the Cuarzo DIP Facility at the |

20

| Bankruptcy Rule | Summary of Material Terms/Rule 3(c)(vii) Provisions |
|---|---|
| | Maturity Date. |
| **Waiver/Modification of the Automatic Stay** *Rule 4001(c)(1)(B)(iv)* *Interim Order ¶36* | The automatic stay imposed by section 362 of the Bankruptcy Code is modified as necessary to permit the Cuarzo Debtors to perform their obligations under the Cuarzo DIP Facility and to permit the Cuarzo DIP Lender to enforce its rights under the DIP Loan Documents. |
| **Indemnification** *Rule 4001(c)(1)(B)(ix)* *Interim Order ¶37* | The Cuarzo Debtors agree to indemnify and hold harmless the Cuarzo DIP Lender, and each of its respective shareholders, directors, members, managers, principals, agents, advisors, officers, subsidiaries and affiliates in such capacity (each, an "Indemnified Person") from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an Indemnified Person by reason of or resulting from the Cuarzo DIP Facility, the transactions contemplated thereby or hereby, or any claim, action, litigation, investigation or proceeding relating to any of the foregoing, whether or not any of such Indemnified Person is a party thereto and whether or not brought by the Borrowers or any other person or entity, except to the extent resulting from the fraud, gross negligence or willful misconduct of such Indemnified Person as determined by a final non-appealable order of a court of competent jurisdiction. |
| **Retention of New Billing and Collection Agent** *Exhibit A to Cuarzo Loan Agreement* | On or before 30 days after the Petition Date, the Cuarzo Debtors shall have retained CP Corridor AHC LLC or another entity approved by the Cuarzo DIP Lender in its sole discretion, to perform collection services on behalf of the Cuarzo Debtors to collect all amounts owed to the Debtors through the OTA closing date. |

## REQUIREMENTS UNDER LOCAL RULE 4001-2

27. Local Rule 4001-2(b)(1) requires that certain provisions contained in the Cuarzo DIP Credit Letter Agreement be highlighted and that the Debtors provide justification for the inclusion of each such highlighted provision. Below, the Debtors identify and discuss the following provisions of the Cuarzo DIP Credit Letter Agreement and the Proposed Interim Order in accordance with Local Rule 4001-2(b)(1) in the context and circumstances of the Chapter 11 Cases.

### A. *Local Rule 4001-2(b)(1)(A)*

28. Cross-Collateralization. Local Rule 4001-2(b)(1)(A) requires disclosure of provisions that grant cross-collateralization protection (other than replacement liens or other adequate protection) to the prepetition secured creditors *(i.e.*, clauses that secure prepetition debt by postpetition assets in which the secured creditor would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law).

29. As to adequate protection for the Cuarzo DIP Lenders' pre-petition claims, the Cuarzo DIP Facility provides only for replacement liens on those assets in which the Cuarzo DIP Lender had a valid prepetition lien. In connection with the Cuarzo DIP Facility, the Cuarzo DIP Lenders shall be secured by (i) an automatically perfected first priority and priming security interest in and lien on all assets belonging to the Cuarzo Debtors, and (ii) a super-priority administrative expense claim status against each of the Cuarzo Debtors having priority over all

22

administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code.

### B. Local Rule 4001-2(b)(1)(B)

30. <u>Stipulation and Challenge Provisions</u>. Local Rule 4001-2(b)(1)(B) requires disclosure of provisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection, or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest (a) at least seventy five (75) days from the date of the order or (b) sixty (60) days from the date a committee is formed and retains counsel, to investigate such matters.

31. The Cuarzo DIP Facility complies with this requirement.

### C. Local Rule 4001-2(b)(1)(C)

32. <u>Chapter 5 of the Bankruptcy Code Waiver</u>. Local Rule 4001-2(b)(1)(C) requires disclosure of provisions that seek to waive or release, without notice and/or hearing, whatever rights the estate may have under applicable law, including without limitation, chapter 5 of the Bankruptcy Code.

33. The Cuarzo DIP Facility does not include any releases.

23

### D. Local Rule 4001-2(b)(1)(D)

34.    Liens on Avoidance Actions. Local Rule 4001-2(b)(1)(D) requires disclosure of provisions that immediately grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, and 549.

35.    The Cuarzo DIP Facility excludes Avoidance Actions from the Cuarzo DIP Collateral.

### E. Local Rule 4001-2(b)(1)(E)

36.    Roll-Up. Local Rule 4001-2(b)(1)(E) requires disclosure of provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in section 552(b) of the Bankruptcy Code.

37.    The Cuarzo DIP Facility contemplates a "1 to 1" roll up, under which each dollar of new money loaned post-petition shall be deemed to convert one additional dollar Cuarzo DIP Lender pre-petition secured debt to the Cuarzo DIP Facility loan balance.

### F. Local Rule 4001-2(b)(1)(F)

38.    Carve-Out. Local Rule 4001-2(b)(1)(F) requires disclosure of provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve-out.

24

39.    The Budget contains separate line items for committee professionals and debtors' professionals.  The Carve-Out does not provide disparate treatment of professional retained by the creditors' committee from those professionals retained by the Cuarzo Debtors with respect to a professional fee carve-out.  The Wind-Down Carve-Out Amount is available to all Retained Professionals.

### G.  Local Rule 4001-2(b)(1)(G)

40.    <u>Priming Liens</u>. Local Rule 4001-2(b)(1)(G) requires disclosure of provisions that prime any secured lien without the consent of that lienor.

41.    To the extent that either CIBC, the Department or any other person or entity have valid liens against any of the Cuarzo Debtors' assets, the liens granted to the Cuarzo DIP Lender would prime those liens.

### BASIS FOR RELIEF REQUESTED

### A.  Basis for Emergency Relief

42.    The Cuarzo Debtors bring this Motion on an emergency basis given the immediate and irreparable harm that they will potentially suffer if they are denied the ability to obtain post-petition credit and to use Cash Collateral, which is necessary to sustain the Cuarzo Debtors' ongoing business operations and to achieve their future business objectives. The Cuarzo DIP Facility and Cash Collateral will permit the Cuarzo Debtors, on a short-term basis, to preserve the value of their bankruptcy estates, continue operating their business in an orderly fashion, maintain

25

business relationships with vendors, suppliers, and employees, provide quality care for their residents, meet ongoing business disbursements, and satisfy other working capital and operational needs.

43.     Without access to the Cuarzo DIP Facility and Cash Collateral, the Cuarzo Debtors will be unable to meet their ongoing financial obligations, thereby resulting in: (i) an inability keep their facilities in operation; (ii) the risk of an immediate loss of the workforce necessary to provide care for their residents; and (iii) the ultimate closure of their facilities, thereby displacing their residents and putting them in grave danger due to a disruption in the care provided by the Cuarzo Debtors.

### B.  Authority in Support of Post-Petition Financing

44.     The Cuarzo Debtors, along with their advisors, have determined that the most prudent course of action is to secure immediate access to post-petition financing and use of Cash Collateral to preserve the estates' ability to operate until an orderly transfer of their operations can be accomplished.  For those reasons, the Cuarzo Debtors request that the Court enter the Proposed Interim Order and subsequently, the Proposed Final Order, authorizing the Cuarzo Debtors to, among other things, access the Cuarzo DIP Facility and to use Cash Collateral, subject to the terms of the Proposed Orders and the Cuarzo DIP Credit Letter Agreement.

45.     Section 364 of the Bankruptcy Code distinguishes among (i) obtaining unsecured credit in the ordinary course of business, (ii) obtaining unsecured credit outside the ordinary course

26

of business, and (iii) obtaining credit with specialized priority or on a secured basis. If a debtor-in-possession cannot obtain post-petition credit on an unsecured basis, pursuant to section 364(c) of the Bankruptcy Code, then the court may authorize such debtors to obtain credit or to incur debt that is entitled to superpriority administrative expense status, secured by a senior lien on unencumbered property, a junior lien on encumbered property, or a combination of the foregoing.

46.     Bankruptcy Rule 4001(c) governs the procedures for obtaining authorization to obtain post-petition financing and provides, in relevant part, the following:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(c). Accordingly, the Court is authorized to grant the relief requested herein.

### C.  Authority for Adequate Protection and Cash Collateral

47.     Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor-in-possession may not use cash collateral without the consent of the secured party or court approval. 11 U.S.C. § 363(c)(2). Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in property to be used by the debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. 11 U.S.C. § 363(e). Section 364(d) of

27

the Bankruptcy Code provides that a debtor may obtain credit secured by a senior or equal lien if an existing secured creditor's interest in the collateral security is adequately protected. 11 U.S.C. § 364(d)(1).

48. What constitutes adequate protection must be decided on a case-by-case basis. *See In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); *In re Realty Southwest Assocs.*, 140 B.R. 360 (Bankr. S.D.N.Y. 1992); *In re Beker Indus. Corp.*, 58 B.R. 725 (Bankr. S.D.N.Y. 1986). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re 495 Central Park Avenue Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *In re Beker*, 58 B.R. at 736; *In re Hubbard Power & Light*, 202 B.R. 680 (Bankr. E.D.N.Y. 1996).

49. Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Cuarzo DIP Lender against any Diminution in Value of such interests in the Cuarzo Prepetition Collateral, the Cuarzo Debtors propose that the Interim Order grant to the Cuarzo DIP Lender, continuing, valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests in and liens on all of the Cuarzo DIP Collateral (the "Prepetition Adequate Protection Liens"). In the event any other creditor is ultimately found to have had an interest in any of the Cuarzo Prepetition Collateral, each will receive adequate protection to the extent of any Diminution in Value of its respective interests in

28

the Cuarzo Prepetition Collateral in the form of replacement liens.

50.     The Prepetition Adequate Protection Liens shall be subject to the Carve-Out as set forth in this Interim Order and shall otherwise be junior only to the Cuarzo DIP Liens and DIP Superpriority Claims, but shall be senior to any Junior Prepetition Adequate Protection Liens.

51.     Except as provided herein or in the Cuarzo DIP Credit Letter Agreement, the Prepetition Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Chapter 11 Cases of the Cuarzo Debtors or any Successor Cases for any of the Cuarzo Debtors, and shall be valid and enforceable against any trustee or other estate representative appointed in any of the Chapter 11 Cases of the Cuarzo Debtors or any Successor Cases for any of the Cuarzo Debtors, or upon the dismissal of any of the Chapter 11 Cases of the Cuarzo Debtors or any Successor Cases for any of the Cuarzo Debtors. The Prepetition Adequate Protection Liens shall not be subject to sections 506(c) (subject to entry of a Final Order), 510, 549, 552(b) (subject to entry of a Final Order) or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Adequate Protection Liens.

52.     To the extent that CIBC, the Department or any other person or entity has valid liens against any of the Cuarzo Debtors' assets, the liens granted to the Cuarzo DIP Lender would prime those liens. This is appropriate as to CIBC because the Cuarzo Debtors owe nothing to

29

CIBC, and is appropriate as to the Department because any liens in its favor (none of which have been filed) would be subject to the Cuarzo DIP Lender's prior perfected liens. *See* 72 P.A. Stat. 1404.1 (stating that state tax liens are subject "to mortgage or other liens existing and duly recorded at the time the tax lien is recorded…").  Moreover, as set forth in the Cuarzo DIP Declaration, the Debtors' assert that the amount owed to the Cuarzo DIP Lender as a result of prepetition defaults in the Master Lease exceed the total value of all assets of the Cuarzo Debtors. Under these circumstances, neither CIBC nor the Department is entitled to any adequate protection and their liens, which have no value, may be primed.  *See In re Levitt and Sons, LLC*, 384 B.R. 630, 639-640 (S.D. Fl. Bankr. 2008) ("the junior lien claimants are not entitled to adequate protection pursuant to 11 U.S.C. § 364(d) because at best they have a zero value lien."); *In re Dunckle Assocs., Inc.*, 19 B.R. 481,485 n.10 (Bankr. E.D. Pa. 1982) ("the law is well settled that valueless junior secured positions or unsecured deficiency claims are not entitled to adequate protection.").

### D.  Approval Under Section 364(c)

53.     The statutory requirement for obtaining post-petition credit under section 364(c) of the Bankruptcy Code is a finding, made after notice and a hearing, that the debtor-in-possession is "unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense." *See In re Garland Corp.*, 6 B.R. 456, 461 (B.A.P 1st Cir. 1980); *In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (opining that a debtor seeking secured credit under section 364(c) must prove that it was unable to obtain unsecured credit pursuant to

30

§ 364(b)); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (debtor must show that it has made a reasonable effort to seek other sources of financing under section 364(a) and (b)).

54.     As set forth in the First Day Declaration and the Cuarzo DIP Financing Declaration, and as the evidence at the Final Hearing will demonstrate, the Cuarzo Debtors could not have obtained a post-petition financing facility on the terms and of the type required in these Chapter 11 Cases on an unsecured basis, or, indeed, on any terms other than the Cuarzo DIP Facility.

55.     To show that the credit required is not obtainable on an unsecured basis, a debtor need only demonstrate "by a good-faith effort that credit was not available" without the protections afforded to potential lenders by section 364(c). *Bray v. Shenandoah Federal Savings & Loan Assn. (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986). Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Id.*; *see also Ames Dep't Stores*, 115 B.R. at 40 (holding that debtor made a reasonable effort to secure financing when it selected the least onerous financing option from the remaining two lenders). Moreover, where few lenders are likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd*, *Anchor Savings Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

31

56.     In this matter, Cuarzo has informed the Cuarzo Debtors that it will not consent to any form of third-party priming or *pari passu* liens.  Even if Cuarzo were willing to consent to priming (which it is not), the pending criminal conviction against Debtor Mt. Lebanon Operations, LLC, the DOL Action, any nursing facility assessments, and the fact that the Mt. Lebanon Facility is on the CMS "Special Focus" list would make any effort to find an unrelated third-party DIP lender infeasible.  Nevertheless, the Debtors' CRO, explored the possibility of obtaining a DIP loan from two unrelated, third-party lenders.  Neither had any interest, and both identified issues that would preclude them from even considering such a loan.  Cuarzo DIP Financing Declaration ¶¶ 9-13.

57.     The Cuarzo Debtors submit that the foregoing reasons demonstrate that the first prong of section 364(d)(1) of the Bankruptcy Code – the non-availability of credit except on the terms offered by the DIP Lender – is satisfied in this case.

### E.  The Cuarzo DIP Facility is Necessary to Preserve Assets of the Cuarzo Debtors' Estates

58.     It is essential that the Cuarzo Debtors immediately instill their workforce, vendors, service providers, and all parties in interest with confidence in their ability to transition their business smoothly to the chapter 11 process. The Cuarzo DIP Facility is necessary to continue, among other things, the orderly operation of the Cuarzo Debtors' business, the maintenance of continued relationships with the Cuarzo Debtors' vendors and service providers, and also to satisfy

actual or procedurally necessary working capital requirements for the Cuarzo Debtors' business until such time as operations can be transferred to a new operator.

59. The initial success of the Chapter 11 Cases and the stabilization of the Cuarzo Debtors' operations at the outset thereof depend on the confidence of the Cuarzo Debtors' workforce, vendors, service providers, and all parties in interest, which in turn depends on the Cuarzo Debtors' ability to minimize the disruption to their business due to the bankruptcy filing. If the relief sought in this Motion is delayed or denied, the necessary parties' confidence may be shattered, consequently damaging the Cuarzo Debtors' ability to preserve value for the estate. In contrast, once the Cuarzo DIP Facility is approved and implemented, the Cuarzo Debtors' ability to continue functioning normally will be reasonably assured. Thus, the Cuarzo Debtors submit that their need for approval of the Cuarzo DIP Facility is immediate.

### F.  *No Comparable Alternative to the Cuarzo DIP Facility Is Reasonably Available.*

60. A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by sections 364(c) of the Bankruptcy Code. *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Moreover, in circumstances where only a few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988); *see also In re Snowshoe*, 789 F.2d at 1088

(demonstrating that credit was unavailable absent the senior lien by establishment of unsuccessful contact with other financial institutions in the geographic area); *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) (finding that the refusal of two national banks to grant unsecured loans was sufficient to support the conclusion that the section 364 requirement was met); *In re Ames Dep't Stores*, 115 B.R. at 40 (debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b)).

61.     As set forth in the Cuarzo DIP Financing Declaration and First Day Declaration, given the Cuarzo Debtors current financial condition, financing arrangements and capital structure, the Cuarzo Debtors concluded that the Cuarzo DIP Facility is the superior option for the Cuarzo Debtors because its terms were extensively negotiated in good faith, are reasonable and similar to terms provided in other DIP lending situations.

### G. The Terms of the Cuarzo DIP Facility are Fair, Reasonable, and Appropriate

62.     The terms and conditions of the Cuarzo DIP Facility were negotiated by the parties in good faith and at arms' length. In the reasonable exercise of the Cuarzo Debtors' business judgment, the Cuarzo DIP Facility is the best (and only) financing option available under the Cuarzo Debtors' present circumstances. The purpose of the Cuarzo DIP Facility is to provide the funds required to enable the Cuarzo Debtors to continue operations during the Chapter 11 Cases until the transition of those operations to a new owner. Further, the Cuarzo DIP Facility includes fair provisions related to the payment of retained professionals, including a carve-out in the event

34

the Cuarzo DIP Facility is terminated. *See Ames Dep't Stores*, 115 B.R. at 38 (observing that courts insist on carve-outs for professionals representing parties-in-interest because "absent such protection, the collective rights and expectation of all parties-in-interest are sorely prejudiced").

63.     The proposed Cuarzo DIP Facility provides, generally, that the security interests and administrative expense claims granted to the DIP Lender as security for the obligations under the Cuarzo DIP Credit Letter Agreement are subject to the Carve-Out, as described above. The Cuarzo DIP Facility also provides for payment of court-allowed fees and expenses of professionals up to the amounts set forth in the Budget, and the Cuarzo Debtors believe those budgeted amounts are reasonable and fair. In *Ames Dep't Stores,* the bankruptcy court found that such "carve-outs" for professional fees are not only reasonably but necessary to ensure that official committees and the debtors' estates are adequately assisted by counsel. 115 B.R. at 40.

64.     Likewise, the various fees and charges required by the Cuarzo DIP Lender under the Cuarzo DIP Facility are reasonable and appropriate under the circumstances. Indeed, courts routinely authorize similar lender incentives beyond the explicit liens and rights specified in section 364 of the Bankruptcy Code. *See In re Defender Drug Stores, Inc.*, 145 B.R. 312, 316 (9th Cir. BAP 1992) (approving financing facility pursuant to section 364 of the Bankruptcy Code that included a lender "enhancement fee").

65.     The following additional factors exemplify the fairness and reasonableness of the Cuarzo DIP Facility under the present circumstances:

35

- The Cuarzo DIP Lender moved quickly to offer and negotiate the Cuarzo DIP Facility, which was important in light of the Cuarzo Debtors' current financial situation;

- The fees, interest rate, and other economics are reasonable and consistent with market rates for other postpetition financing facilities in similar circumstances;

- The value of the Cuarzo Debtors' assets is insufficient to make a non-priming DIP possible, and the Cuarzo DIP Lender was unwilling to agree to have its prepetition liens primed; and

- The milestones are reasonable, capable of satisfaction, and consistent with the Debtors' desire to maximize the value of their estates and minimize the costs of administering these Chapter 11 Cases.

66.    The fairness of reasonableness of the terms of the Cuarzo DIP Facility will further be demonstrated at the Final Hearing.

67.    At the Final Hearing on the Cuarzo DIP Motion, the Roll-Up shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the Cuarzo DIP Lender to provide the Cuarzo DIP Facility. The Cuarzo DIP Lender would not otherwise consent to the use of their Cash Collateral or the subordination of their prepetition liens to the DIP liens, and the Cuarzo DIP Lender would not be willing to provide the Cuarzo DIP Facility or extend credit to the Cuarzo Debtors thereunder without the inclusion of the DIP Roll-Up obligations. Additionally, the replacement and refinancing of a portion of the Cuarzo prepetition secured obligations through the Roll-Up: (a) will benefit the Cuarzo Debtors and their estates as a result of the Cuarzo DIP Lenders' agreement to provide "new money" availability under the Cuarzo DIP Facility in a manner favorable to the Cuarzo Debtors, and (b) will enable the Cuarzo Debtors to

36

obtain urgently needed financing that they need to administer their Chapter 11 Cases and fund their operations. Because the Roll-Up is subject to the entry of the Final Order and the reservation of rights to non-debtor parties to challenge this aspect of the Cuarzo DIP Facility as set forth in the Cuarzo DIP Interim Order, it will not prejudice the right of any other party in interest.

### H.  The Cuarzo DIP Lender Should be Deemed a Good-Faith Lender under Section 364(e)

68.      Section 364(e) of the Bankruptcy Code protects a good-faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtors to obtain such loans or grant such liens is later reversed or modified on appeal. Section 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

69.      As explained herein, in the First Day Declaration, and in the Cuarzo DIP Financing Declaration, the Cuarzo DIP Facility and the Proposed Orders are the result of the Cuarzo Debtors' reasonable and informed determination that the Cuarzo DIP Lender offered the most favorable terms on which to obtain critical postpetition financing and arm's-length, good-faith negotiations between the Cuarzo Debtors and the Cuarzo DIP Lender. The terms and conditions of the Cuarzo

DIP Facility are reasonable and appropriate under the circumstances, and the proceeds of the Cuarzo DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code. Further, no consideration is being provided to any party to the Cuarzo DIP Credit Letter Agreement or under the Proposed Orders other than as described herein. Accordingly, the Court should find that the Cuarzo DIP Lender is a "good-faith" lender within the meaning of section 364(e) of the Bankruptcy Code and entitled to all of the protections afforded by that section.

### I. *The Automatic Stay Should be Modified on a Limited Basis*

70.   The Proposed Orders provide that the automatic stay provisions of section 362 of the Bankruptcy Code will be modified to allow the Cuarzo DIP Lender to file any financing statements, security agreements, notices of liens, and other similar instruments and documents in order to validate and perfect the liens and security interests granted to them under the Proposed Orders. The Proposed Orders further provide that the automatic stay is modified as necessary to permit the Cuarzo Debtors to grant the Cuarzo DIP Liens to the Cuarzo DIP Lender and to incur all liabilities and obligations set forth in the Proposed Orders. Finally, the Proposed Orders provide that, following the occurrence of an event of default, and passage of a cure period, the automatic stay shall be vacated and modified to the extent necessary to permit the Cuarzo DIP Lender to exercise all rights and remedies in accordance with the Cuarzo DIP Credit Letter Agreement. Stay modifications of this kind are ordinary and standard features of debtor-in-possession financing

38

arrangements and, in the Cuarzo Debtors' business judgment, are reasonable and fair under the circumstances of these bankruptcy cases.

### J. *Application of the Business Judgment Standard*

71.     As described above, after appropriate investigation and analysis, the Cuarzo Debtors' restructuring team and management has concluded that the Cuarzo DIP Facility is the best alternative available under the circumstances of the Chapter 11 Cases of the Cuarzo Debtors. Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decisions to borrow money, unless such decision is arbitrary and capricious. *See In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that an interim loan, receivables facility, and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment, . . . [and were] reasonable under the circumstances and in the best interest of [the debtor] and its creditors"); *In re Simasko Prods. Co.*, 47 B.R. 444, 449 (D. Conn. 1985) ("[B]usiness judgments should be left to the board room and not to this Court."). Indeed, "more exacting scrutiny [of the debtor's business decisions] would slow the administration of the debtor's estate and increase its cost, interfere with Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

72.     The Cuarzo Debtors have exercised sound business judgment in determining that a post-petition credit facility is appropriate and have satisfied the legal prerequisites to incur debt on

the terms and conditions set forth in the Cuarzo DIP Credit Letter Agreement. The terms of the

Cuarzo DIP Credit Letter Agreement are in the best interests of the Cuarzo Debtors and their

estates. Accordingly, the Cuarzo Debtors should be granted authority to enter into the Cuarzo DIP

Credit Letter Agreement and to obtain funds from the Cuarzo DIP Lender on the secured and

administrative "superpriority" basis described above pursuant to sections 364(c) and 364(d) of the

Bankruptcy Code.

### K.  Interim Approval Should be Granted

73.    Pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2), a final hearing on this Cuarzo

DIP Financing Motion may not be commenced before 14 days after service of that Motion. Fed.

R. Bank. P. 4001(b)(2). This Court may, however, conduct a preliminary hearing before the

expiration of that fourteen-day period and likewise authorize the incurrence of the Cuarzo DIP

Facility and use of Cash Collateral, if necessary, to the extent necessary to avoid immediate and

irreparable harm to the Cuarzo Debtors' estates.

74.    In examining requests under this Bankruptcy Rule, courts apply the same business

judgment standard as is applicable to other business decisions. *See Ames Dep't Stores*, 115 B.R.

at 38. After the 14-day period, the request for financing is not limited to those amounts necessary

to prevent the destruction of the debtor's business, and the debtor is entitled to borrow those

amounts that it believes are prudent to the operation of its business. *Id.* at 36. The Cuarzo Debtors

submit that, for the reasons set forth herein, the immediate obtaining of credit and the use of Cash

Collateral, if necessary, on an interim basis as requested in this Motion are necessary to avert immediate and irreparable harm to the Cuarzo Debtors' business.

75.   The Cuarzo Debtors request that the Court conduct an expedited preliminary hearing on the Motion and authorize the Cuarzo Debtors from and after the entry of the Proposed Interim Order until a Final Hearing on the relief requested herein to obtain credit under the Cuarzo DIP Credit Letter Agreement and to use Cash Collateral. Such authorization will ensure that the Cuarzo Debtors maintain ongoing operations and avoid immediate and irreparable harm and prejudice to their estates and all parties in interest pending the Final Hearing.

### L.   Request for Final Hearing

76.   As noted above, pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Cuarzo Debtors respectfully requests that the Court set a date for the Final Hearing that is no later than thirty (30) days following the entry of the Petition Date.

### NOTICE

77.   Notice of this Motion has been provided by email, facsimile or overnight mail to: (i) the Office of the United States Trustee for the Western District of Pennsylvania, Federal Building, 1000 Liberty Avenue, Suite 1316, Pittsburgh, PA 15222; (ii) counsel to CIBC Bank, U.S.A., Liz Boydston, Max Schlan, and Alexandria Rahn, Gutnicki, LLP, 10440 N. Central Expressway, Suite 800, Dallas, TX 75231; lboydston@gutnicki.com; mschlan@gutnicki.com; arahn@gutnicki.com; (iii) counsel to Cuarzo Healthcare, LLC, Elizabeth A. Green and Andrew

41

Layden, BakerHostetler, 200 South Orange Avenue, Suite 2300, Orlando, FL 32801; egreen@bakerlaw.com; alayden@bakerlaw.com; (iv) lien *lis pendens* parties (a) Harmony Property Management LLC; (b) Irwin Property Management LLC; (c) New Castle Property Management LLC; (d) New Wilmington Property Management LLC; (e) Latrobe Property Management LLC; and, (f) Washington Property Management LLC in care of Michael A. Shiner, Esq., and Maribeth Thomas, Esq., Tucker Arensberg, PC, 1500 One PPG Place, Pittsburgh, PA 15222; mshier@tuckerlaw.com; mthomas@tuckerlaw.com; (v) U.S. Foods, 9399 West Higgins Road, Rosemont, IL 60018; (vi) Department of Human Services, Office of Long-Term Living, Bureau of Finance, Forum Place 6th Floor, 555 Walnut Street, Harrisburg, PA 17101; (vii) CT Corporation, 330 N. Brand Blvd., Suite 700, Attn: SPRS, Glendale, CA 91203; (viii) those persons who have formally appeared and requested notice and service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (ix) the list of the 30 largest unsecured creditors of the Debtors on a consolidated basis; (x) U.S. Department of Labor, Office of the Regional Solicitor, 1835 Market Street, Mailstop SOL/22, Philadelphia, PA 19103-2968, Attn: Alejandro A. Herrera, Esq. Herrera.alejandro.a@dol.gov; facsimile (215) 861-5162, and (xi) the following governmental agencies having a regulatory or statutory interest in these Chapter 11 Cases: (a) Internal Revenue Service, PO Box 7346, Philadelphia, PA 19101-7346; (b) United States Attorney's Office for the Western District of Pennsylvania, Attn: Eric G. Olshan, Joseph F. Weis, Jr. United States Courthouse 700 Grant Street, Suite 4000, Pittsburgh, PA 15219; and (c) Commonwealth of

Pennsylvania Attorney General, Attn: Michelle A. Henry, 16th Floor, Strawberry Square, Harrisburg, PA 17120.  Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice is required.

## NO PRIOR REQUEST

78.    No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully seeks the entry of the Proposed Orders: (i) authorizing the Cuarzo Debtors to obtain postpetition financing, (ii) authorizing the Cuarzo Debtors to use Cash Collateral, (iii) granting liens and providing superpriority administrative expenses status, (iv) granting adequate protection, (v) modifying automatic stay, (vi) scheduling a final hearing, and (vii) granting related relief.

Dated  May 17, 2024
       Pittsburgh, Pennsylvania

Respectfully submitted:

**WHITEFORD TAYLOR & PRESTON, LLP**

*/s/ Daniel R. Schimizzi*
Daniel R. Schimizzi (PA ID No. 311869)
Michael J. Roeschenthaler (PA ID No. 87647)
Mark A. Lindsay (PA ID No. 89487)
Sarah E. Wenrich (PA ID No. 325834)
11 Stanwix Street, Suite 1400
Pittsburgh, PA 15222
Telephone: 412-275-2401
Facsimile:  412-275-2404
Email: dschimizzi@whitefordlaw.com
mroeschenthaler@whitefordlaw.com
mlindsay@whitefordlaw.com
swenrich@whitefordlaw.com

*Proposed Local Counsel to the Debtors and
Debtors in Possession*

*-AND-*

44

Glenn B. Rose (*pro hac vice* pending)
Paul G. Jennings (*pro hac vice* pending)
Gene L. Humphreys (*pro hac vice* pending)
Jordan E. Thomas (*pro hac vice* pending)
Alfonso Cuen (*pro hac vice* pending)
**BASS, BERRY & SIMS PLC**
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone (615) 742-6200
Facsimile (615) 742-6293
grose@bassberry.com
pjennings@bassberry.com
ghumphreys@bassberry.com
jordan.thomas@bassberry.com
alfonso.cuen@bassberry.com

*Proposed Counsel to the Debtors and
Debtors in Possession*