## EXHIBIT A

## PROPOSED INTERIM ORDER

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re:<br><br>**SOUTH HILLS OPERATIONS, LLC,** *et al.,*[1]<br><br>Debtors. | **Case No.: 24-21217-CMB**<br><br>**Chapter 11**<br>*Joint Administration Requested*<br><br>**Doc. No.:** |
| **SOUTH HILLS OPERATIONS, LLC,** *et al.,*<br><br>**Movant,**<br><br>**-vs -**<br><br>**CIBC BANK USA, GPH CANONSBURG LP, GPH MONROEVILLE LP, GPH MURRYSVILLE LP, GPH MT. LEBANON LP, and PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES,**<br><br>**Respondents.** | **Related to Document No.**<br><br>**Hearing Date:**<br><br>**Hearing Time:**<br><br>**Response Deadline:** |

---

[1]The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: South Hills Operations, LLC (5527); Monroeville Operations, LLC (3280); Mt. Lebanon Operations, LLC (1133); Murrysville Operations, LLC (9149); Cheswick Rehabilitation and Wellness Center, LLC (9561); 3876 Saxonburg Boulevard Propco, LLC (3618); North Strabane Rehabilitation and Wellness Center, LLC (1677); 100 Tandem Village Road Propco, LLC (1918); Maybrook-C Briarcliff Opco, LLC (5187); Maybrook-C Briarcliff Propco, LLC (1823); Maybrook-C Evergreen Opco, LLC (5388); Maybrook-C Evergreen Propco, LLC (2000); Maybrook-C Kade Opco, LLC (4033); Maybrook-C Kade Propco, LLC (2097); Maybrook-C Latrobe Opco, LLC (4148); Maybrook-C Latrobe Propco, LLC (2178); Maybrook-C Overlook Opco, LLC (7081); Maybrook-C Overlook Propco, LLC (6804); Maybrook-C Silver Oaks Opco, LLC (7146); Maybrook-C Silver Oaks Propco, LLC (9654); Maybrook-C Whitecliff Opco, LLC (6211); Maybrook-C Whitecliff Propco, LLC (4835). ). The Debtors' address is 485 Lexington Avenue, 10th Floor, New York, NY 10017.

**INTERIM ORDER (I) AUTHORIZING THE CURAZO DEBTORS TO OBTAIN
POSTPETITION FINANCING, (II) AUTHORIZING THE CUARZO DEBTORS USE
OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING
ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY,
(VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the motion dated May 17, 2024 [Doc. No. ___] (the "Cuarzo DIP Motion")[2] of

Debtors Monroeville Operations, LLC, South Hills Operations LLC, Murrysville Operations, LLC

and Mt. Lebanon Operations, LLC (collectively, the "Cuarzo Debtors"), in the above-captioned

chapter 11 cases (collectively, the "Chapter 11 Cases"), seeking entry of an order (this "Interim

Order") pursuant to sections 105, 361, 362, 363, 364(c)(l), 364(c)(2), 364(c)(3), 364(d), 364(e),

and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002,

4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and

Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the Western District of

Pennsylvania (the "Local Rules"), *inter alia*:

i.         authorizing the Cuarzo Debtors to obtain senior secured postpetition financing on

a superpriority basis consisting of a senior secured superpriority, credit facility in the aggregate

principal amount of $5,740,000 (the "Cuarzo DIP Facility") consisting of (a) a New Money DIP

Loan in the amount of $2,870,000 and (b) upon entry of a Final Order, a roll-up of the Cuarzo DIP

---

[2]Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such
terms as set forth in the Motion.

Lenders' prepetition secured debt on an as-loaned basis in the amount of $2,870,000 (the "Roll-Up DIP Loan"), subject to the terms and conditions of this Interim Order and that certain Loan Agreement dated May 17, 2024, (as the same may be amended, restated, supplemented, waived or otherwise modified from time to time (the "Cuarzo DIP Credit Letter Agreement")), by and among the Cuarzo Debtors, as borrower, and GPH Canonsburg LP, GPH Monroeville LP, GPH Murrysville LP and GPH Mt. Lebanon LP (collectively, the "Cuarzo DIP Lender"),  substantially in the form of **Exhibit A-1**, attached hereto;

ii.        authorizing the Cuarzo Debtors to execute and deliver the Cuarzo DIP Credit Letter Agreement and any other agreements, instruments, pledge agreements, control agreements and other documents related thereto (including any security agreements, intellectual property security agreements, control agreements, or notes) (as amended, restated, supplemented, waived, and/or modified from time to time, and collectively, with the Cuarzo DIP Credit Letter Agreement, the "Cuarzo DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the Cuarzo DIP Documents;

iii.        authorizing the Cuarzo Debtors to use proceeds of the Cuarzo DIP Facility as permitted in the Cuarzo DIP Documents and in accordance with this Interim Order;

iv.        granting to the Cuarzo DIP Lender on account of the Cuarzo DIP Facility and all obligations owing thereunder and under, or secured by, the Cuarzo DIP Documents (collectively, the "Cuarzo  DIP Obligations") allowed superpriority administrative expense claim status in each

3

of the Chapter 11 Cases of the Cuarzo Debtors and any Successor Cases (as defined herein), subject only to the Carve-Out (as defined herein);

v.        granting to the Cuarzo DIP Lender automatically perfected security interests in and liens on all of the Cuarzo DIP Collateral (as defined herein), including all property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code, which liens shall be on the terms and subject to the relative priorities set forth in the Cuarzo DIP Documents and this Interim Order;

vi.        authorizing and directing the Cuarzo Debtors to pay the principal, interest, fees, expenses and other amounts payable under the Cuarzo DIP Documents as such become earned, due and payable, including, without limitation, continuing commitment fees, closing fees, upfront fees, the reasonable fees and disbursements of the Cuarzo DIP Lender's attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the Cuarzo DIP Documents;

vii.        authorizing the Cuarzo Debtors to use the all assets of the Cuarzo Debtors existing as of the Petition Date, including cash collateral (the "Cuarzo Prepetition Collateral"), and providing adequate protection to any entity having an interest in the Cuarzo Prepetition Collateral for any and all diminution in value of the Cuarzo Prepetition Collateral from and after the Petition Date for any reason, including, without limitation, any such diminution resulting from (i) the use of cash collateral, (ii) the priming of any security interests in and liens on any of the Cuarzo Prepetition

4

Collateral (including by the Carve-Out) by the Cuarzo DIP Liens (as defined herein) pursuant to the Cuarzo DIP Documents and this Interim Order, (iii) the use, sale, or lease of the Cuarzo Prepetition Collateral, including cash collateral, and (iv) the imposition of the automatic stay under section 362(a) of the Bankruptcy Code or otherwise pursuant to sections 361(a), 363(c), 364(c), 364(d)(1), and 507(b) of the Bankruptcy Code ("Diminution in Value");

viii.    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Cuarzo DIP Documents and this Interim Order;

ix.    subject to and effective upon entry of the Final Order, waiving the Debtors' ability to surcharge any Cuarzo DIP Collateral or Cuarzo Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code and any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

x.    scheduling a final hearing (the "Final Hearing") within twenty-eight (28) days of the Petition Date to consider the relief requested in the Cuarzo DIP Motion on a final basis and approving the form of notice with respect to the Final Hearing;

xi.    waiving any applicable stay with respect to effectiveness and enforceability of this Interim Order (including under Bankruptcy Rule 6004); and

xii.    granting the Cuarzo Debtors such other and further relief as is just and proper.

5

The Court having considered the Cuarzo DIP Motion, the exhibits attached thereto, the *Declaration of Louis E. Robichaux IV in Support of the Cuarzo Debtors' Motion for Interim and Final Orders (I) Authorizing the Cuarzo Debtors to Obtain Postpetition Financing, (II) Authorizing the Cuarzo Debtors Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* (the "Cuarzo DIP Declaration") and the *Declaration of Louis Robichaux IV, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and Various First Day Applications and Motions* (the "First Day Declaration"), the Cuarzo DIP Documents, and the evidence submitted and argument made at the interim hearing held on May 21, 2024 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Cuarzo DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the Cuarzo DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, their creditors and equity holders, and all parties-in-interest, and is essential for the continued operation of the Cuarzo Debtors' businesses and the preservation of the value of the Cuarzo Debtors' assets; and it appearing that the Cuarzo Debtors' entry into the Cuarzo

6

DIP Credit Letter Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    **Petition Date**. On May 17, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Western District of Pennsylvania (the "Court").

B.    **Debtors in Possession**. The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed for any Debtor.

C.    **Jurisdiction and Venue**. This Court has jurisdiction over the Chapter 11 Cases, the Cuarzo DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue for the Chapter 11 Cases and proceedings on the Cuarzo DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

3 The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

7

D.      **Committee Formation**. As of the date hereof, the United States Trustee for the Western District of Pennsylvania (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (a "Committee").

E.      **Notice**. Notice of the Cuarzo DIP Motion and Interim Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Cuarzo DIP Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

F.      **Debtors' Cuarzo Stipulations**. After consultation with their attorneys and financial advisors, and without prejudice to the rights of a Creditors' Committee or other parties in-interest as set forth in paragraph 36 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(iii) below are referred to herein, collectively, as the "Debtors' Cuarzo Stipulations"):

    i.      Each of the Cuarzo Debtors is in material default of the Master Lease dated February 1, 2017 among each of the Cuarzo Debtors and the Cuarzo DIP Lender (the "Master Lease");

    ii.     pursuant to the Master Lease and the recorded UCC financing statements, the Cuarzo DIP Lenders have valid and perfected first priority liens on all

8

of the Cuarzo Debtors assets to secure repayment of amounts owed under the Master Lease; and

iii.    the Debtors shall not challenge or use any of the Cuarzo DIP Facility proceeds to challenge, the Cuarzo DIP Lender's pre-petition liens.

G.    **Prepetition Liens**. Nothing herein shall constitute a finding or ruling by this Court that any alleged prepetition lien or security interest is valid, senior, enforceable, prior, perfected, or non-avoidable.

H.    **Cash Collateral**. The Cuarzo DIP Lender had, as of the Petition Date, a security interest in all of the Cuarzo Debtors' cash collateral, as defined in section 363 (a) of the Bankruptcy Code (the "Cuarzo Cash Collateral").

I.    **Findings Regarding Corporate Authority**. Each Cuarzo Debtor has all requisite corporate power and authority to execute and deliver the Cuarzo DIP Documents to which it is a party and to perform its obligations thereunder.

J.    **Findings Regarding Postpetition Financing.**

i.    *Request for Postpetition Financing*. The Cuarzo Debtors seek authority to (a) use Cuarzo Cash Collateral on the terms described herein, and (b) enter into the Cuarzo DIP Facility on the terms described herein and in the Cuarzo DIP Documents to administer their Chapter 11 Cases and to fund their operations. At the Final Hearing, the Debtors will seek final approval of the proposed postpetition financing and use of Cuarzo Cash Collateral

9

arrangements pursuant to a proposed final order (the "Final Order"), which shall be in form and substance reasonably acceptable to the Cuarzo DIP Lender. Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

ii. *Priming of the Prepetition Liens*. The priming of the prepetition liens on the Cuarzo Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the Cuarzo DIP Facility and as further described below, will enable the Cuarzo Debtors to obtain the Cuarzo DIP Facility and to continue to operate their businesses to the benefit of their estates and creditors. Each prepetition secured party is entitled to receive adequate protection as set forth in this Interim Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any Diminution in Value of each of their respective interests in the Cuarzo Prepetition Collateral. For avoidance of doubt, the priming liens granted in connection with this Interim Order apply only to the liens and security interests against the Cuarzo Debtors and do not prime any lien on the assets of any other Debtors in these Chapter 11 Cases.

iii. *Need for Postpetition Financing and Use of Cuarzo Cash Collateral*. The Cuarzo Debtors have an immediate and ongoing need to use Cuarzo Cash Collateral on an interim basis and to obtain credit on an interim basis pursuant to the Cuarzo DIP Facility in order to, among other things, administer and preserve the value of their estates. The ability of the Cuarzo Debtors to maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and otherwise finance their operations requires the availability

10

of working capital from the Cuarzo DIP Facility and the use of Cuarzo Cash Collateral, the absence of either of which would immediately and irreparably harm the Cuarzo Debtors, their estates, and parties-in-interest. The Cuarzo Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business in the Interim Period without the Cuarzo DIP Facility and authorized use of Cuarzo Cash Collateral.

iv.      *No Credit Available on More Favorable Terms*. Given their current financial condition, financing arrangements, and capital structure, the Cuarzo Debtors have been and continue to be unable to obtain financing from sources other than the Cuarzo DIP Lenders on terms more favorable than the Cuarzo DIP Facility. The Cuarzo Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Cuarzo Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Cuarzo Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Cuarzo Debtors and their estates that is subject to a lien. As described in the Cuarzo DIP Declaration, financing on a postpetition basis on better terms is not otherwise available without granting the Cuarzo DIP Lender: (1) perfected security interests in and liens on (each as provided herein) all of the Cuarzo Debtors' existing and after-acquired assets with the priorities set forth in

11

paragraph 6 hereof, other than Avoidance Actions (as defined herein); (2) superpriority claims and liens against all assets of the Cuarzo Debtors; (3) the other protections set forth in this Interim Order; and (4) the partial refinancing of the Cuarzo Debtors' prepetition secured obligations through the Roll-Up DIP Loan on an as loaned basis.

v.      *Use of Proceeds of the Cuarzo DIP Facility*. As a condition to entry into the Cuarzo DIP Credit Letter Agreement, the extension of credit under the Cuarzo DIP Facility and the authorization to use Cuarzo Cash Collateral, the Cuarzo DIP Lender and the Cuarzo Debtors have agreed, that proceeds of the Cuarzo DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of this Interim Order and the Cuarzo DIP Documents and in accordance with the budget (as the same may be modified from time to time consistent with the terms of the Cuarzo DIP Documents and subject to such variances as permitted in the Cuarzo DIP Credit Letter Agreement, and as set forth in paragraph 17 hereof, the "Budget"),[4] solely for: (a) working capital; (b) permitted payment of costs of administering the Chapter 11 Cases; (c) payment of such other prepetition obligations as set forth in the Budget or otherwise approved by the Cuarzo DIP Lender in its reasonable discretion, and as approved by the Court; (d) payment of interest, fees, expenses and other amounts (including legal and other professionals' fees and expenses of the Cuarzo DIP Lender) owed under the Cuarzo DIP Documents;  and (e) other general corporate purposes of the Cuarzo Debtors permitted by the Budget and the Cuarzo

---

[4]A copy of the Budget is attached hereto as **Exhibit A-2**.

12

DIP Documents. The Cuarzo DIP Lender is relying upon the Budget in entering into the Cuarzo

DIP Credit Letter Agreement and the other Cuarzo DIP Documents and providing the Cuarzo DIP

Facility in consenting to the terms of this Interim Order. All references in this Interim Order

restricting the use of Loans (as defined in the Cuarzo DIP Credit Letter Agreement) to payment

of amounts consistent with the Budget shall mean the most recent approved Budget, subject to

the permitted variances set forth in paragraph 17 hereof.

vi.     *Application of Proceeds of Collateral*. As a condition to entry into

the Cuarzo DIP Credit Letter Agreement, the extension of credit under the Cuarzo DIP Facility

and authorization to use Cuarzo Cash Collateral, the Cuarzo Debtors and the Cuarzo DIP Lender

have agreed that as of and commencing on the date of the Interim Hearing, the Cuarzo Debtors

shall apply the proceeds of Cuarzo DIP Collateral (as defined herein) in accordance with this

Interim Order and as provided in the Cuarzo DIP Documents.

K.     **Adequate Protection**. Subject to the provisions of paragraph 36 hereof, the

Cuarzo DIP Lender is entitled to receive adequate protection to the extent of any

Diminution in Value of its respective interests in the Cuarzo Prepetition Collateral.

Pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection,

the Cuarzo DIP Lender will receive replacement liens on all assets of the Cuarzo Debtors

arising or created after the Petition Date, other than Avoidance Actions (as defined herein).

Nothing in this Interim Order shall constitute a finding that any other creditor has any

13

interest in any of the Cuarzo Prepetition Collateral.  In the event any creditor is ultimately found to have had an interest in any of the Cuarzo Prepetition Collateral, each will receive adequate protection to the extent of any Diminution in Value of its respective interests in the Cuarzo Prepetition Collateral in the form of replacement liens having the priority set forth herein on all assets of the Cuarzo Debtors arising or created after the Petition Date, other than Avoidance Actions.

L.      **Sections 506(c) and 552(b).** In light of: (i) the DIP Lender's agreement that its liens and superpriority claims shall be subject to the Carve-Out, and (ii) the payment of expenses as set forth in the Budget in accordance with and subject to the terms and conditions of this Interim Order and the Cuarzo DIP Documents, (a) subject to entry of a Final Order, the DIP Lender is entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) subject to entry of a Final Order, the DIP Lender is entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

M.      **Good Faith of the Cuarzo DIP Lender**.

i.      *Willingness to Provide Financing*.    The Cuarzo DIP Lender has indicated a willingness to provide financing to the Cuarzo Debtors subject to: (a) entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the Cuarzo DIP Facility and the Cuarzo DIP Documents; (c) satisfaction of the closing conditions set forth in the

14

Cuarzo DIP Documents; and (d) findings by this Court that the Cuarzo DIP Facility is essential to the Cuarzo Debtors' estates, that the Cuarzo DIP Lender is extending credit to the Cuarzo Debtors pursuant to the Cuarzo DIP Documents in good faith, and that the Cuarzo DIP Lender's claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order and the Cuarzo DIP Documents will have the protections provided by section 364(e) of the Bankruptcy Code. Based upon the record presented at the Interim Hearing, the Cuarzo DIP Facility has been negotiated in good faith and at arm's length between the Cuarzo Debtors, on the one hand, and the Cuarzo DIP Lender. All of the Cuarzo DIP Obligations and all other liabilities and obligations of the Cuarzo Debtors under this Interim Order and the Cuarzo DIP Documents owing to the Cuarzo DIP Lender shall be deemed to have been extended the Cuarzo DIP Lender in "good faith," as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code. The Cuarzo DIP Lender shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

ii.      *Business Judgment and Good Faith Pursuant to Section 364(e)*. The extensions of credit under the Cuarzo DIP Facility and the Cuarzo DIP Documents, and the interest and fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Cuarzo Debtors under the circumstances, are ordinary and appropriate for secured financing to debtors in

15

possession, reflect the Cuarzo Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The terms and conditions of the Cuarzo DIP Facility and the use of Cuarzo Cash Collateral were negotiated in good faith and at arms' length among the Cuarzo and the Cuarzo DIP Lender, with the assistance and counsel of their respective advisors. Use of Cuarzo Cash Collateral and credit to be extended under the Cuarzo DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the Cuarzo DIP Lender within the meaning of section 364(e) of the Bankruptcy Code, and the Cuarzo DIP Lender is entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Interim Order.

N.     **Jurisdiction and Venue: Core Proceeding**. This Court has jurisdiction over these Chapter 11 Cases, the Cuarzo DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b). Venue for these Chapter 11 Cases and the proceedings on the Cuarzo DIP Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief sought herein are sections 105, 361, 362, 263, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and the applicable Local Rules.

O.     **Immediate Entry**. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2). Absent the immediate grant by the

Court of the interim relief sought by the Cuarzo DIP Motion, each Cuarzo Debtor's estate will be immediately and irreparably harmed pending the Final Hearing. The Cuarzo Debtors' obtaining the Cuarzo DIP Facility in accordance with the terms of this Interim Order and the Cuarzo DIP Documents is in the best interests of each Cuarzo Debtor's estate and is consistent with each Cuarzo Debtor's exercise of its fiduciary duties.

P.    **Interplay Between Maybrook DIP Motion and Cuarzo DIP Motion**. Contemporaneously with the filing of the Cuarzo DIP Motion, each of the other eighteen Debtors in these Chapter 11 Cases (collectively, the "Maybrook and Consulate Debtors"), have also sought approval of post-petition debtor-in-possession financing, the terms and conditions of which are set forth in the *Emergency Motion For Entry Of Interim And Final Orders (I) Authorizing The Maybrook and Consulate Debtors To Obtain Postpetition Financing, (II) Authorizing the Maybrook and Consulate Debtors To Use Cash Collateral, (III) Granting Liens And Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling A Final Hearing, And (VII) Granting Related Relief* [Doc. No. __] (the "Maybrook DIP Motion"). All terms and conditions of this Interim Order and the Cuarzo DIP Credit Letter Agreement are intended to apply exclusively to the Cuarzo Debtors, and not to the Non-Cuarzo Debtors.  The relief sought by the Maybrook and Consulate Debtors is set forth in the *Interim Order (I) Authorizing the Maybrook and Consulate Debtors to Obtain Postpetition*

17

*Financing, (II) Authorizing the Maybrook and Consulate Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Doc. No. ___] (the "Maybrook Interim DIP Order").

Q.      **Interim Hearing**. Notice of the Interim Hearing and the relief requested in the Cuarzo DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the Office of the United States Trustee for the Western District of Pennsylvania, Federal Building, 1000 Liberty Avenue, Suite 1316, Pittsburgh, PA 15222; (ii) counsel to CIBC Bank, U.S.A., Liz Boydston, Max Schlan, and Alexandria Rahn, Gutnicki, LLP, 10440 N. Central Expressway, Suite 800, Dallas, TX 75231; lboydston@gutnicki.com; mschlan@gutnicki.com; arahn@gutnicki.com; (iii) counsel to Cuarzo Healthcare, LLC, Elizabeth A. Green and Andrew Layden, BakerHostetler, 200 South Orange Avenue, Suite 2300, Orlando, FL 32801; egreen@bakerlaw.com; alayden@bakerlaw.com; (iv) lien *lis pendens* parties (a) Harmony Property Management LLC; (b) Irwin Property Management LLC; (c) New Castle Property Management LLC; (d) New Wilmington Property Management LLC; (e) Latrobe Property Management LLC; and, (f) Washington Property Management LLC in care of Michael A. Shiner, Esq., and Maribeth Thomas, Esq., Tucker

18

Arensberg, PC, 1500 One PPG Place, Pittsburgh, PA 15222; mshier@tuckerlaw.com; mthomas@tuckerlaw.com; (v) U.S. Foods, 9399 West Higgins Road, Rosemont, IL 60018; (vi) Department of Human Services, Office of Long-Term Living, Bureau of Finance, Forum Place 6th Floor, 555 Walnut Street, Harrisburg, PA 17101; (vii) CT Corporation, 330 N. Brand Blvd., Suite 700, Attn: SPRS, Glendale, CA 91203; (viii) those persons who have formally appeared and requested notice and service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (ix) the list of the 30 largest unsecured creditors of the Debtors on a consolidated basis; (x) U.S. Department of Labor, Office of the Regional Solicitor, 1835 Market Street, Mailstop SOL/22, Philadelphia, PA 19103-2968, Attn: Alejandro A. Herrera, Esq. Herrera.alejandro.a@dol.gov; facsimile (215) 861-5162, and (xi) the following governmental agencies having a regulatory or statutory interest in these Chapter 11 Cases: (a) Internal Revenue Service, PO Box 7346, Philadelphia, PA 19101-7346; (b) United States Attorney's Office for the Western District of Pennsylvania, Attn: Eric G. Olshan, Joseph F. Weis, Jr. United States Courthouse 700 Grant Street, Suite 4000, Pittsburgh, PA 15219; and (c) Commonwealth of Pennsylvania Attorney General, Attn: Michelle A. Henry, 16th Floor, Strawberry Square, Harrisburg, PA 17120. The Debtors have made reasonable efforts to afford the best notice possible under the circumstances in compliance with Bankruptcy Rules 4001(b) and (c) and applicable Local Rules and no other notice is required in connection with the relief set forth in this Interim Order. Based

19

upon the foregoing findings and conclusions, the Cuarzo DIP Motion, the Cuarzo DIP Declaration, the First Day Declaration, and the record before the Court with respect to the Cuarzo DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.      Interim Financing Approved. The Cuarzo DIP Motion is granted as set forth herein, the interim financing as set forth in this Interim Order is authorized and approved, and the use of Cuarzo Cash Collateral on an interim basis is authorized, in each case subject to the terms and conditions set forth in the Cuarzo DIP Documents and this Interim Order. All objections to this Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled on the merits in their entirety. Subject to the terms of this Interim Order, the rights of all parties in interest to object to the final relief sought by the Cuarzo DIP Motion are reserved in full.

### Authorization of the Cuarzo DIP Facility

2.      Authorization of the Cuarzo DIP Facility. The Cuarzo DIP Facility is hereby approved. Notwithstanding anything in this Interim Order to the contrary, the Roll-Up DIP loan is subject to (i) entry of a Final Order and (ii) paragraph 36 herein. The Cuarzo Debtors are expressly and immediately authorized and empowered to execute and deliver the Cuarzo DIP Documents, and to incur and to perform the Cuarzo DIP Obligations in accordance with, and

subject to, the terms of this Interim Order and the Cuarzo DIP Documents, and to deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Cuarzo Debtors under the Cuarzo DIP Facility and the creation and perfection of the Cuarzo DIP Liens (as defined herein) described in and provided for by this Interim Order and the Cuarzo DIP Documents. The Cuarzo Debtors are hereby authorized and directed to pay, in accordance with this Interim Order, the principal, interest, fees, payments, expenses, and other amounts described in the Cuarzo DIP Documents as such amounts become earned, due and payable and without need to obtain further Court approval, including closing fees, unused line fees, and the reasonable fees and disbursements of the Cuarzo DIP Lender's attorneys, advisors, accountants, and other consultants incurred in connection with the Cuarzo DIP Loan, whether or not such fees arose before or after the Petition Date, to the extent provided in this Interim Order or the Cuarzo DIP Documents. All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be applied as required by this Interim Order and the Cuarzo DIP Documents. Upon execution and delivery, the Cuarzo DIP Documents shall represent valid and binding obligations of the Cuarzo Debtors, enforceable against each of the Cuarzo Debtors and their estates in accordance with their terms.

3.     <u>Authorization to Borrow</u>. To prevent immediate and irreparable harm to the Cuarzo Debtors' estates, from the entry of this Interim Order through and including the earliest

21

to occur of (i) entry of the Final Order or (ii) the Termination Date (as defined below), and subject to the terms, conditions, limitations on availability and reserves (as applicable) set forth in the Cuarzo DIP Documents and this Interim Order, the Cuarzo Debtors shall be deemed to have requested, and the Cuarzo DIP Lender is hereby authorized to make, loans, the proceeds of which shall be used to in accordance with the Budget (as defined herein).

4. <u>Cuarzo DIP Obligations</u>. The Cuarzo DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Cuarzo DIP Obligations, which shall be enforceable against the Cuarzo Debtors, their estates and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "<u>Successor Cases</u>"). Upon entry of this Interim Order, the Cuarzo DIP Obligations will include all loans, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Cuarzo Debtors to the Cuarzo DIP Lender under, or secured by, the Cuarzo DIP Documents or this Interim Order, including all principal, accrued interest, costs, fees, expenses and other amounts under the Cuarzo DIP Documents. The Cuarzo Debtors shall be jointly and severally liable for the Cuarzo DIP Obligations. The Cuarzo DIP Obligations shall be due and payable, without notice or demand, and the use of Cuarzo Cash Collateral shall automatically cease on the Termination Date (as defined herein), except as provided in paragraph 30 herein. To the fullest extent permissible under the

22

Bankruptcy Code, no obligation, payment, transfer, or grant of collateral security hereunder or under the Cuarzo DIP Documents (including any Cuarzo DIP Obligation or Cuarzo DIP Liens (as defined below) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, except as set forth in paragraph 36 below.

5.      DIP Liens. In order to secure the Cuarzo  DIP Obligations, effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the Cuarzo DIP Lender is hereby granted, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "Cuarzo DIP Liens") all real and personal property and other assets, whether now existing or hereafter arising and wherever located, tangible and intangible, of each of the Cuarzo Debtors and their bankruptcy estates (collectively, the "Cuarzo DIP Collateral"), including, without limitation: (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper,

23

contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including all of the issued and outstanding capital stock of each of its subsidiaries), hedge agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, fee interests in real property owned by the Cuarzo Debtors, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (b) all owned real property interests, leased real property (including, for the avoidance of doubt, any ground leases), and all proceeds of all of such real property or other interests; (c) subject to entry of a Final Order, the Cuarzo Debtors' rights under section 506(c); (d) all Cuarzo Prepetition Collateral, whether or not subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date; and (e) to the extent not otherwise included, all proceeds, tort claims, insurance claims and other rights to payments not otherwise included in the foregoing and proceeds and products of the foregoing and all accessions to, substitutions and replacements for, and rent and profits of, each of the foregoing.  Notwithstanding anything to the contrary in the foregoing, the Cuarzo DIP Collateral shall not include any claims

24

or causes of action, nor any proceeds thereof, to avoid a transfer of property (or an interest in property) or an obligation incurred by the Cuarzo Debtors pursuant to any applicable section of the Bankruptcy Code, including, without limitation, chapter 5 and section 724(a) of the Bankruptcy Code (collectively, the "Avoidance Actions").

6.        DIP Lien Priority. The Cuarzo DIP Liens securing the Cuarzo DIP Obligations are valid, automatically perfected, non-avoidable, senior in priority, and superior to any other security, mortgage, collateral interest, lien, or claim to any of the Cuarzo DIP Collateral, except that the Cuarzo DIP Liens shall be subject to the Carve-Out as set forth in this Interim Order. The Cuarzo DIP Liens shall consist of:

i.        Priming DIP Liens on Cuarzo Prepetition Collateral. Valid, binding, continuing, enforceable, and fully perfected, first priority security interests and liens upon all Cuarzo DIP Collateral which is the Cuarzo Prepetition Collateral, which security interests in and liens upon, pursuant to section 364(d)(1) of the Bankruptcy Code, shall be prior and senior in all respects to (i) the security interests and liens in favor of CIBC Bank, U.S.A., the Pennsylvania Department of Human Services and any other creditor ultimately found to have an interest in the Cuarzo Prepetition Collateral; and (ii) the Prepetition Adequate Protections Liens (as defined herein) with respect to the Cuarzo DIP Collateral.

ii.        Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, valid, binding, continuing, enforceable, and fully perfected, first priority security

25

interests and liens upon all prepetition and postpetition property of the Cuarzo Debtors, whether existing on the Petition Date or thereafter acquired (other than Avoidance Actions), that, on or as of the Petition Date (or perfected thereafter as permitted by section 546(b) of the Bankruptcy Code) or the date acquired (if acquired after the Petition Date) is not subject to a properly perfected, valid, enforceable and unavoidable lien (collectively, the "Unencumbered Property").

iii.    DIP Liens Not Subordinate. Other than as set forth herein or in the Cuarzo DIP Documents, the Cuarzo DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases, and shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Chapter 11 Cases or Successor Cases; provided that adequate protection on account of pre-petition liens and the Roll-Up shall be subject paragraph 36 hereof. The Cuarzo DIP Liens shall not be subject to sections 506(c) (subject to entry of a Final Order), 510, 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Cuarzo DIP Liens. In no event shall any person who pays (or through the extension of credit to any

26

Cuarzo Debtor, causes to be paid) any of the Cuarzo DIP Obligations be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or priorities granted to or in favor of, or conferred upon, the Cuarzo DIP Lender by the terms of any Cuarzo DIP Documents or this Interim Order unless and until the Cuarzo DIP Obligations owed to the Cuarzo DIP Lender have been indefeasibly paid in full in cash.

7.      DIP Superpriority Claims. Upon entry of this Interim Order, in addition to the DIP Liens granted herein, the Cuarzo DIP Lender is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases of the Cuarzo Debtors and any Successor Cases for any of the Cuarzo Debtors (collectively, the "DIP Superpriority Claims") for all Cuarzo DIP Obligations: (a) subject only to the Carve-Out, having priority over any and all administrative expense claims and unsecured claims against the Cuarzo Debtors or their estates in any of the Chapter 11 Cases of the Cuarzo Debtors and any Successor Cases for any of the Cuarzo Debtors, at any time existing or arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code; (b) which shall at all times be senior to the rights of the Cuarzo Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law; and (c) shall

27

be payable, to the extent such DIP Superpriority Claims arise, solely from the assets of the Cuarzo Debtors. The DIP Superpriority Claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and shall be payable from all prepetition and postpetition property of the Cuarzo Debtors.

8.    No Obligation to Extend Credit. The Cuarzo DIP Lender shall have no obligation to make any loan or advance, or to issue, amend, renew or extend any letters of credit or bankers' acceptance under the Cuarzo DIP Documents, unless all of the conditions precedent to the making of such extension of credit or the issuance, amendment, renewal, or extension of such letter of credit or bankers' acceptance under the Cuarzo DIP Documents and this Interim Order have been satisfied in full or waived by the DIP Lender in accordance with the terms of the Cuarzo DIP Credit Letter Agreement.

9.    Use of Proceeds of Cuarzo DIP Facility. From and after the Petition Date, the Cuarzo Debtors shall use advances of credit under the Cuarzo DIP Facility, in accordance with the Budget (subject to such variances as are permitted under the Cuarzo DIP Credit Letter Agreement), only for the purposes specifically set forth in this Interim Order and the Cuarzo DIP Documents, and in compliance with the terms and conditions in this Interim Order and the Cuarzo DIP Documents.

28

**Authorization to Use Cuarzo Cash Collateral**

10.    <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Interim Order, the Cuarzo DIP Facility, and the Cuarzo DIP Documents and in accordance with the Budget (subject to such variances as permitted in the Cuarzo DIP Credit Letter Agreement), the Cuarzo Debtors are authorized to use Cuarzo Cash Collateral until the earlier of the Carve-Out Effective Date or the Maturity Date (both as defined in the Cuarzo DIP Documents); *provided, however*, that during the Remedies Notice Period (as defined herein), the Cuarzo Debtors may use Cuarzo Cash Collateral and the DIP Facility's already advanced proceeds in accordance with the terms of any pending order granting the DIP Motion, whether on an interim or final basis, solely to pay necessary expenses set forth in the Budget to avoid immediate and irreparable harm to the Debtors' estates or as otherwise agreed by the Cuarzo DIP Lender in its sole discretion, and the Carve-Out shall be funded following delivery of the Carve-Out Trigger Notice (as defined herein) as provided in paragraph 33 of this Interim Order. Nothing in this Interim Order shall authorize the disposition of any assets of the Cuarzo Debtors or their estates outside the ordinary course of business, or any Cuarzo Debtor's use of any Cuarzo Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the Cuarzo DIP Facility, the Cuarzo DIP Documents, and in accordance with the Budget or by subsequent order of this Court.

11.      Adequate Protection Liens.

i.      *Prepetition Adequate Protection Liens*. Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Cuarzo DIP Lender against any Diminution in Value of such interests in the Cuarzo Prepetition Collateral, the Cuarzo Debtors hereby grant to the Cuarzo DIP Lender, continuing, valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests in and liens on all of the Cuarzo DIP Collateral (the "Prepetition Adequate Protection Liens"). In the event any creditor is ultimately found to have had an interest in any of the Cuarzo Prepetition Collateral, each will receive adequate protection to the extent of any Diminution in Value of its respective interests in the Cuarzo Prepetition Collateral in the form of replacement liens having the priority set forth herein on all of the Cuarzo DIP Collateral, other than Avoidance Actions (as defined herein) (the Junior Prepetition Adequate Protection Liens").

12.     Priority of Prepetition Adequate Protection Liens.

i.      The Prepetition Adequate Protection Liens shall be subject to the Carve-Out and the provisions of paragraph 36 as set forth in this Interim Order and shall otherwise be junior only to the Cuarzo DIP Liens and DIP Superpriority Claims but shall be senior to any Junior Prepetition Adequate Protection Liens.

ii. Subject to paragraph 36 and except as provided herein or in the Cuarzo DIP Credit Letter Agreement, the Prepetition Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Chapter 11 Cases of the Cuarzo Debtors or any Successor Cases for any of the Cuarzo Debtors, and shall be valid and enforceable against any trustee or other estate representative appointed in any of the Chapter 11 Cases of the Cuarzo Debtors or any Successor Cases for any of the Cuarzo Debtors, or upon the dismissal of any of the Chapter 11 Cases of the Cuarzo Debtors or any Successor Cases for any of the Cuarzo Debtors. The Prepetition Adequate Protection Liens shall not be subject to sections 506(c) (subject to entry of a Final Order), 510, 549, 552(b) (subject to entry of a Final Order) or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Adequate Protection Liens.

13. Adequate Protection Superpriority Claims. As further adequate protection of the interests of the Cuarzo DIP Lender in the Cuarzo Prepetition Collateral against any Diminution in Value of its interests in such Cuarzo Prepetition Collateral, the Cuarzo DIP Lender is hereby granted an allowed superpriority administrative expense claim in each of the Chapter 11 Cases of the Cuarzo Debtors or any Successor Cases for any of the Cuarzo Debtors under sections 503 and 507(b) of the Bankruptcy Code (the "Prepetition Superpriority Claim"). The Prepetition

31

Superpriority Claim shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered an administrative expense allowed under section 503(b) of the Bankruptcy Code and shall be payable from all prepetition and postpetition property of the Cuarzo Debtors, other than the Avoidance Actions.

14. Priority of the Adequate Protection Superpriority Claims. Subject to paragraph 36 hereof, tThe Prepetition Superpriority Claim shall be subject to the Carve-Out as set forth in this Interim Order and shall otherwise be junior only to the DIP Superpriority Claims. The Prepetition Superpriority Claim shall have priority over all other administrative expense claims and unsecured claims against the Cuarzo Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code.

15. Adequate Protection Reservation. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Cuarzo DIP Lender hereunder is insufficient to compensate for any Diminution in Value of its respective interests in the Cuarzo Prepetition Collateral during the Chapter 11 Cases of the Cuarzo Debtors or any Successor Cases for any of the Cuarzo Debtors. The receipt by the Cuarzo DIP Lender of the adequate protection provided herein shall not be deemed an admission that its interests are adequately protected.

32

**Provisions Common to DIP Financing and use of Cash Collateral**

16.    <u>Amendment of the Cuarzo DIP Documents</u>. The Cuarzo DIP Documents may from time to time be amended, modified, or supplemented by the parties thereto without further order of the Court if the amendment, modification, or supplement is (a) non-material or non-adverse to the Cuarzo Debtors and (b) in accordance with the Cuarzo DIP Documents. In the case of a material amendment, modification, or supplement to the Cuarzo DIP Documents that is adverse to the Cuarzo Debtors' estates, the Cuarzo Debtors shall provide notice (which shall be provided through electronic mail) to counsel to a Committee (if appointed), the Debtors' thirty largest unsecured creditors (if no Committee) and the U.S. Trustee (collectively, the "<u>Notice Parties</u>"), each of whom shall have five (5) days from the date of such notice to object in writing to such amendment, modification or supplement. If all Notice Parties indicate that they have no objection to the amendment, modification or supplement (or if no objections are timely received), the Cuarzo Debtors may proceed to execute the amendment, modification or supplement, which shall become effective immediately upon execution. If a Notice Party timely objects to such amendment, modification or supplement, approval of the Court (which may be sought on an expedited basis) will be necessary to effectuate the amendment, modification or supplement; *provided* that such amendment, modification or supplement shall be without prejudice to the right of any party in interest to be heard. Any material modification, amendment or supplement that becomes effective in accordance with this paragraph 16 shall be filed with the Court.

17.     Budget. All borrowings under the Cuarzo DIP Facility and all use of Cuarzo Cash Collateral shall be in compliance with the budget attached as Schedule 1 to the DIP Loan Term Sheet, as the same may be modified from time to time by the consent of the Cuarzo DIP Lender and the Cuarzo Debtors (the "Budget"), subject to the following (the "Permitted Variance"): (a) the actual total cash receipts, determined on a cumulative rolling four-week basis, shall not be less than 90% of the projected total cumulative cash receipts as set forth in the approved Budget for the relevant period of determination, and (b) the actual total disbursements, determined on a cumulative rolling four-week basis, shall not be greater than 110% of the projected disbursements as set forth in the approved Budget for the relevant period of determination.  The Cuarzo Debtors shall not use any portion of the proceeds of the Cuarzo DIP Facility or any Cuarzo Cash Collateral, directly or indirectly, in excess of the Permitted Variance to the Budget.  Any amendment to the Budget shall be filed promptly with the Court, and no such Budget shall authorize any payments on account of any prepetition claim except in accordance with the Budget or as otherwise permitted or required by an order of this Court.[5]  With respect to the Allowed Professional Fees (as defined herein) incurred by Case Professionals (as defined herein), each Cash Professional shall use commercially reasonable efforts to record time entries, in accordance with the requirements of the Bankruptcy Code, in such a manner that will allow for the identification of whether services

---

[5]The Budget attached to this Interim Order as **Exhibit A-1** has been approved by and is satisfactory to the Cuarzo DIP Lender.

34

rendered were primarily in relation to the Maybrook and Consulate Debtors, the Cuarzo Debtors, or for general services applicable to all Debtors in the Chapter 11 Cases.  Services rendered: (i) by Case Professionals to and for the benefit of the Cuarzo Debtors shall be subject to the Budget; (ii) for the benefit of the Maybrook and Consulate Debtors shall be subject to the budget identified in the Maybrook and Consulate Interim DIP Order (the "Maybrook Budget"); and (iii) for general case administration for the benefit of all Debtors in these Chapter 11 Cases shall be allocated as follows: (y) four-thirteenths (4/13) shall be allocated to the Cuarzo Debtors and be subject to the Budget approved in this Interim DIP Order; and (z) nine-thirteenths (9/13) shall be allocated to the Maybrook and Consulate Debtors and be subject to the Maybrook Budget.

18.　Budget Compliance. The Cuarzo Debtors shall at all times comply with the Permitted Variance to the Budget. The first test to confirm whether the Cuarzo Debtors are within the Permitted Variance shall occur after the Interim DIP Order has been in place for four full weeks, and tests shall continue weekly thereafter, based on the Cuarzo Debtors' performance against Budget during the most recent four-week period. The Debtors shall provide a variance report to the Cuarzo DIP Lender by Friday of each week comparing the previous week's budget-to-actuals and shall provide backup information upon request. The Cuarzo Debtors shall provide all reports and other information as required in the Cuarzo DIP Credit Letter Agreement (subject to any grace periods provided therein). The Cuarzo Debtors' failure to comply with the Permitted Variance to the Budget or to provide the reports and other information required in the Cuarzo DIP

35

Letter Agreement shall constitute an Event of Default (as defined herein), following the expiration of any applicable grace period set forth in the Cuarzo DIP Credit Letter Agreement.

19. Modification of Automatic Stay. The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including to: (a) permit the Cuarzo Debtors to grant the Cuarzo DIP Liens, Prepetition Adequate Protection Liens, and the DIP Superpriority Claims; (b) permit the Cuarzo Debtors to perform such acts as the Cuarzo DIP Lender may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Cuarzo Debtors to incur all liabilities and obligations to the Cuarzo DIP Lender under the Cuarzo DIP Documents, the Cuarzo DIP Facility, and this Interim Order, as applicable; and (d) authorize the Cuarzo Debtors to pay, and the Cuarzo DIP Lender to retain and apply, payments made in accordance with the terms of this Interim Order and the Cuarzo DIP Documents.

20. Perfection of DIP Liens and Adequate Protection Liens. This Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the Cuarzo DIP Liens and the Prepetition Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or mortgage) to validate or perfect (in accordance with

36

applicable non-bankruptcy law) the Cuarzo DIP Liens and the Prepetition Adequate Protection Liens, or to evidence or entitle the Cuarzo DIP Lenders to the priorities granted herein. Notwithstanding the foregoing, the Cuarzo DIP Lender is authorized to file, in the applicable registries of deeds and other appropriate public records, as it in its sole discretion deems necessary or advisable, (i) notice of this Interim Order, and (ii) such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the Cuarzo DIP Liens and the Prepetition Adequate Protection Liens, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the Cuarzo DIP Liens or the Prepetition Adequate Protection Liens. The Debtors are authorized and directed to execute and deliver promptly upon demand to the Cuarzo DIP Lender all such financing statements, mortgages, notices, and other documents as the Cuarzo DIP Lender may reasonably request. The Cuarzo DIP Lender, in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument.

21.     <u>Protections of Rights of the Cuarzo DIP Lender</u>.

i.     Unless the Cuarzo DIP Lender shall have provided their prior written consent, or all Cuarzo DIP Obligations have been indefeasibly paid in full in cash and the lending commitments under the Cuarzo DIP Facility have terminated, there shall not be entered in any of the Chapter 11 Cases of the Cuarzo Debtors or any Successor Cases for any of the Cuarzo Debtors any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the Cuarzo DIP Collateral or the Cuarzo Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the Cuarzo DIP Liens, the DIP Superpriority Claims, the Cuarzo DIP Lender's prepetition liens, the Prepetition Adequate Protection Liens, and/or the Superpriority Claims; (ii) the use of Cuarzo Cash Collateral for any purpose other than as permitted in the Cuarzo DIP Documents and this Interim Order; or (iii) any modification of any of the Cuarzo DIP Lender's rights under this Interim Order or the Cuarzo DIP Documents or the Cuarzo Master Lease, as applicable, with respect any Cuarzo DIP Obligations or prepetition secured obligations owed to the Cuarzo DIP Lender.

ii.     Until the Cuarzo DIP Obligations have been indefeasibly paid in full in cash, the Cuarzo Debtors shall (i) maintain books, records, and accounts; (ii) reasonably

38

cooperate with, consult with, and provide to the Cuarzo DIP Lender all such information and documents that any or all of the Cuarzo Debtors are obligated to provide under the Cuarzo DIP Documents or the provisions of this Interim Order; (iii) upon reasonable advance notice, permit the Cuarzo DIP Lender and its non-legal advisors to visit and inspect any of the Cuarzo Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour upon reasonable advance notice and on commercially reasonable terms the Cuarzo Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors (other than legal counsel); and (iv) permit the Cuarzo DIP Lender and its non-legal and advisors to consult with the Cuarzo Debtors' management and advisors on matters concerning the Cuarzo Debtors' businesses, financial condition, operations, and assets.

22.     Credit Bidding. Subject to entry of the Final Order and subject to Section 363(k) of the Bankruptcy Code, in connection with  any sale process authorized by the Court, the Cuarzo DIP Lender (either directly or through an acquisition vehicle) may credit bid up to the full amount of the applicable outstanding Cuarzo DIP Obligations and/or the prepetition secured obligations owed under the Master Lease, in each case including any accrued and unpaid interest and expenses (each a "Credit Bid") in any sale of any Cuarzo DIP Collateral or Cuarzo Prepetition

Collateral, as applicable, whether such sale is effectuated through section 363 or section 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, subject to the provision of consideration sufficient to pay in full in cash any senior liens on the Cuarzo Prepetition Collateral that is subject to the Credit Bid. The Cuarzo DIP Lender shall be considered a "Qualified Bidder" with respect to its rights to acquire all or any of the assets by Credit Bid.

23.  <u>Proceeds of Subsequent Financing</u>. If the Cuarzo Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in the Chapter 11 Cases of the Cuarzo Debtors or any Successor Cases for any of the Cuarzo Debtors, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c), or 364(d) or in violation of the Cuarzo DIP Documents at any time prior to the indefeasible repayment in full in cash of all Cuarzo DIP Obligations and the termination of the Cuarzo DIP Lenders' obligation to extend credit under the Cuarzo DIP Facility, including subsequent to the confirmation of any plan with respect to any or all of the Cuarzo Debtors and the Cuarzo Debtors' estates, and such facilities are secured by any Cuarzo DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the Cuarzo DIP Lender to be applied to the Cuarzo DIP Obligations and following indefeasible payment in full in cash of the Cuarzo DIP Obligations and then for application against the prepetition secured obligations owed under the Master Lease.

40

24.     Cash Collection. Unless otherwise agreed to in writing by the Cuarzo DIP Lender, the Cuarzo Debtors shall maintain no accounts except those identified in any cash management order entered by the Court (a "Cash Management Order"). Following the occurrence and during the continuance of an Event of Default, the Cuarzo Debtors and the financial institutions where the Cuarzo Debtors' collection accounts are maintained (including those accounts identified in any Cash Management Order) are authorized and directed to remit, without offset or deduction, funds in such cash collection accounts upon receipt of any direction to that effect from the Cuarzo DIP Lender.

25.     Maintenance of DIP Collateral. Until the indefeasible payment in full in cash of all Cuarzo  DIP Obligations, all prepetition secured obligations under the Master Lease, and the termination of the Cuarzo DIP Lenders' obligation to extend credit under the Cuarzo DIP Facility, the Cuarzo Debtors shall: (a) insure the Cuarzo DIP Collateral as required under the Cuarzo DIP Facility or the Master Lease; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any Cash Management Order, or as otherwise required by the Cuarzo DIP Documents or this Interim Order.

26.     Disposition of Cuarzo DIP Collateral. Until the indefeasible payment in full in cash of all Cuarzo DIP Obligations and the prepetition secured obligations owed under the Master Lease, the Cuarzo Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Cuarzo DIP Collateral or Cuarzo Prepetition Collateral other than in the ordinary

41

course of business without the prior written consent of the Cuarzo DIP Lender, except as otherwise provided for in the Cuarzo DIP Documents or otherwise ordered by the Court.

27.     DIP Termination Date. On the DIP Termination Date: (a) all applicable Cuarzo DIP Obligations shall be immediately due and payable, all commitments to extend credit under the applicable Cuarzo DIP Facility will terminate, other than as required in paragraph 33 with respect to the Carve-Out; (b) all authority to use Cuarzo Cash Collateral shall cease, *provided, however*, that during the Remedies Notice Period (as defined herein), the Cuarzo Debtors continue to have authority to use Cash Collateral and the DIP Facility's already advanced proceeds in accordance with the terms of any pending order granting the DIP Motion, whether on an interim or final basis, solely to pay necessary expenses set forth in the Budget to avoid immediate and irreparable harm to the Debtors' estates or as otherwise agreed by the Cuarzo DIP Lender in its sole discretion; *provided further* that following delivery of the Carve-Out Trigger Notice (as defined herein), the Cuarzo Debtors shall be entitled to fund the Carve-Out in accordance with paragraph 33 of this Interim Order; and (c) upon the expiration of the Remedies Notice Period, the Cuarzo DIP Lender shall be entitled to exercise rights and remedies under the Cuarzo DIP Documents in accordance with this Interim Order. For the purposes of this Interim Order, "DIP Termination Date" shall mean the earliest of: (1) 135 days from the Petition Date; (2) conversion of the bankruptcy cases of the Cuarzo Debtors to ones under chapter 7 or dismissal of the case of

42

the Cuarzo Debtors; or (3) the expiration of the Remedies Notice Period after an uncured Event of Default.

28.    Events of Default. The occurrence of any of the following events, unless waived by the Cuarzo DIP Lender in writing shall constitute an event of default (an "Event of Default"): (a) Any order authorizing the Cuarzo Debtors to obtain the Cuarzo DIP Facility, whether on an interim or final basis, is not in a form satisfactory to the DIP Lender or is reversed, vacated, stayed, amended, supplemented, or otherwise modified in a manner which shall materially and adversely affect the rights of the Cuarzo DIP Lender; (b) the Cuarzo Debtors' Chapter 11 Cases are either dismissed or converted to cases under chapter 7 pursuant to a final order of the Bankruptcy Court, the effect of which has not been stayed; (c) a chapter 11 trustee is appointed such that the Debtors are no longer debtors-in-possession, pursuant to a final order of the Bankruptcy Court, the effect of which has not been stayed; (d) the Cuarzo Debtors fail to achieve any of the Milestones (the "Milestones") set forth in paragraph 29; (e) the Cuarzo Debtors fail to operate in accordance with the Budget (after taking into account Permitted Variances); or (f) the Cuarzo Debtors fail to make any required payment, including but not limited to failure of the Cuarzo Debtors to repay in full the Cuarzo DIP Facility at the Maturity Date.

29.    Case Milestones. The failure of the Debtors to comply with any of the Milestones shall (a) constitute an immediate Event of Default under the Cuarzo DIP Credit Letter Agreement and this Interim Order; (b) subject to the expiration of the Remedies Notice Period (as defined

43

below), result in the automatic termination of the Cuarzo Debtors' authority to use Cash Collateral under this Interim Order; and (c) permit the Cuarzo DIP Lender, subject to paragraph 33, to exercise the rights and remedies provided for in this Interim Order and the Cuarzo DIP Documents.

30.    Rights and Remedies Upon Event of Default. Upon the occurrence of an Event of Default, the DIP Lender shall give written notice of such Event of Default (the "Default Notice") to counsel for the Debtors, counsel to the Official Committee of Unsecured Creditors (if any), and to the Office of the United States Trustee (the "Notice Parties") (which notice shall be given by e-mail transmission, the automatic stay being deemed lifted for such purpose to the extent necessary). Upon the delivery of a Default Notice, the Debtors and the DIP Lender consent to a hearing on an expedited basis to consider whether: (i) an Event of Default has occurred; and (ii) any other appropriate relief or remedies on not less than five (5) business days' notice. During the five (5) business days following the date a Default Notice is delivered (such five (5) business day period before referred to as the "Remedies Notice Period"), the Debtors shall continue to have authority to use Cash Collateral and the DIP Facility's already advanced proceeds in accordance with the terms of any pending order authorizing granting the DIP Motion, whether on an interim or final basis, solely to pay necessary expenses set forth in the Budget to avoid immediate and irreparable harm to the Debtors' estates. At the end of the Remedies Notice Period, unless and until the Bankruptcy Court has entered an order to the contrary or as otherwise agreed between the Debtors and the DIP Lender, the Debtors' rights to use the DIP Facility or cash collateral shall

44

immediately cease and all cash collateral or proceeds of the DIP Facility shall be held pending further order of the Bankruptcy Court, except as necessary to fund the Carve Out. The automatic stay in the Chapter 11 Cases otherwise applicable to the Cuarzo DIP Lender is hereby modified to five (5) business days after the date a Default Notice is delivered (the "Remedies Notice Period"). During the Remedies Notice Period, the Cuarzo Debtors and/or a Committee (if appointed) shall be entitled to seek an emergency hearing within the Remedies Notice Period; *provided* that the sole issue that the Cuarzo Debtors may bring before the Court at any such emergency hearing is whether an Event of Default has occurred and/or is continuing, and the Cuarzo Debtors hereby waive their right to and shall not be entitled to seek relief, including under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the Cuarzo DIP Lender. Unless the Court orders otherwise, the automatic stay, as to the Cuarzo DIP Lender shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, the Cuarzo DIP Lender shall be permitted to exercise all remedies against the Cuarzo Debtors as set forth herein, in the Cuarzo DIP Documents or the Prepetition Secured Documents, as applicable, and as otherwise available at law without further order of or application or motion to the Court consistent with this paragraph of this Interim Order; provided however, that the Cuarzo DIP Lender shall not have any right to the Carve-Out. Upon the occurrence and during the continuation of an Event of Default and the expiration of the Remedies Notice Period, the Cuarzo DIP Lender and any liquidator or other

45

professional will have the right to access and utilize, on a royalty-free basis, any trade names, trademarks, copyrights or other intellectual property to the extent necessary or appropriate in order to sell, lease or otherwise dispose of any of the Cuarzo DIP Collateral, including pursuant to any Court approved sale process.

31.     Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order. The Cuarzo DIP Lender has acted in good faith in connection with this Interim Order and is entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter reargued, reconsidered, reversed, modified, amended, or vacated by a subsequent order of this Court or any other court, the Cuarzo DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code to the maximum extent set forth therein.  Any such modification, amendment or vacatur shall not affect the extent, validity, perfection, priority, allowability, enforceability or non-avoidability of any advances previously made or made hereunder, or lien, claim or priority granted, perfected, authorized or created hereby, unless such modification, amendment or vacatur pertains to an authorization to obtain credit or incur debt, or to the granting of a priority or lien, that is stayed pending appeal. Any liens or claims granted to the Cuarzo DIP Lender hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be

46

governed in all respects by the original provisions of this Interim Order, including to all rights, remedies, privileges and benefits granted herein.

32.     <u>DIP and Other Expenses</u>. The Cuarzo Debtors are authorized and directed to pay (a) all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses due and outstanding as of the Petition Date of the Cuarzo DIP Lender related to the Cuarzo DIP Facility and the bankruptcy cases. Payment of all such fees and expenses shall not be subject to allowance by the Court. Professionals for the Cuarzo DIP Lender shall not be required to submit invoices in any particular format, however any time that such professionals seek payment of fees and expenses from the Cuarzo Debtors, each professional shall provide copies of its invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee and counsel for a Committee (if appointed) contemporaneously with the delivery of such fee and expense statements to the Cuarzo Debtors. Any objections raised by the Cuarzo Debtors, the U.S. Trustee or a Committee (if appointed) with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) days of the receipt of such invoice; if after ten (10) days such objection remains unresolved, it will be subject to resolution by the

47

Court. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Cuarzo Debtors. Notwithstanding the foregoing, the Cuarzo Debtors are authorized and directed to pay on the Effective Date (as defined in the Cuarzo DIP Credit Letter Agreement) all reasonable and documented fees, costs, and out-of-pocket expenses of the Cuarzo DIP Lender related to the Cuarzo DIP Facility incurred on or prior to such date without the need for any professional engaged by the Cuarzo DIP Lender to first deliver a copy of its invoice to any other party as provided for herein. No attorney or advisor to the Cuarzo DIP Lender shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

33.     Carve-Out.

i.      As used in this Interim Order, the "Carve-Out" means, after delivery of a written notice, delivered by email or U.S. Mail by the DIP Lender to the Cuarzo Debtors, their counsel, the U.S. Trustee, and counsel to any committees, or any default under the DIP Loan or of the occurrence of the Maturity Date (the "Carve-Out Trigger Notice"), the sum of the following amounts as of the earlier of (a) the day the Cuarzo DIP Lender issues a Carve-Out Trigger Notice, or (b) the Maturity Date: (i) all unpaid professional fees and disbursements incurred by the Cuarzo Debtors and any statutory committees appointed in the Chapter 11 Cases pursuant to sections 327 and 1103 of the Bankruptcy Code for any of their respective professionals retained by final order of the Court, which order has not been reversed, vacated or stayed, unless such stay has been vacated (the "Case

48

Professionals") at any time prior to the delivery of the Carve Out Trigger Notice to the extent allowed by this Court (the "Allowed Professional Fees"), in an aggregate amount not to exceed the amounts set forth in the Budget for Professional Fees prior to the delivery of a Carve Out Trigger Notice; and (ii) the payment of allowed and unpaid professional fees and disbursements incurred by the Case Professionals following the delivery of the Carve Out Trigger Notice in an aggregate amount not in excess of $120,000 (the "Wind-Down Carve Out Amount"), plus (iii) the payment of fees pursuant to 28 U.S.C. § 1930(a) and any fees required to be paid to the Clerk of the Court for the Cuarzo Debtors for the time period beginning on the petition date and ending on the Carve-Out Effective Date, which fees shall not be limited to amounts that may be set forth in the Budget.

ii.     Notwithstanding the foregoing, so long as no Carve-Out Trigger Notice has been issued by the DIP Lender, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code but solely to the extent the same are reflected as estimated professional fees and disbursements in the most recent Budget approved by the Cuarzo DIP Lender prior to the delivery of a Carve-Out Trigger Notice, as the same may be due and payable and otherwise allowed and payable by order of the Court, and the same shall not reduce the Wind-Down Carve-Out Amount. The Carve-Out shall not be deemed increased if actual fees of Case Professionals are higher in fact than the estimates provided on the Budget. No

49

portion of the Carve-Out may be used in contravention of the restrictions or the limitations on the use of the Carve-Out set forth in this Interim Order.

   iii.  *No Direct Obligation to Pay Professional Fees*. The Cuarzo DIP Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the Cuarzo DIP Lender in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Cuarzo Debtors have sufficient funds to pay such compensation or reimbursement.

   iv.  *Payment of Carve-Out After Carve-Out Trigger Notice*. Any payment or reimbursement made for services rendered on or after the delivery date of the Carve-Out Trigger Notice in respect of any Allowed Professional Fees shall permanently reduce the Wind-Down Carve-Out Amount on a dollar-for-dollar basis. Any funding of the Carve-Out shall be added to and made a part of the Cuarzo DIP Obligations and secured by the Cuarzo DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the Cuarzo DIP Documents, the Bankruptcy Code and applicable law.

34. Limitations on Use of DIP Proceeds, Cuarzo Cash Collateral, and Carve-Out. The Cuarzo DIP Facility, the Cuarzo DIP Collateral, the Cuarzo Prepetition Collateral, the Cuarzo Cash Collateral and the Carve-Out may not be used in connection with: (a) except to contest the

occurrence of an Event of Default, preventing, hindering, or delaying the Cuarzo DIP Lender's enforcement or realization upon any of the Cuarzo DIP Collateral or Cuarzo Prepetition Collateral; (b) using or seeking to use Cuarzo Cash Collateral except as provided for in this Interim Order and the Cuarzo DIP Documents; (c) except as permitted in the Cuarzo DIP Documents, selling or otherwise disposing of Cuarzo DIP Collateral without the consent of the Cuarzo DIP Lender; (d) except as permitted in the Cuarzo DIP Documents, using or seeking to use any insurance proceeds constituting Cuarzo DIP Collateral without the consent of the Cuarzo DIP Lender; (e) except as permitted in the Cuarzo DIP Documents, incurring any indebtedness without the prior consent of the Cuarzo DIP Lender; (f) seeking to amend or modify any of the rights granted to the Cuarzo DIP Lender under this Interim Order, the Cuarzo DIP Documents, or the Master Lease, including seeking to use Cuarzo Cash Collateral and/or Cuarzo DIP Collateral on a contested basis; (g) objecting to or challenging in any way the Cuarzo DIP Liens, the Cuarzo  DIP Obligations, the prepetition secured liens arising under the Master Lease, the Cuarzo DIP Collateral (including Cuarzo Cash Collateral) or, as the case may be, Cuarzo Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the Cuarzo DIP Lender; (h) asserting, commencing, or prosecuting any claims or causes of action whatsoever, including any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against the Cuarzo DIP Lender or any of its affiliates, or their respective agents, attorneys, advisors, professionals, officers, directors, and employees; (i) litigating, objecting to,

51

challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Cuarzo DIP Obligations, the Cuarzo DIP Liens, the prepetition secured liens and obligations arising under the Master Lease; or (j) seeking to subordinate, recharacterize, disallow or avoid the Cuarzo DIP Obligations or the obligations of the Cuarzo Debtors arising under the Master Lease; *provided, however*, that the Carve-Out and such collateral proceeds and loans under the Cuarzo DIP Documents may be used for allowed fees and expenses, in an amount not to exceed, subject to the Final Order, $25,000 in the aggregate (the "Investigation Budget Cap"), incurred solely by a Committee (if appointed), in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the prepetition liens and the prepetition obligations asserted by the Cuarzo DIP Lender, in accordance with paragraph 36 of this Interim Order.

35.    Payment of Compensation. Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses or shall affect the right of the Cuarzo DIP Lender to object to the allowance and payment of such fees and expenses. The Cuarzo Debtors shall be permitted to pay fees and expenses allowed and payable by final order (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, in accordance with the terms of this Interim Order.

36.    Effect of Stipulations on Third Parties.

i.    *Generally*. The admissions, stipulations, agreements, releases, and waivers set forth in this Interim Order, including without limitation paragraph F (collectively, the "Prepetition Lien and Claim Stipulations") are and shall be binding on the Cuarzo Debtors. In addition, the Prepetition Lien and Claim Stipulations shall be binding on any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including a Committee (if appointed), unless, and solely to the extent that, a party in interest with standing and requisite authority (other than the Cuarzo Debtors, as to which any Challenge (as defined below) is irrevocably waived and relinquished) (i) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 36) challenging the Prepetition Lien and Claim Stipulations (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") by no later than (a) 60 days from the date of formation of a Committee (if appointed), or (b) 75 days following the entry of the Interim Order for any other party-in-interest with requisite standing (the "Challenge Deadline"), as such applicable date may be extended in writing from time to time in the sole discretion of the Cuarzo DIP Lender, or

53

by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline; *provided* that if a chapter 11 trustee is appointed or the Chapter 11 Cases are converted to chapter 7 prior to the expiration of the Challenge Deadline, the chapter 11 trustee or chapter 7 trustee, as applicable, shall have until the later of (1) the Challenge Deadline or (2) the tenth (10th) day after the appointment of the chapter 11 trustee or the conversion of the Chapter 11 Cases for the Cuarzo Debtors to chapter 7, as applicable, to commence a Challenge, subject to any further extension by order of the Court; and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.

ii. *Binding Effect*. To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Stipulations, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Stipulations shall, pursuant to this Interim Order, become binding, conclusive, and final on any person, entity, or party in interest in the Chapter 11 Cases of the Cuarzo Debtors, and their successors and assigns, and in any Successor Case for the Cuarzo Debtors for all purposes and shall not be subject

54

to challenge or objection by any party in interest, including a trustee, responsible individual, examiner with expanded powers, or other representative of the Cuarzo Debtors' estates. Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Stipulations shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above except to the extent that any of such Prepetition Lien and Claim Stipulations is expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (a) above. To the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Secured Parties shall be entitled to payment of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred under the Prepetition Secured Documents in defending themselves in any such proceeding as adequate protection.

37.     Indemnification. The Cuarzo Debtors shall indemnify and hold harmless the Cuarzo DIP Lender each of their respective shareholders, directors, members, managers, principals, agents, advisors, officers, subsidiaries and affiliates in such capacity (each, an "Indemnified Person") from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an Indemnified Person by reason of or

55

resulting from the Cuarzo DIP Facility, the transactions contemplated thereby or hereby, or any claim, action, litigation, investigation or proceeding relating to any of the foregoing, whether or not any of such Indemnified Person is a party thereto and whether or not brought by the Borrowers or any other person or entity, except to the extent resulting from the fraud, gross negligence or willful misconduct of such Indemnified Person, as determined by a final non-appealable order of a court of competent jurisdiction.

38.     No Third-Party Rights. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

39.     Section 506(c) Claims. Subject to entry of a Final Order, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases at any time shall be charged against the Cuarzo DIP Lender or any of its respective claims, the Cuarzo DIP Collateral, or the Cuarzo Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the Cuarzo DIP Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the Cuarzo DIP Lender.

40.     No Marshaling/Applications of Proceeds. Subject to entry of a Final Order, the Cuarzo DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Cuarzo DIP Collateral or the Cuarzo Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Interim

56

Order and the Cuarzo DIP Documents notwithstanding any other agreement or provision to the contrary.

41.    Section 552(b). Subject to entry of a Final Order, the Cuarzo DIP Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Cuarzo DIP Lender with respect to proceeds, product, offspring or profits of any of the Cuarzo Prepetition Collateral.

42.    Limits on Lender Liability. Nothing in this Interim Order, any of the Cuarzo DIP Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Cuarzo DIP Lender of any liability for any claims arising from any activities by the Cuarzo Debtors in the operation of their businesses or in connection with the administration of these Chapter 11 Cases. The Cuarzo DIP Lender shall not, solely by reason of having made loans under the Cuarzo DIP Facility, be deemed in control of the operations of the Cuarzo Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Cuarzo Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute). Nothing in this Interim Order or the Cuarzo DIP Documents, shall in any way be construed or interpreted to impose or allow the imposition upon the Cuarzo DIP Lender of any liability for any claims arising

57

from the prepetition or postpetition activities of any of the Cuarzo Debtors. The Cuarzo DIP Lender is not a control person or insider of the Cuarzo Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Cuarzo DIP Facility, the Cuarzo DIP Documents, and/or the Master Lease.

43.   Insurance Proceeds and Policies. Upon entry of this Interim Order and to the fullest extent provided by applicable law, the Cuarzo DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insured and lender loss payee on each insurance policy maintained by the Cuarzo Debtors that in any way relates to the Cuarzo DIP Collateral.

44.   Joint and Several Liability. Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Cuarzo Debtors shall be jointly and severally liable for the obligations hereunder and all Cuarzo  DIP Obligations in accordance with the terms hereof and of the Cuarzo DIP Facility and the Cuarzo DIP Documents.

45.   Rights Preserved. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, subject to the Cuarzo DIP Documents, the Master Lease, as applicable: (a) the Cuarzo DIP Lender's right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the Cuarzo DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including the

58

right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of the Cuarzo DIP Lender. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', a Committee's (if appointed), or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Interim Order. Entry of this Interim Order is without prejudice to any and all rights of any party in interest with respect to the terms and approval of the Final Order.

46.     No Waiver by Failure to Seek Relief. The failure of the Cuarzo DIP Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order, the Cuarzo DIP Documents, the Master Lease or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Cuarzo DIP Lender, a Committee (if appointed), or any party in interest.

47.     Binding Effect of Interim Order. Immediately upon entry by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Cuarzo Debtors, the Cuarzo DIP Lender, all other creditors of any of the Debtors, any

59

Committee (or any other court appointed committee) appointed in the Chapter 11 Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases of the Cuarzo Debtors, any Successor Cases of the Cuarzo Debtors, or upon dismissal of any Case or Successor Case.

48.    No Modification of Interim Order. Until and unless the Cuarzo  DIP Obligations have been indefeasibly paid in full in cash, and all commitments to extend credit under the Cuarzo DIP Facility have been terminated, the Cuarzo Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the Cuarzo DIP Lender, (i) any modification, stay, vacatur or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Cuarzo Debtors (now existing or hereafter arising of any kind or nature whatsoever, including any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases of the Cuarzo Debtors or Successor Cases of the Cuarzo Debtors, equal or superior to the DIP Superpriority Claims or junior Prepetition Superpriority Claim, other than the Carve-Out; (b) without the prior written consent of the Cuarzo DIP Lender for any order allowing use of Cuarzo Cash Collateral (other than as permitted during the Remedies Notice Period) resulting from Cuarzo DIP Collateral or Cuarzo Prepetition Collateral; (c) without the prior written consent of the Cuarzo DIP Lender, any lien on any of the Cuarzo DIP Collateral with priority equal or superior to the Cuarzo DIP Liens, except as specifically provided in the Cuarzo

60

DIP Documents; or (d) without the prior written consent of the Cuarzo DIP Lender, any lien on any of the Cuarzo DIP Collateral with priority equal or superior to the prepetition secured liens arising under the Master Lease (other than the Cuarzo DIP Liens). The Cuarzo Debtors irrevocably waive any right to seek any amendment, modification or extension of this Interim Order without the prior written consent, as provided in the foregoing, of the Cuarzo DIP Lender, and no such consent shall be implied by any other action, inaction or acquiescence of the Cuarzo DIP Lender.

49.     Interim Order Controls. In the event of any inconsistency between the terms and conditions of the Cuarzo DIP Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

50.     Discharge. The Cuarzo  DIP Obligations and, and subject to paragraph 36 herein, the obligations of the Cuarzo Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted), on or before the effective date of such confirmed plan of reorganization, unless each of the Cuarzo DIP Lender has otherwise agreed in writing.

51.     Survival. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization

61

in any of the Chapter 11 Cases of the Cuarzo Debtors; (b) converting any of the Chapter 11 Cases of the Cuarzo Debtors to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases of the Cuarzo Debtors or any Successor Cases of the Cuarzo Debtors; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases of the Cuarzo Debtors or Successor Cases of the Cuarzo Debtors. The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections granted to the Cuarzo DIP Lender granted pursuant to this Interim Order and/or the Cuarzo DIP Documents, notwithstanding the entry of any such orders described in (a)-(d), above, shall continue in the Chapter 11 Cases of the Cuarzo Debtors, in any Successor Cases of the Cuarzo Debtors, or following dismissal of the Chapter 11 Cases of the Cuarzo Debtors or any Successor Cases of the Cuarzo Debtors, and shall maintain their priority as provided by this Interim Order until, in respect of the Cuarzo DIP Facility, all the Cuarzo  DIP Obligations, pursuant to the Cuarzo DIP Documents and this Interim Order, have been indefeasibly paid in full in cash, and all commitments to extend credit under the Cuarzo DIP Facility are terminated.

52.    Final Hearing. The Final Hearing to consider entry of the Final Order and final approval of the Cuarzo DIP Facility is scheduled for **[], 2024, at [].M. (Prevailing Eastern time)** before the Honorable [], United States Bankruptcy Judge at the United States Bankruptcy Court for the Western District of Pennsylvania. On or before [], 2024, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final

62

Hearing (the "Final Hearing Notice"), together with copies of this Interim Order and the Cuarzo

DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) counsel for a

Committee (if appointed); and (c) any party which has filed prior to such date a request for notices

with this Court. The Final Hearing Notice shall state that any party in interest objecting to the entry

of the proposed Final Order shall file written objections with the Clerk of the Court no later than

on _____ (Prevailing Eastern time), which objections shall be served so as to be received on

or before such date by: (i) counsel to the Debtors, Bass, Berry & Sims, PLC, 150 Third Ave. S.,

Suite 2800, Nashville, Tennessee 37201, Attn: Glenn B. Rose (grose@bassberry.com); (ii) local

counsel to the Debtors, Whiteford, Taylor & Preston, L.L.P., 11 Stanwix St., Suite 1400,

Pittsburgh, Pennsylvania 15222, Attn: Daniel R. Schimizzi (dschimizzi@wtplaw.com); (iii)

counsel for the Cuarzo DIP Lender, Elizabeth A. Green and Andrew Layden, BakerHostetler, 200

South Orange Avenue, Suite 2300, Orlando, FL 32801; egreen@bakerlaw.com;

alayden@bakerlaw.com; (iv) counsel to the Committee (if appointed); and (iv) the U.S. Trustee.

53.     Retroactive Effect of this Interim Order. This Interim Order shall constitute

findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect

and be enforceable retroactive to the Petition Date immediately upon execution thereof.

54.     Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce the

terms of, any and all matters arising from or related to the Cuarzo DIP Facility, and/or this Interim

Order.

Prepared by:
/s/ *Daniel R. Schimizzi*
Daniel R. Schimizzi
Proposed Local Counsel to the Debtors


BY THE COURT:

Date: _____, 2024          _____
     Pittsburgh, PA                              Hon. Carlota M. Bohm
                       United States Bankruptcy Court

64

**Exhibit A**

**DIP FACILITY TERM SHEET[1]**

This DIP Facility Term Sheet describes the terms and conditions of the proposed DIP Facility.  This DIP Facility Term Sheet is incorporated into the Letter Agreement.

| | |
|---|---|
| **Facility Structure** | Senior secured super-priority debtor-in-possession loan facility (the "DIP Facility") in the Chapter 11 Cases, in the aggregate principal amount of up to $2,870,000 (the "New Money DIP Loan") and an equivalent amount in roll-up financing, under which each dollar of New Money DIP Loan provided to the Debtors shall be deemed to convert, upon entry of the final DIP order, one additional dollar of Cuarzo DIP Lender pre-petition secured debt to the Cuarzo DIP Facility loan balance (the "Roll-Up DIP Loan" and together with the New Money DIP Loan, the "DIP Loan"). No funds under the DIP Loan shall be available until entry of an order by the Bankruptcy Court granting approval of the DIP Motion, *provided that* the form and substance of the Order must be acceptable to the DIP Lender in its sole discretion (the "DIP Order"). After entry of the interim or final DIP Order, the DIP Loan proceeds shall be available to the Debtors within three (3) business days after Debtors submits a draw request  stating (i) that  the "Conditions Precedent" set forth below shall have been satisfied or waived by DIP Lender, (ii) there is no default or Event of Default under the DIP Documentation (defined below), and (iii) that the Debtors are operating in accordance with the Budget; provided however, that the DIP Lender and the Debtors will work together to coordinate an immediate draw on the DIP Loan immediately after entry of the interim DIP Order. |
| **Borrower** | Monroeville Operations LLC; Murrysville Operations LLC; Mt. Lebanon Operations LLC; and South Hills Operations LLC, which shall all be jointly and severally liable to the DIP Lender for all obligations hereunder (the "Debtors" or "Borrowers"). |
| **DIP Lender** | GPH Canonsburg LP; GPH Monroeville LP; GPH Murrysville LP; GPH Mt. Lebanon LP or any one of the foregoing or any affiliate thereof that funds any portion of the DIP Loan (the "DIP Lender"). |
| **Use of Cash Collateral** | In addition to the DIP Loan proceeds, the Borrowers will have the first right to use of cash collateral, until the earlier of the Carve-Out Effective Date or Maturity Date, in accordance with the Budget. |
| **Maturity Date** | The DIP Facility shall mature and be payable in full on the "Maturity Date," which shall mean the earliest of the following dates (unless |

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Letter Agreement.

| | |
|---|---|
| | extended by the Debtors and Cuarzo DIP Lender): |
| | 1) 135 days from the petition date; |
| | 2) acceleration of the DIP loans upon or following an Event of Default; or |
| | 3) conversion of the chapter 11 cases to one under chapter 7 or dismissal of the chapter 11 cases. |
| **Carve-Out** | The sum of the following amounts as of the earlier of (a) the day the Cuarzo DIP Lender issues a of Carve-Out Trigger Notice, or (b) the Maturity Date, ("Carve-Out Effective Date"): (i) all unpaid professional fees and disbursements incurred by the Cuarzo Debtors and any statutory committees appointed in the Chapter 11 Cases pursuant to sections 327 and 1103 of the Bankruptcy Code for any of their respective professionals retained by final order of the Court, which order has not been reversed, vacated or stayed, unless such stay has been vacated (the "Case Professionals") at any time prior to the delivery of the Carve Out Trigger Notice to the extent allowed by this Court (the "Allowed Professional Fees"), in an aggregate amount not to exceed the amounts set forth in the Budget for Professional Fees prior to the delivery of a Carve Out Trigger Notice; and (ii) the payment of allowed and unpaid professional fees and disbursements incurred by the Case Professionals following the delivery of the Carve Out Trigger Notice in an aggregate amount not in excess of $120,000 (the "Wind-Down Carve Out Amount"), plus (iii) the payment of fees pursuant to 28 U.S.C. § 1930(a) and any fees required to be paid to the Clerk of the Court for the Cuarzo Debtors for the time period beginning on the petition date and ending on the Carve-Out Effective Date, which fees shall not be limited to amounts that may be set forth in the Budget. "Carve Out Trigger Notice" means a written notice, delivered by email or U.S. Mail by the DIP Lender to the Debtors, their counsel, the U.S. Trustee, and counsel to any committees, of any default hereunder or of the occurrence of the Maturity Date. Notwithstanding any other provision herein, the Carve-Out and Wind-Down Carve Out shall not include, apply to, or be available for any fees or expenses incurred by any party in connection with the investigation, initiation, or prosecution of any claims, causes of action, adversary proceedings, or other litigation against GPH Canonsburg LP, GPH Monroeville LP, GPH Murrysville LP, GPH Mt. Lebanon LP, the DIP Lender, or any affiliates of any of the foregoing entities, or any of their respective officers, directors, employees, agents, advisors, and counsel, including but not limited to challenging the amount, validity, perfection, priority, or enforceability of or asserting any defense, counterclaim or offset to, the obligations and liens and security interests in favor of GPH Canonsburg LP, GPH |

2

| | |
|---|---|
| | Monroeville LP, GPH Murrysville LP, GPH Mt. Lebanon LP, or the DIP Lender. |
| **Interest Rate** | A per annum rate equal to 12%, which shall be calculated on the basis of the actual days elapsed in a year of 360 days from the Closing date to the Maturity Date.  Upon an event of default or if the DIP Facility is not paid in full at the Maturity Date, interest shall continue to accrue at 18% thereafter.  A per annum rate equal to 1% shall accrue beginning upon entry of the DIP Order on all undrawn amounts (i.e. $2.87M in availability less the currently outstanding drawn amount). |
| **Fees** | $28,700 loan fee (the "Loan Fee"), payable to the DIP Lender upon the entry of the DIP Order. |
| **Use of Proceeds** | The proceeds of the DIP Facility and Cash Collateral shall be used in accordance with the Budget. |
| **Acknowledgment of DIP Lender's Pre-Petition First Priority Perfected Liens** | The Debtors acknowledge that (i) they are each in material default of the Master Lease; and (ii) pursuant to the Master Lease and the recorded UCC financing statements, the DIP Lenders have valid and perfected first priority liens on all of the Debtors assets to secure repayment of amounts owed under the Master Lease, and the Debtors shall not challenge or use any of the DIP Facility proceeds to challenge, the DIP Lender's pre-petition liens, except as set forth in the DIP Orders. |
| **Security and Priority of Second DIP Facility** | The claims of the DIP Lender in the Debtors' Chapter 11 cases in respect of the DIP Facility shall at all times: <br><br> 1)  pursuant to Section 364(c)(1) of title 11 of the United States Code (the "Bankruptcy Code"), constitute allowed senior secured super-priority administrative expense claim status in each of the Debtors' Chapter 11 cases, having priority over all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy and any and all expenses and claims of the Debtors, including but not limited to the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, 1114, and any other provision of the Bankruptcy Code or otherwise (the "Super-Priority DIP Claim"); and <br><br> 2)  pursuant to Section 364(c)(2) of the Bankruptcy Code, be secured by a automatically perfected first priority security interest in and lien on all assets belonging to the Debtors (the "DIP Collateral"). No lien on avoidance actions. |
| **Retention of Third Party to Collect Pre-Closing** | On or before 30 days after the Petition Date, the Debtors shall retain CP Corridor AHC LLC, or another entity approved by the DIP Lender in its |

3

| | |
|---|---|
| **Receivables** | sole discretion, to collect all amounts owed to the Debtors through the Transaction closing date. |
| **Documentation** | The Letter Agreement, this DIP Facility Term Sheet and the DIP Order shall constitute the definitive DIP documents (the "DIP Documentation"). The DIP Documentation shall conform to this DIP Facility Term Sheet and otherwise shall be in form and substance reasonably acceptable to the Parties. |
| **Representations & Warranties** | The Debtors hereby represent and warrant that:<br><br>1) The DIP Motion and DIP Order shall be consistent with this DIP Facility Term Sheet and in all other respects in form and substance reasonably satisfactory to the DIP Lender;<br><br>2) The execution and delivery of all agreements, instruments, and other documents evidencing or securing the DIP Facility consistent with this DIP Facility Term Sheet and in all other respects in form and substance reasonably satisfactory to the DIP Lender; and<br><br>3) All necessary governmental, shareholder, and third-party approvals and/or consents have been obtained by the Debtors and remain in effect. |
| **Conditions Precedent to Closing** | The obligation of the DIP Lender to fund the DIP Loan shall be subject to the condition precedent that on the date of such release, the following statements shall be true:<br><br>1) The DIP Documentation shall be in form and substance reasonably satisfactory to the DIP Lender;<br><br>2) The Bankruptcy Court has entered the DIP Order, in form and substance acceptable to the DIP Lender, authorizing the Debtors to enter the DIP Facility, and such DIP Order has not been otherwise stayed or reversed;<br><br>3) The DIP Lender shall have received and shall have approved the Budget;<br><br>4) No Event of Default (defined below) shall have occurred prior to entry of, or after giving effect to, the DIP Order;<br><br>5) The DIP Order provides that the DIP Lender has at all times acted in good faith and is entitled to the protections of Section 364(e) of the Bankruptcy Code; |

4

|  |  |
|---|---|
|  | 6)     Upon the entry of the DIP Order, the DIP Lender shall have as collateral the Super-Priority DIP Claim and valid and perfected liens on the DIP Collateral; and<br><br>7)     The Loan Fee shall have been paid to the DIP Lender.<br><br>Subject to the foregoing conditions being satisfied, the DIP Lender shall release funds to the Debtors under the terms set forth herein. For the avoidance of doubt, the DIP Lender may waive any of the conditions precedent at any time via a signed writing. |
| **DIP Budget** | The use of cash collateral and proceeds from the DIP Facility shall be subject to the Budget attached hereto as Schedule I subject to the following (the "Permitted Variance"): (a) the actual total cash receipts, determined on a cumulative rolling four-week basis, shall not be less than 90% of the projected total cumulative cash receipts as set forth in the approved Budget for the relevant period of determination, and (b) the actual total disbursements, determined on a cumulative rolling four-week basis, shall not be greater than 110% of the projected disbursements as set forth in the approved Budget for the relevant period of determination.  The first test to confirm whether the Cuarzo Debtors are within the Permitted Variance shall occur after the Interim DIP Order has been in place for four full weeks, and tests shall continue weekly thereafter, based on the Cuarzo Debtors' performance against Budget during the most recent four-week period. Any modifications to the Budget must be approved by the DIP Lender in its sole and absolute discretion. Beginning on the Petition Date, the Debtors shall provide a variance report to the DIP Lender by Friday of each week comparing the previous week's budget-to-actuals and shall provide backup information upon request. |
| **Budget Covenants** | The Debtors shall be obligated to comply with Budget, subject to the Permitted Variance. The Debtors' failure to comply with this requirement shall constitute an immediate Event of Default |
| **Mandatory Prepayment** | Upon the occurrence of an Event of Default or the Maturity Date, the Debtors shall repay to the DIP Lender the aggregate outstanding principal amount under the DIP Facility and all accrued but unpaid interest thereon (collectively, the "DIP Facility Obligations").  The Debtors may prepay without penalty all or any portion of the DIP Facility. |
| **Events of Default** | The following shall be events of default (collectively "Events of Default" and each individually an "Event of Default"): |

5

4869-7117-5615.1

1) The Debtors fail to operate in accordance with the Budget (after taking into account Permitted Variances) or any reporting requirement;

2) The Debtors fail to make any required payment, including but not limited to the payment of the full balance of the Cuarzo DIP Facility upon default or at the Maturity Date;

3) Any order authorizing the Debtors to obtain the DIP Facility, whether on an interim or final basis, is not in a form satisfactory to the DIP Lender or is reversed, vacated, stayed, amended, supplemented, or otherwise modified in a manner which shall materially and adversely affect the rights of the DIP Lender;

4) The Debtors' Chapter 11 Cases are either dismissed or converted to cases under chapter 7 pursuant to a final order of the Bankruptcy Court, the effect of which has not been stayed;

5) A chapter 11 trustee is appointed such that the Debtors are no longer debtors-in-possession, pursuant to a final order of the Bankruptcy Court, the effect of which has not been stayed; or

6) The Debtors fail to achieve any of the Milestones (the "Milestones") set forth below, unless extended by written consent of the DIP Lender:

    a. On or before 5 days after the Petition Date, the Debtors shall file the emergency motion to authorize the OTA transactions and such motion shall be in form and substance satisfactory to the DIP Lender.

    b. On or before 30 days after the Petition Date, (i) the Bankruptcy Court shall approve the motion to authorize the OTA transactions pursuant to an order in form and substance satisfactory to the DIP Lender, which order shall include findings that the New Operator shall have no successor liability for any of the Debtors' debts, including bed taxes, DOJ claims, or DOL claims, and except for expressly assumed executory contracts, and (ii) to the extent necessary to be effective, on the before 30 days after the Petition Date, the Bankruptcy Court shall have approved the retention of the third party to collect receivables and the parties shall be acting in accordance with such retention; and

6

| | |
|---|---|
| | c.   On or before 45 days after the Petition Date, the closing under the OTA shall have occurred. |
| **Remedies** | Upon the occurrence of an Event of Default, the DIP Lender shall give written notice of such Event of Default (the "<u>Default Notice</u>") to counsel for the Debtors, counsel to the Official Committee of Unsecured Creditors (if any), and to the Office of the United States Trustee (the "<u>Notice Parties</u>") (which notice shall be given by e-mail transmission, the automatic stay being deemed lifted for such purpose to the extent necessary). Upon the delivery of a Default Notice, the Debtors and the DIP Lender consent to a hearing on an expedited basis to consider whether: (i) an Event of Default has occurred; and (ii) any other appropriate relief or remedies on not less than five (5) business days' notice. During the five (5) business days following the date a Default Notice is delivered (such five (5) business day period before referred to as the "<u>Remedies Notice Period</u>"), the Debtors shall continue to have authority to use Cash Collateral and the DIP Facility's already advanced proceeds in accordance with the terms of any pending order authorizing granting the DIP Motion, whether on an interim or final basis, solely to pay necessary expenses set forth in the Budget to avoid immediate and irreparable harm to the Debtors' estates.<br><br>At the end of the Remedies Notice Period, unless and until the Bankruptcy Court has entered an order to the contrary or as otherwise agreed between the Debtors and the DIP Lender, the Debtors' rights to use the DIP Facility or cash collateral shall immediately cease and all cash collateral or proceeds of the DIP Facility shall be held pending further order of the Bankruptcy Court, except as necessary to fund the Carve Out. |
| **Indemnity** | The Debtors agree to indemnify and hold harmless the DIP Lender, and each of its respective shareholders, directors, members, managers, principals, agents, advisors, officers, subsidiaries and affiliates in such capacity (each, an "<u>Indemnified Person</u>") from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an Indemnified Person by reason of or resulting from the DIP Facility, the transactions contemplated thereby or hereby, or any claim, action, litigation, investigation or proceeding relating to any of the foregoing, whether or not any of such Indemnified Person is a party thereto and whether or not brought by the Borrowers or any other person or entity, except to the extent resulting from the fraud, gross negligence or willful misconduct of such Indemnified Person as determined by a final non-appealable order of a court of competent jurisdiction. |
| **Amendment and** | No waiver, modification, or amendment of the terms of this DIP Facility Term Sheet shall be valid unless such waiver, modification, or |

7

| | |
|---|---|
| **Waiver** | amendment is in writing and has been signed by the Debtors and the DIP Lender. No waiver of any of the provisions of this DIP Facility Term Sheet shall be deemed or constitute a waiver of any other provisions of this DIP Facility Term Sheet, whether or not similar, nor shall any waiver be deemed a continuing waiver. |
| **Other Terms** | *Adequate Protection.* No adequate protection shall be provided to any prepetition creditor, except on terms acceptable to the DIP Lender in its reasonable discretion.<br><br>*506(c) Waiver.* All rights to surcharge the DIP Collateral under Section 506(c) of the Bankruptcy Code shall be waived in the Final DIP Order.<br><br>*552(b)(1) Entitlement.* The DIP Lender shall be entitled to all of the rights and benefits of Section 522(b)(1) of the Bankruptcy Code and the "equities of the case" exception therein shall not apply in the Final DIP Order. |

8

## EXHIBIT A-1

**Cuarzo DIP Credit Letter Agreement**

May 17, 2024

From:  GPH Canonsburg LP; GPH Monroeville LP; GPH Murrysville LP; GPH Mt. Lebanon LP
      (collectively, the "DIP Lender")
      C/O Baker & Hostetler LLP
      Attn: Elizabeth Green Esq.; Andrew Layden Esq.
      200 S. Orange Avenue, Suite 2300
      Orlando, Florida 32801

To:  Monroeville Operations LLC; Murrysville Operations LLC; Mt Lebanon Operations
      LLC; South Hills Operations LLC (collectively, the "Debtors")
      C/O Bass, Berry & Sims PLC
      Attn: Glenn Rose Esq.
      150 Third Avenue South, Suite 2800
      Nashville, TN 37201

Re:  Terms of Debtor-in-Possession Financing

Mr. Rose:

This letter agreement (the "Letter Agreement"), dated as of the date first written above (the "Effective Date") memorializes the terms of the debtor-in-possession credit facility (the "DIP Facility") to be provided by the DIP Lender to the Debtors (and together with the DIP Lender, the "Parties").

This Letter Agreement shall not become binding unless and until (1) it is signed by the DIP Lender and the Debtors, and (2) it is approved by the U.S. Bankruptcy Court presiding over the Debtors' bankruptcy cases via an order acceptable in form and substance to the DIP Lender in its sole discretion and which provides the DIP Lender the protections of Section 364(e) of the Bankruptcy Code. Prior to satisfaction of the two conditions set forth in the immediately preceding sentence, this Letter Agreement shall be non-binding, for discussion purposes only and shall not be construed as a commitment of any kind to provide the DIP Facility.

1.    **The Parties' Relationship.** Each of the entities that constitute the DIP Lender and each of the entities that constitute the Debtors are parties to that certain Master Lease dated February 1, 2017 (the "Master Lease"), under which four real properties are leased by the DIP Lender to the Debtors, which operate skilled nursing facilities and conduct other activities on the real properties.  Pursuant to the Master Lease, the DIP Lenders have blanket first priority liens on the respective Debtors assets for all amounts owed under the Master Lease, and all such liens are perfected by validly filed UCC financing statements (the "First Priority Blanket Liens").

2.    **The Purpose of the DIP Facility.** The Debtors have advised the DIP Lender that, absent regular infusions of additional funds, the Debtors can no longer continue in business as a going concern. Additionally, the Debtors are in default under the Master Lease. The Parties have

identified a third-party operator (the "New Operator") who is willing, under an existing Operations Transfer Agreement ("OTA") and certain terms and conditions that must be approved by the Bankruptcy Court, to accept a transfer of operations at the Debtors' facilities and ensure the residents of the facilities receive quality patient care on the go forward basis. The Debtors agree the transfer of the Debtors' operations under the OTA (the "Transaction") is in the best interest of the Debtors and all of their respective stakeholders and the residents. The Parties agree to use their best efforts to seek the Bankruptcy Court's approval of the Transactions and all actions contemplated thereunder on an expedited basis to ensure continued care to the facility residents. In order to facilitate the transition of the Debtors' operations to the New Operator, the DIP Lender is willing to provide the DIP Facility under the terms and conditions of this Letter Agreement, which have been negotiated by the Debtors and the DIP Lender, each represented by independent counsel during such negotiations.

3.    **The Debtors' Bankruptcy Filing.** The Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court"), on May 17, 2024 (the "Petition Date"). The Debtors have requested that the DIP Lender loan money to the Debtors as set forth herein, and, the DIP Lender has agreed to loan money to the Debtors on the terms and conditions set forth below and in the Debtors' motion to be filed with the Bankruptcy Court for authority to, among other things, obtain the DIP Facility from the DIP Lender (the "DIP Motion"). For the avoidance of doubt, the DIP Motion must be in form and substance approved by the DIP Lender in its sole and absolute discretion.

4.    **The DIP Facility.** On or before two business days after the petition date, the Debtors shall file the DIP Motion with the Court seeking authority to enter into the DIP Facility on the terms as more fully described in the DIP Facility Term Sheet attached hereto and incorporated by reference herein as **Exhibit A** (and as to which all capitalized terms not defined therein shall have the meaning set forth in this Letter Agreement).

5.    **Events of Default.** See attached **Exhibit A**, which is incorporated by reference herein.

6.    **Miscellaneous.**

A.    **Entire Agreement.** This Letter Agreement and the documents executed in connection herewith shall contain the entire agreement between and among the Parties with respect to the subject matter hereof.  There are no oral agreements between or among the Parties with respect to this Letter Agreement.  All prior negotiations between the Parties are merged into this Letter Agreement.  This Letter Agreement may only be amended or extended in writing signed by the Parties.  No course of dealing shall vary the express terms of this Letter Agreement.

B.    **Governing Law.** This Letter Agreement and the DIP Facility shall be governed by the law of the Commonwealth of Pennsylvania, without respect to applicable conflicts of laws principles.

4877-8756-8830 4

C.      **Headings.** The headings contained in this Letter Agreement and any exhibits hereto are inserted for convenience only and shall not affect the meaning or interpretation of this Letter Agreement or any provision hereof.

D.      **Construction.** Unless the context otherwise requires, singular nouns and pronouns, when used herein shall be deemed to include the plural of such noun or pronoun, and pronouns of one gender or no gender shall be deemed to include the equivalent pronoun of any or no gender. The Parties acknowledge that each of the Parties and its counsel have reviewed this Letter Agreement and hereby agree that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Letter Agreement or any amendments or exhibits hereto.

E.      **3rd-Party Beneficiaries; No Assignment.** No person, organization, or association other than the Parties shall have any rights or claims under this Letter Agreement, which shall be binding on the successors, heirs, and assigns of the undersigned.

F.      **Delivery; Counterparts.** Each of the Parties agrees to execute and deliver such other documents and instruments as may be reasonably necessary to fully affect the purposes of this Letter Agreement. This Letter Agreement may be executed in one or more counterparts which, when combined, shall constitute one completed original. A facsimile signature or electronically scanned copy of a signature shall constitute and shall be deemed to be sufficient evidence of a party's execution of this Letter Agreement without necessity of further proof. Each such copy shall be deemed an original, and it shall not be necessary in making proof of this Letter Agreement to produce or account for more than one such counterpart.

G.      **Severability.** If any provision of this Letter Agreement is determined to be unenforceable or is not approved by the Bankruptcy Court, then the DIP Lender, in its sole and absolute discretion, shall have the right to declare whether the remainder of this Letter Agreement shall remain in full force and effect or be deemed null and void.

H.      **Authorization; Legal Representation.** The Parties have each approved the terms of this Letter Agreement and have duly authorized the individual designated below to execute this Letter Agreement on its behalf. The Parties each acknowledge that they are represented by counsel and have had a full and complete opportunity to review this Letter Agreement and negotiate the terms and conditions contained herein and the documents contemplated hereunder.

I.      **Bankruptcy Court Approval.** The Parties acknowledge that effectiveness of this Letter Agreement is conditioned upon entry of an order by the Bankruptcy Court approving the DIP Motion on the terms set forth herein.

This Letter Agreement is hereby executed effective as of the date set forth above and shall be effective according to its terms.

4877-8756-8830 4

GPH Canonsburg LP, as DIP Lender

By: Kim Linam
Its: Senior Vice President

GPH Monroeville LP, as DIP Lender

By: Kim Linam
Its: Senior Vice President

GPH Murrysville LP, as DIP Lender

By: Kim Linam
Its: Senior Vice President

GPH Mt. Lebanon LP, as DIP Lender

By: Kim Linam
Its: Senior Vice President

4

Monroeville Operations LLC, as Borrower

By: _____
Its:

Murrysville Operations LLC, as Borrower

By: _____
Its:

Mt Lebanon Operations LLC, as Borrower

By: _____
Its:

South Hills Operations LLC, as Borrower

By: _____
Its:

5

## EXHIBIT A-2

**Budget**

**Disclaimer**

This presentation has been prepared by Ankura Consulting Group, LLC ("Ankura") for the exclusive use of the addressee on the front slide using information obtained from the Company.  Ankura has not independently verified the information contained herein, nor does Ankura make any representation or warranty, either express or implied, as to the accuracy, completeness or reliability of the information contained in this presentation.  Any estimates or projections as to events that may occur in the future (including projections of revenue, expense, net income and performance) are based upon the information provided by management as of the date of this presentation.   There is no guarantee that any of these estimates or projections will be achieved.  Actual results will vary from the projections and such variations may be material.  Nothing contained herein is, or shall be relied upon as, a promise or representation as the to the past or future.  Ankura is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice in this presentation.  Nothing contained herein is, or shall be relied upon as, such advice.  Ankura expressly disclaims any and all liability relating or resulting from the use of this presentation.

This presentation has been prepared solely for informational purposes and is not to be construed as a solicitation or an offer to buy or sell any securities or related financial instruments.  No investment, divestment or other financial decisions or actions should be based solely on the information in this presentation and Ankura is not, by making this report available, providing investment, legal, tax, financial, accounting or other advice to you or any other party.

This material must not be copied, reproduced, distributed or passed to others at any time without the prior written consent of Ankura.

Exhibit A - Proposed Order    Page 82 of 84

**CHMS - Summary Funding Need**
**FRE 408 - Privileged and Confidential**
*As of 5/16/24*

| | | In Court, Chapter 11 Filing | | |
|---|---|---|---|---|
| ($ in millions) | | **Cuarzo Healthcare (Golden)** | | |
| | Post / Wind-down / Total | Post | Wind-down | Total |
| | Period Beginning Date | 18-May-24 | 16-Jun-24 | 18-May-24 |
| | Period End Date | 15-Jun-24 | 31-Oct-24 | 31-Oct-24 |
| 1 | Assumed Average Census | 71.2% | 0.0% | 71.2% |
| 2 | Operating Receipts | 3.2 | 5.1 | 8.3 |
| 3 | Employee Wages and Benefits | (1.6) | (0.9) | (2.5) |
| 4 | Operating Disbursements | (2.2) | (1.0) | (3.2) |
| 5 | Bed Taxes | - | - | - |
| 6 | Real Estate Taxes | (0.0) | - | (0.0) |
| 7 | Administrative Services Fees | (0.1) | (0.0) | (0.1) |
| 8 | Rent | (0.3) | - | (0.3) |
| 9 | **Net Operating Cash Inflow / (Outflow)** | **(1.0)** | **3.1** | **2.2** |
| 10 | Loan Principal & Interest Payments | - | - | - |
| 11 | CapEx | (0.0) | (0.0) | (0.1) |
| 12 | Other Non-Operating Cashflows | - | - | - |
| 13 | **Net Cash Flow a/f Non-Operating Disbursements** | **(1.0)** | **3.1** | **2.1** |
| 14 | Process Costs | (0.1) | (0.1) | (0.2) |
| 15 | DIP Administration Fees and Interest | (0.0) | (0.3) | (0.3) |
| 16 | Professional Fees - Debtor | - | (1.2) | (1.2) |
| 17 | Professional Fees - Lender & UCC | - | (0.5) | (0.5) |
| 18 | **Total Ch 11 Costs** | **(0.1)** | **(2.1)** | **(2.2)** |
| 19 | **Net Cash Flow after Ch 11 Costs** | **(1.1)** | **1.0** | **(0.1)** |
| 20 | **Beginning Book Cash Balance** | 0.0 | 1.8 | 0.0 |
| 21 | Net Cash Flow | (1.1) | 1.0 | (0.1) |
| 22 | **Ending Book Cash Balance** | **(1.1)** | **2.8** | **(0.0)** |
| 23 | DIP Borrowing / (Repayment) | 2.9 | (2.9) | - |
| 24 | **Net Ending Book Cash Balance** | **1.8** | **(0.0)** | **(0.0)** |

Notes:
(1) The above analysis of funding need does not factor in amounts owed for bed taxes (estimated at $7.8M for Golden Living) or potential DOL and DOJ judgements.

(2)  Process costs include Chapter 11 filing fees, US Trustee ("UST") fees based on the forecasted quarterly disbursement amounts pursuant to UST guidelines, and high level estimates for adequate assurance utility deposits. A high level estimate for 503(b)(9) claims, which are subject to change once a vendor analysis is completed, is still to be prepared and there are currently no severance / retention payments included.

(3) Professional fees include debtor legal counsel and financial advisor fees, and Cuarzo legal counsel fees, and patient care ombudsman.

(4)  With respect to the collection of the accounts receivable balance remaining at time of divestiture / confirmation, this has not been included in this analysis.

(5) The above funding need does not take into consideration settlement costs or amounts to be paid into the Liquidation Trust for winddown of the remaining claims.

GL_Summ FN
CHMS - Cuarzo Revised Funding Need and CFF Analysis (2024 05 16)_ext

| Line Item | Description |
|---|---|
| **Cuarzo Healthcare (Golden)** | |
| General | - Cash flow detail reflects activity for the Cuarzo Healthcare leased facilities, which includes 4 facilities.<br>- Assumes the entities would file for court protection by May 17, 2024; with an assumed effective date of August 31, 2024.<br>- The operations period is assumed to be 90 days, with a transfer of operations date of June 15, 2024.<br>- Includes a minimum cash balance assumption of $250k. |
| Working Capital | - Collections are based on current average days outstanding run rates and remain constant throughout the forecast period.<br>- Assumes the loss of AP terms during the bankruptcy.<br>- With respect to the collection of the accounts receivable balance remaining at time of divestiture / confirmation, the collection estimates are still to be determined. |
| Operating Receipts | - Operating receipts based on forecast revenue and DSO assumptions. Census is projected to increase by 0.50% MoM from March 2024 until it reaches 71.5% in June 2024. |
| Winddown Receipts | - Winddown receipts based on company's collection assumption per aging bucket of receivables. Receipts for services through June 15, 2024 are assumed to be collected through DIP termination date (135 days post petition). |
| Employee Expenses | - Employee wages and benefits based on near-term historical run-rates with payment assumptions based on each facilities' payroll calendar. |
| Operating Disbursements | - <u>Agency:</u> reflects revised estimates based on expected go-forward run-rates at each of the facilities.<br>- <u>Operating Expenses:</u> reflects non-wage related items (such as supplies for dietary, pharmacy, laundry & housekeeping, maintenance, etc.) with forecast estimates based on historical run-rates.<br>- <u>Utilities:</u> reflects forecast estimates based on historical run-rates.<br>- <u>Insurance:</u> reflects forecast financing payments based on historical run-rates. Assumes new GLPL coverage starting March 1 2024 with new carrier with payment plan option. Does not include any other renewals, tails, or D&O coverage increases.<br>- <u>IT:</u> reflects forecast estimates based on historical run-rates. |
| Provider Taxes | - Assumes no payment of provider taxes for these facilities (implied monthly reduction of ~$308k). |
| Legal Fees | - Assumes estimates based on expected go-forward run-rate for non-bankruptcy related legal fees. Does not include any legal fees related to the DOJ or DOL cases. |
| Administrative Services Fees | - Assumes payment of monthly management fees based on historical run-rates. |
| Rent | - Assumes payment of rent for these facilities (~$280k per month). |
| R/E & Other Taxes | - Assumes payment of Real Estate taxes on these properties (~$46k per month). |
| Capex | - Monthly CapEx spend is estimated based on historical run-rates and is representative of maintenance CapEx only. |
| DIP Administration Fees and Interest | - Includes upfront fee of 1% of total loan commitment charged upon initial draw and 0.50% unused commitment fee payable monthly in arrears based on the average daily balance of the undrawn DIP Commitments.<br>- Includes interest at 12%, paid at DIP termination. |
| Process Costs & Professional Fees | - Disbursements based on a hypothetical filing of May 17, 2024.<br>- Debtor professional fees include legal counsel, financial advisor, claims agent, and patient care ombudsman (including legal counsel) fees. Current professional fee assumptions do not anticipate significant litigation.<br>- Forecast includes placeholders for Cuarzo legal counsel fees.<br>- Unsecured Creditors Committee includes legal and financial advisors.<br>- Process costs include Chapter 11 filing fees, US Trustee ("UST") fees based on the forecasted quarterly disbursement amounts pursuant to UST guidelines, and high level estimates for adequate assurance utility deposits.<br>- A high level estimate for 503(b)(9) claims, which are subject to change once a vendor analysis is completed, is still to be prepared and there are currently no severance / retention payments included. |

**CHMS - Weekly Cash Flow Forecast**
**Privileged and Confidential**
*Draft - Subject to Material Change*

Post-Petition -->    <-- Curazo Transfer Date    <-- DIP Termination Date

($ in millions)

| # | Description | F1 5/17 | F2 5/24 | F3 5/31 | F4 6/7 | F5 6/14 | F6 6/21 | F7 6/28 | F8 7/5 | F9 7/12 | F10 7/19 | F11 7/26 | F12 8/2 | F13 8/9 | F14 8/16 | F15 8/23 | F16 8/30 | F17 9/6 | F18 9/13 | F19 9/20 | F20 9/27 | F21 10/4 | F22 10/11 | F23 10/18 | F24 10/25 | F25 11/1 | Total Post Period | Total Run-Off Period | Total Filing |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | **Cuarzo Healthcare (Golden)** | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 2 | **Receipts** | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 3 | Census % | 71.0% | 71.0% | 71.0% | 71.5% | 71.5% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 71.2% | 0.0% | 71.2% |
| 4 | Receipts | 0.1 | 0.2 | 0.9 | 0.3 | 1.7 | 0.1 | 0.9 | 0.2 | 1.2 | 0.5 | 0.5 | 0.8 | 0.2 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.0 | - | - | - | - | - | 3.2 | 5.1 | 8.3 |
| 5 | Total Room & Board | 0.1 | 0.2 | 0.9 | 0.3 | 1.7 | 0.1 | 0.9 | 0.2 | 1.2 | 0.5 | 0.5 | 0.8 | 0.2 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.0 | - | - | - | - | - | 3.2 | 5.1 | 8.3 |
| 6 | Misc. Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 7 | **Total Receipts** | 0.1 | 0.2 | 0.9 | 0.3 | 1.7 | 0.1 | 0.9 | 0.2 | 1.2 | 0.5 | 0.5 | 0.8 | 0.2 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.0 | - | - | - | - | - | 3.2 | 5.1 | 8.3 |
| 8 | **Operating Disbursements** | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 9 | Payroll | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | 0.2 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1.0 | 0.6 | 1.6 |
| 10 | Payroll - Checks | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 11 | Payroll Taxes | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.3 | 0.2 | 0.5 |
| 12 | Employee Benefits | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0 | 0.0 | 0.1 |
| 13 | Employee Reimbursements | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0 | 0.0 | 0.0 |
| 14 | Health Insurance | - | - | - | - | 0.1 | - | - | - | 0.0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.1 | 0.0 | 0.1 |
| 15 | Workers Compensation | 0.1 | - | - | - | 0.1 | - | - | - | 0.0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.1 | 0.0 | 0.1 |
| 16 | Total Employee Expenses | 0.3 | 0.3 | 0.3 | 0.3 | 0.4 | 0.3 | 0.3 | 0.3 | 0.1 | 0.0 | 0.0 | 0.0 | - | - | - | - | - | - | - | - | - | - | - | - | - | 1.6 | 0.9 | 2.5 |
| 17 | Contractor / Agency | 0.4 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.3 | 0.2 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1.7 | 0.7 | 2.4 |
| 18 | Medical Director | - | 0.0 | - | - | - | 0.0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0 | 0.0 | 0.0 |
| 19 | Operating Expenses | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.5 | 0.2 | 0.7 |
| 20 | Provider Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 21 | Utilities | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.1 | 0.0 | 0.1 |
| 22 | Insurance | - | - | - | - | 0.0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0 | - | 0.0 |
| 23 | IT | - | - | - | - | 0.0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0 | - | 0.0 |
| 24 | Legal Fees | - | - | - | - | 0.0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0 | - | 0.0 |
| 25 | Administrative Services Fees | - | 0.0 | - | - | 0.0 | - | 0.0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.1 | 0.0 | 0.1 |
| 26 | Total Operating Expenses | 0.5 | 0.5 | 0.4 | 0.4 | 0.5 | 0.4 | 0.4 | 0.2 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 2.3 | 1.0 | 3.3 |
| 27 | **Net Cash Flow b/f Rent** | (0.7) | (0.6) | 0.2 | (0.3) | 0.8 | (0.6) | 0.2 | (0.2) | 1.1 | 0.5 | 0.5 | 0.8 | 0.2 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.0 | - | - | - | - | - | (0.6) | 3.1 | 2.5 |
| 28 | Rent | - | - | - | 0.3 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.3 | - | 0.3 |
| 29 | **Net Cash Flow b/f Non-Op Disb.** | (0.7) | (0.6) | 0.2 | (0.6) | 0.8 | (0.6) | 0.2 | (0.2) | 1.1 | 0.5 | 0.5 | 0.8 | 0.2 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.0 | - | - | - | - | - | (0.9) | 3.1 | 2.2 |
| 30 | R/E & Other Taxes | - | - | - | 0.0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0 | - | 0.0 |
| 31 | Capex | 0.0 | 0.0 | - | 0.0 | 0.0 | 0.0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0 | 0.0 | 0.1 |
| 32 | Interest | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 33 | Loan Principal and Interest | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34 | Inter-bank Transfer (BK Groups) | (0.2) | 0.2 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 35 | Inter-bank Transfer (Non-BK Groups) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 36 | Funding from External Parties | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 37 | **Net Cash Flows b/f Rx** | (0.6) | (0.7) | 0.2 | (0.7) | 0.8 | (0.6) | 0.1 | (0.2) | 1.1 | 0.5 | 0.5 | 0.8 | 0.2 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.0 | - | - | - | - | - | (1.0) | 3.1 | 2.1 |
| 38 | **Restructuring Disbursements** | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 39 | Chapter 11 Filing Fees | 0.0 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0 | - | 0.0 |
| 40 | US Trustee Fees | - | - | - | - | - | - | - | 0.0 | - | - | - | - | - | - | - | - | - | - | - | - | 0.0 | - | 0.1 | - | - | - | 0.1 | 0.1 |
| 41 | D&O Insurance Renewal & Tail | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 42 | Adequate Assurance - Utility Deposit | - | 0.1 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.1 | - | 0.1 |
| 43 | 503(b)(9) & Other Priority Claims | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 44 | DIP Administration Fees and Interest | - | 0.0 | - | - | - | 0.0 | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.3 | - | - | - | - | - | 0.0 | 0.3 | 0.3 |
| 45 | Sale Proceeds | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 46 | Total Process Costs | 0.0 | 0.1 | - | - | - | 0.0 | - | - | 0.0 | - | - | - | - | - | - | - | - | - | - | 0.3 | 0.0 | - | 0.1 | - | - | 0.1 | 0.4 | 0.5 |
| 47 | Bass, Berry & Sims PLC | - | - | - | - | - | - | - | - | 0.1 | - | - | - | - | 0.1 | - | - | - | - | - | 0.1 | - | - | - | - | - | - | 0.4 | 0.4 |
| 48 | Local Counsel | - | - | - | - | - | - | - | - | 0.0 | - | - | - | - | 0.0 | - | - | - | - | - | 0.1 | - | - | - | - | - | - | 0.1 | 0.1 |
| 49 | Ankura | - | - | - | - | - | 0.1 | - | - | - | 0.1 | - | - | - | 0.1 | - | - | - | - | - | 0.1 | - | - | - | - | - | - | 0.4 | 0.4 |
| 50 | Independent Director | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 51 | Collection Agency | - | - | - | - | - | - | 0.0 | 0.0 | - | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | - | - | - | - | - | - | 0.2 | 0.2 |
| 52 | Claims Agent | - | - | - | - | - | 0.0 | - | - | - | - | 0.0 | - | - | - | - | - | - | - | - | 0.1 | - | - | - | - | - | - | 0.1 | 0.1 |
| 53 | Patient Care Ombudsman | - | - | - | - | - | 0.0 | - | - | - | - | 0.0 | - | - | - | - | - | - | - | - | 0.0 | - | - | - | - | - | - | 0.1 | 0.1 |
| 54 | Total Debtor Prof. Fees | - | - | - | - | - | 0.2 | - | 0.0 | 0.0 | 0.0 | 0.3 | 0.0 | 0.0 | 0.0 | 0.2 | 0.0 | 0.0 | 0.0 | 0.0 | 0.3 | - | - | - | - | - | - | 1.2 | 1.2 |
| 55 | UCC Prof. Fees | - | - | - | - | - | - | - | - | - | - | 0.0 | - | - | - | - | - | - | - | - | 0.1 | - | - | - | - | - | - | 0.2 | 0.2 |
| 56 | Restructuring Prof. Fees - Lender | - | - | - | - | - | 0.1 | - | - | - | - | - | - | - | 0.1 | - | - | - | - | - | 0.0 | - | - | - | - | - | - | 0.4 | 0.4 |
| 57 | Total Professional Fees | - | - | - | - | - | 0.3 | - | 0.0 | 0.0 | 0.0 | 0.4 | 0.0 | 0.0 | 0.3 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.5 | - | - | - | - | - | - | 1.7 | 1.7 |
| 58 | **Net Cash Flow a/f Rx** | (0.6) | (0.8) | 0.2 | (0.7) | 0.8 | (0.9) | 0.1 | (0.3) | 1.1 | 0.5 | 0.1 | 0.8 | 0.2 | 0.1 | (0.3) | 0.1 | 0.1 | 0.1 | 0.1 | (0.7) | (0.0) | - | (0.1) | - | - | (1.1) | 1.0 | (0.1) |
| 59 | **Cash Balances & Availability** | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 60 | Beginning Book | 0.0 | 0.7 | 0.5 | 0.7 | 0.4 | 1.8 | 0.9 | 1.0 | 0.7 | 1.9 | 2.3 | 2.4 | 3.2 | 3.4 | 3.5 | 3.3 | 3.4 | 3.5 | 3.5 | 3.6 | 0.0 | 0.0 | 0.0 | (0.0) | (0.0) | 0.0 | 1.8 | 0.0 |
| 61 | Net Cash Flow | (0.6) | (0.8) | 0.2 | (0.7) | 0.8 | (0.9) | 0.1 | (0.3) | 1.1 | 0.5 | 0.1 | 0.8 | 0.2 | 0.1 | (0.3) | 0.1 | 0.1 | 0.1 | 0.1 | (0.7) | (0.0) | - | (0.1) | - | - | (1.1) | 1.0 | (0.1) |
| 62 | Add-back of Float before Filing | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 63 | **DIP Draw / (Repayment)** | 1.3 | 0.6 | - | 0.4 | 0.6 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (2.9) | - | - | - | - | - | 2.9 | (2.9) | - |
| 64 | Ending Book | 0.7 | 0.5 | 0.7 | 0.4 | 1.8 | 0.9 | 1.0 | 0.7 | 1.9 | 2.3 | 2.4 | 3.2 | 3.4 | 3.5 | 3.3 | 3.4 | 3.5 | 3.5 | 3.6 | 0.0 | 0.0 | 0.0 | (0.0) | (0.0) | (0.0) | 1.8 | (0.0) | (0.0) |
| 65 | Float | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 66 | Ending Bank | 0.7 | 0.5 | 0.7 | 0.4 | 1.8 | 0.9 | 1.0 | 0.7 | 1.9 | 2.3 | 2.4 | 3.2 | 3.4 | 3.5 | 3.3 | 3.4 | 3.5 | 3.5 | 3.6 | 0.0 | 0.0 | 0.0 | (0.0) | (0.0) | (0.0) | 1.8 | (0.0) | (0.0) |
| 67 | Minimum Liquidity | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 68 | **Bank Availability, Net** | 0.7 | 0.5 | 0.7 | 0.4 | 1.8 | 0.9 | 1.0 | 0.7 | 1.9 | 2.3 | 2.4 | 3.2 | 3.4 | 3.5 | 3.3 | 3.4 | 3.5 | 3.5 | 3.6 | 0.0 | 0.0 | 0.0 | (0.0) | (0.0) | (0.0) | 1.8 | (0.0) | (0.0) |
| 69 | DIP Availability | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 70 | **Total Availability** | 0.7 | 0.5 | 0.7 | 0.4 | 1.8 | 0.9 | 1.0 | 0.7 | 1.9 | 2.3 | 2.4 | 3.2 | 3.4 | 3.5 | 3.3 | 3.4 | 3.5 | 3.5 | 3.6 | 0.0 | 0.0 | 0.0 | (0.0) | (0.0) | (0.0) | 1.8 | (0.0) | (0.0) |